UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ELLEN SENISI; LAURA DWIGHT; LOUIS :
PSIHOYOS; NORBERT WU; MARK GIBSON; :
HAZEL HANKIN; THE ESTATE OF MICHAEL : Case No: 13 Civ. 3314 (LTS)(AJP)
NEWMAN, :
 :
       Plaintiffs, :
 :
   v. :
 :
JOHN WILEY & SONS, INC., :
 :
       Defendant. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Edward H. Rosenthal
Jessie F. Beeber
Anna Kadyshevich
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone: (212) 980-0120
Fax: (212) 593-9175

*Attorneys for Defendant John Wiley & Sons, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL ALLEGATIONS .......................................................................................... 3

ARGUMENT ................................................................................................................. 7

STANDARD OF REVIEW ON A MOTION TO DISMISS ......................................... 7

I .    PLAINTIFFS FAIL TO STATE A CLAIM FOR COPYRIGHT
       INFRINGEMENT ................................................................................................ 7

       A.    Plaintiffs Have Not Specified Which Images Are the Subject of Their
             Claims ..................................................................................................... 8

       B.    Plaintiffs Have Not Identified by What Acts and During What Time Their
             Copyrights Were Infringed ...................................................................... 9

       C.    In the Alternative, Plaintiffs' Claims Should be Severed ...................... 12

II .   THIS COURT LACKS JURISDICTION OVER PLAINTIFFS'
       DECLARATORY CLAIM AND PLAINTIFFS HAVE FAILED TO STATE A
       COGNIZABLE CLAIM FOR SUCH RELIEF ................................................ 14

       A.    Declaratory Claims Do Not in and of Themselves Invoke Federal
             Jurisdiction ........................................................................................... 15

             1.    Plaintiffs' Declaratory Claim Does Not "Arise Under" the
                   Copyright Act ............................................................................ 16

             2.    The Copyright Act Does Not Create a Right to Audit ............... 18

       B.    Plaintiffs Fail to Allege any other Cognizable Claim for Relief ......... 19

             1.    Plaintiffs Fail to Allege a Contractual Right to an Audit ......... 20

             2.    Plaintiffs Fail to Allege a Third-Party Beneficiary Right ........ 21

             3.    Plaintiffs Fail to Allege a Right to an Accounting ................... 24

CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraham v. Am. Home Mortgage Servicing, Inc.*,
No. 12 Civ. 4686, 2013 WL 2285205 (E.D.N.Y. May 23, 2013) ...........................................13

*Abu–Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
651 F.Supp.2d 155 (S.D.N.Y.2009)........................................................................................22

*Affiliated Records Inc. v. Taylor*,
No. 09 Civ. 9938, 2012 WL 1675589 (S.D.N.Y. May 14, 2012)...........................................24

*Ariel (UK) Ltd. v. Reuters Grp. PLC*,
2006 WL 3161467 (S.D.N.Y. Oct. 31, 2006), *aff'd*, 277 F. App'x 43 (2d Cir. 2008) ...........15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................7, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................7

*Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*,
No. 03 Civ. 3923, 2004 WL 1586429 (S.D.N.Y. July 15, 2004) .....................................12, 13

*Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*,
194 F. Supp. 2d 246 (S.D.N.Y. 2002)....................................................................................17

*Broughel v. Battery Conservancy*,
No. 07 Civ. 7755, 2009 WL 928280 (S.D.N.Y. Mar. 30, 2009) ...........................................20

*Cmty. Health Care Ass'n of New York v. DeParle*,
69 F. Supp. 2d 463 (S.D.N.Y. 1999)................................................................................16, 20

*Cole v. John Wiley & Sons, Inc.*,
No. 11 Civ. 2090, 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) .........................................9, 11

*Correspondent Servs. Corp. v. First Equities Corp. of Florida*,
442 F.3d 767 (2d Cir. 2006)................................................................................................18, 2

*Eaton Vance Mgmt. v. ForstmannLeff Associates, LLC*,
No. 06 Civ. 1510, 2006 WL 2331009 (S.D.N.Y. Aug. 11, 2006) ..........................................23

*Elektra Entm't Grp., Inc. v. Barker*,
551 F. Supp. 2d 234 (S.D.N.Y. 2008)....................................................................................18

*eScholar, LLC v. Otis Educ. Sys., Inc.*,
    387 F. Supp. 2d 329 (S.D.N.Y. 2005) .................................................................................19

*Faulkner v. Arista Records LLC*,
    602 F. Supp. 2d 470 (S.D.N.Y. 2009) .................................................................................24

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*,
    No. 11 Civ. 4491, 2013 WL 1294519 (S.D.N.Y. Mar. 30, 2013) ....................................21, 22

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*,
    66 N.Y.2d 38, 485 N.E.2d 208 (1985) .................................................................................22

*Gary Friedrich Enterprise, LLC v. Marvel Enterprises, Inc.*,
    713 F. Supp.2d 215 (S.D.N.Y. 2010) .................................................................................24

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) .....................................................................................................7

*Herrick Co., Inc. v. SCS Commc'ns, Inc.*,
    251 F.3d 315 (2d Cir. 2001) ................................................................................................18

*Highlands Ins. Co. v. PRG Brokerage, Inc.*,
    No. 01 Civ. 2272, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) ............................................21, 23

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    725 F. Supp. 712 (S.D.N.Y. 1989) ....................................................................................22

*Iza Music Corp. v. W & K Music Corp.*,
    995 F. Supp. 417 (S.D.N.Y. 1998) .........................................................................17, 18, 19

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
    386 F.3d 107 (2d Cir. 2004) ...................................................................................................7

*Jacobs v. Carnival Corp.*,
    No. 06 Civ. 0606 (DAB), 2009 WL 856637 (S.D.N.Y. Mar. 25, 2009) .........................7, 8, 9

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd.*, 23 F.3d 398 (2d Cir.), *cert. denied*, 513 U.S.
    950 (1994) ...................................................................................................................19, 22

*Lefkowitz v. Houghton Mifflin Harcourt Pub. Co.*,
    No. Civ.A. 12-10614-FDS, 2013 WL 3816717 (D. Mass. July 19, 2013) ............................23

*Lennon v. Seaman*,
    No. 99 Civ. 2664 (LBS), 2002 WL 109525 (S.D.N.Y. Jan. 28, 2002) ...................................10

*Madeira v. Affordable Hous. Found., Inc.*,
    469 F.3d 219 (2d Cir. 2006) .................................................................................................21

*Marvullo v. Gruner & Jahr*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000) ................................................................. 11

*Organic Seed Growers & Trade Ass'n v. Monsanto Co.*,
    851 F. Supp. 2d 544 (S.D.N.Y. 2012), *aff'd*, 2012-1298, 2013 WL 2460949 (Fed. Cir.
    June 10, 2013) ..................................................................................................... 15

*Palmer Kane LLC v. Scholastic Corp.*,
    No. 11 Civ. 7456, 2012 WL 2952898 (S.D.N.Y. July 16, 2012) ........................... 14

*Palmer Kane LLC v. Scholastic Corp.*,
    No. 12 Civ. 3890, 2013 WL 709276 (S.D.N.Y. Feb. 27, 2013) .................... 8, 9, 10

*Plunket v. Doyle*,
    No. 99 Civ. 11006, 2001 WL 175252 (S.D.N.Y. Feb.22, 2001) .......................... 8, 9

*Saunders v. AOL Time Warner, Inc.*,
    18 A.D.3d 216 (1st Dep't 2005) .......................................................................... 24

*Shipping Fin. Servs. Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998) ................................................................................. 7

*Sun Micro Med. Technologies Corp. v. Passport Health Commc'ns, Inc.*,
    06 CIV. 2083 (RWS), 2006 WL 3500702 (S.D.N.Y. Dec. 4, 2006) ..................... 10

*Tasini v. New York Times Co., Inc.*,
    184 F. Supp. 2d 350 (S.D.N.Y. 2002) ................................................. 15, 16, 17, 18

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*,
    890 F. Supp. 2d 398 (S.D.N.Y. 2012) .................................................................. 16

*Warren/Rubin/Young-Wolff v. John Wiley & Sons, Inc.*,
    Nos. 12 Civ. 5070; 12 Civ. 5071; 12 Civ. 5230, 2013 WL 3328224
    (S.D.N.Y. July 2, 2013) ...................................................................................... 10

## RULES

Federal Rules of Civil Procedure 8(a) ............................................................... *passim*

Federal Rules of Civil Procedure 12(b)(1) ............................................................ 1, 7

Federal Rules of Civil Procedure 12(b)(6) ............................................................ 1, 7

Federal Rules of Civil Procedure 20(a) ................................................................... 12

Federal Rules of Civil Procedure 21 .................................................................... 3, 12

## STATUTES

17 U.S.C. § 106 .................................................................................................................. 18

28 U.S.C. § 1332(a) ........................................................................................................... 18

28 U.S.C. § 2201 ................................................................................................................. 15

Defendant John Wiley & Sons, Inc. ("Wiley") submits this Memorandum, pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1) and 12(b)(6), in support of its Motion to Dismiss the First Amended Complaint ("Amended Complaint" or "FAC") of Plaintiffs Ellen Senisi, Laura Dwight, Louis Psihoyos, Norbert Wu, Mark Gibson, Hazel Hankin and the Estate of Michael Newman (together, "Plaintiffs").

## PRELIMINARY STATEMENT

This is one of a number of cases brought by Plaintiffs' contingency-fee law firm against higher education publishers, including Wiley. Plaintiffs are seven stock photographers who have nothing in common other than their lawyers.

Plaintiffs allege that Wiley exceeded the scope of licenses granted for the use of their images. Despite the fact that the original licenses were issued for small amounts of money (generally less than $200), these Plaintiffs and their contingent-fee lawyers seek to use the litigation process to extract huge settlements or damage awards. Their lawyers' strategy in these cases has been consistent. They list other claims they have brought in an effort to paint the publisher as a serial offender (FAC ¶ 21), and characterize the publisher's efforts to address any past license issues pejoratively, as an improper "clean-up" campaign (*Id.*, ¶¶ 100-104). They and their attorneys have also tried time and time again to use the litigation process to fish for information they hope will lead to more claims and more plaintiffs.

Now, Plaintiffs' counsel has unveiled a new tactic. Even where there is insufficient evidence to state a copyright claim, they seek to involve the Court in their effort to find evidence so that they can find new claims. Indeed, in their original complaint in this action (Dkt. # 1), Plaintiffs did not assert a single copyright infringement claim, instead seeking only a "judicial determination of [the Plaintiffs'] rights to know and to be provided with information regarding what uses Defendant has made and is making of their creative work." (Complaint ¶ 71). After

Defendant pointed out to Plaintiffs that such claim could not possibly give rise to federal jurisdiction, Plaintiffs filed an amended complaint that included a cause of action denominated as for "copyright infringement" (for some but not all of the Plaintiffs) accompanied by a claim for a declaratory judgment seeking "to know all uses that Defendant has made and/or currently is making of [Plaintiffs'] creative works" – essentially demanding an audit and accounting of all of Wiley's past and future uses of unidentified photographs.

For the reasons set forth below, Plaintiffs still have failed to state a claim for relief and the Amended Complaint must be dismissed with prejudice. *First*, Plaintiffs' copyright claims must be dismissed for failing to identify the specific works at issue. Indeed, two of the Plaintiffs do not bring any claim for copyright infringement at all and fail to identify a single specific image that is the subject of any claim. The remaining five Plaintiffs merely provide laundry lists of images in exhibits attached to the Amended Complaint, and claim that discovery will reveal "other copyrighted works created and owned by Plaintiffs," allegations insufficient to sustain their claims. Moreover, Plaintiffs have failed to identify the acts or the timeframe for Wiley's purported infringements, relying instead on generalized allegations of infringement made indiscriminately on behalf of all seven Plaintiffs. As will be shown, courts in this District have dismissed similarly worded complaints, including claims brought by the same Plaintiffs' counsel.

*Second*, the Court lacks subject-matter jurisdiction over Plaintiffs' claim for declaratory relief. The Declaratory Judgment Act does not create an independent cause of action. To avail themselves of federal jurisdiction, Plaintiffs must assert a cause of action that may be brought in federal court. Plaintiffs have failed to do so here. They have failed to properly allege a claim for infringement of copyright and their claim for an audit or accounting (or to know what uses are being made of their images) does not arise under the Copyright Act.

*Third*, even if the Court exercised jurisdiction over the claim for declaratory relief, Plaintiffs have failed to state a claim. Plaintiffs do not identify any cognizable legal interest that confers standing to demand the relief sought. There is no legal basis for Plaintiffs' purported "right" to seek an audit from Wiley, whether it be under contract, accounting, or copyright law. Plaintiffs' declaratory judgment claim is an obvious attempt to circumvent the pleading requirements for copyright infringement in order to engage in a fishing expedition for additional claims and plaintiffs. For all of these reasons, Plaintiffs' Amended Complaint must be dismissed.[1]

## FACTUAL ALLEGATIONS

The following statement of facts is based upon the allegations in the Plaintiffs' Amended Complaint. The Plaintiffs in this action are six professional photographers and the estate of deceased photographer Michael Newman, all of whom claim to hold copyrights in "numerous photographs that Defendant published in various publications." FAC ¶¶ 10, 14. Defendant Wiley is a publishing company specializing in educational textbooks and similar publications. *Id.* ¶ 13. Plaintiffs allege that they own the copyrights in "hundreds of images" that have been licensed to Wiley "for limited and specific uses." *Id.* ¶ 31. Nowhere in the body of the Amended Complaint do Plaintiffs allege what images were infringed; rather, attached as five exhibits are the "Photos Known to be Published by John Wiley Sons, Inc. [sic]" for Plaintiffs Senisi, Dwight, Psihoyos, Wu and Gibson. *See id.* Exs. 7-11. The exhibits do not identify or attribute any works to Hankin or the Estate of Michael Newman, and indeed Plaintiffs' counsel has represented in correspondence with Defendant's counsel that Hankin and the Estate of Michael Newman are not asserting copyright infringement claims at all.

---

[1] Should the Court determine that any of Plaintiffs' claims survive dismissal, they should be severed into separate actions pursuant to FRCP 21. See Point I(C), *infra.*

Plaintiffs claim that Wiley licensed their photographs in two ways. Some photographs were licensed through "third party agencies (collectively 'Stock Photo Agencies')." *Id.* ¶ 67. While the Amended Complaint does not identify which agencies fall within the defined term "Stock Photo Agencies," it later alleges that "Plaintiffs have licensed their works through Corbis Corp. ('Corbis'); Getty Images (US), Inc. ('Getty'); Minden Pictures, Inc. ('Minden Pictures'); Visions of Tomorrow, Inc. (d/b/a Science Faction); The Image Works ('Image Works'); Visuals Unlimited, Inc. ('VU'); and other vendors." *Id.* ¶¶ 67, 68. Plaintiffs also allege that they licensed some unspecified number of their works directly to Wiley. *Id.* ¶ 36.

In Count I (Copyright Infringement), the Amended Complaint states that Wiley infringed "Plaintiffs' copyrights by exploiting their photographs in various publications without permission and/or in excess of any licenses" that Wiley may have obtained. *Id.* ¶ 84. Exhibits 7 through 11 of the Amended Complaint are charts that purportedly "summarize" the "terms of licenses grants to Defendants [sic] and other unlicensed uses of Plaintiffs' photos." *Id.* ¶ 36. Exhibits 7 to 11 collectively contain 222 different entries, with some licenses dating back more than twenty years, to as early as 1991. *See, e.g.*, *id.* Ex. 8. Some of the entries contain certain license terms, while many others fail to identify any information about the license terms beyond the licensor and the invoice date. *See, e.g.*, *id.* Ex. 9. Collectively, Plaintiffs allege that "Wiley used, published, distributed, and/or exploited Plaintiffs' creative works in excess of and outside the limited scope of its limited licenses." *Id.* ¶ 111. Plaintiffs do not differentiate among each other in making this allegation, nor do they identify any additional facts concerning Wiley's supposed infringement. Elsewhere in the Amended Complaint they make their infringement claims "upon information and belief" (*id.* ¶ 86) and assert that "[a] reasonable opportunity for further investigation and discovery will confirm that Defendants [sic] also has infringed other copyrighted works created and owned by Plaintiffs." *Id.* ¶ 87.

Although Plaintiffs claim that they "registered their copyrights with the U.S. Copyright Office" (*id.* ¶ 110), they do not list any registrations numbers, registration dates, or even specify what "copyrights" they mean. *Id.* Based on these allegations, Plaintiffs seek all damages recoverable under the Copyright Act, including statutory damages and attorneys' fees and costs. *Id.* ¶ 121.

Plaintiffs also allege that Wiley has a "history of copyright infringements" and list certain lawsuits filed against Wiley. *Id.* ¶¶ 19-21. Plaintiffs claim that "[e]vidence submitted to the courts in these actions demonstrates that Wiley has engaged in a systematic pattern of copyright infringement"; however, they only identify two cases where Wiley was found liable for infringement. *Id.* ¶¶ 22, 25-26. And while Plaintiffs devote significant time to exploring the history of lawsuits filed against Wiley, their only attempt to tie any specific issues raised in those cases to the one at hand is their allegation that several photographs purportedly owned by Plaintiffs Gibson and Wu appeared in certain textbooks at issue in those cases or in different editions of those textbooks. *Id.* ¶¶ 41-42.

In Count II, Plaintiffs seek "a judicial determination of their rights to know and to be provided information regarding what uses Defendant has made and is making of their creative works." *Id.* ¶ 129. Though Plaintiffs fail to state the explicit legal basis for the declaratory relief they seek, the Amended Complaint includes allegations that, as copyright owners, they have an "inherent right to know the uses that any third-party licensor is making of their works," that Wiley's failure to disclose usage information is "a distinct violation of Plaintiffs' copyrights," and that Plaintiffs "are the intended and direct beneficiaries of any licenses relating to their photos that the Stock Photo Agencies granted to Defendant." *Id.* ¶¶ 63, 73. Plaintiffs claim that "licenses issued by these Stock Photo Agencies included express audit or certification provisions that obligate Wiley to disclose information regarding use of any licensed content." *Id.* ¶ 75. To

support this allegation, Plaintiffs attach nothing but two generic form licensing agreements – one for Getty Images and one for Science Faction, neither of which are signed by Wiley, or relate to any of the Plaintiffs or their images. *Id.* Exs. 5 & 6. Otherwise, Plaintiffs do not identify any specific agreements or contractual terms that describe the basis for their third-party beneficiary or audit claims.

The Amended Complaint alleges that five of the Plaintiffs (Senisi, Dwight, Psihoyos, Wu and Gibson) "explicitly demanded, through counsel, that Wiley make a full and complete disclosure of all its uses of their photographs, including unlicensed uses and uses in excess of license restrictions." *Id.* ¶ 43. According to Plaintiffs, Wiley has not provided the information requested. *Id.* ¶ 44. In addition to "a judicial determination of their rights to know and to be provided information regarding what uses Defendant has made and is making of their creative works" Plaintiffs also seek attorneys' fees and costs. *Id.* ¶¶ 129, 131. On both counts, Plaintiffs request an injunction precluding Wiley from copying, displaying, distributing, advertising, promoting, and/or selling the "infringing publications identified herein." *Id.* Wherefore Clause ¶ 1. The Amended Complaint does not contain any allegations that Plaintiffs have a joint, several or alternative right to relief, or that their claims arose out of one transaction or occurrence. In fact, all the Plaintiffs have in common is that their counsel has brought copyright infringement claims on their behalf previously, against Wiley and/or other educational publishers, or their names appeared in documents their counsel obtained in those or other lawsuits brought on behalf of photographers.

## ARGUMENT

### STANDARD OF REVIEW ON A MOTION TO DISMISS

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) mandates dismissal of a cause of action if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere conclusory averments are insufficient to meet this pleading threshold; rather, a claim must be supported by specific factual allegations, which if accepted as true, are sufficient to support the accusation's plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Moreover, "'conclusory allegations or legal conclusions masquerading as factual conclusions' will not withstand dismissal." *Jacobs v. Carnival Corp.*, No. 06 Civ. 0606, 2009 WL 856637, at *3 (S.D.N.Y. Mar. 25, 2009) (citing *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Pleadings that contain "no more than conclusions[] are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 (plaintiff must put forth sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level" in order to survive a motion to dismiss). Under FRCP 12(b)(1), while a court must accept the material factual allegations in the complaint as true, unlike on a motion to dismiss under FRCP 12(b)(6), it need not draw inferences favorable to the plaintiff. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

### I.

### PLAINTIFFS FAIL TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

Courts have determined that in copyright infringement cases, given "'the principle enshrined in Rule 8 – namely, to provide defendants fair notice against them – a plaintiff . . . may not rest on bare-bones allegations that infringement occurred.'" *Jacobs*, 2009 WL 856637, at *4

(quoting *Sharp v. Patterson*, No. 03 Civ. 8772, 2004 WL 2480426, at *12 (S.D.N.Y. Nov. 3, 2004)). Rather, "Rule 8 requires that the particular infringing acts be set out with some specificity." *Id.* (internal quotations omitted). To meet the pleading requirements under FRCP 8 in a copyright infringement case, the Plaintiffs must each allege: "'(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts and during what time the defendant infringed the copyright.'" *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890, 2013 WL 709276, at *2 (S.D.N.Y. Feb. 27, 2013) (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36, n.3 (S.D.N.Y. 1992), *aff'd.*, 23 F.3d 398 (2d Cir.), *cert. denied*, 513 U.S. 950 (1994)); *Jacobs*, 2009 WL 856637, at *4 (same); *Plunket v. Doyle*, No. 99 Civ. 11006, 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001) (same). Further, "broad, sweeping allegations of infringement do not comply with Rule 8." *Jacobs*, 2009 WL 856637, at *4 (internal quotations omitted). Based on this standard, Plaintiffs' conclusory copyright infringement claims must be dismissed.

### A. Plaintiffs Have Not Specified Which Images Are the Subject of Their Claims

The Amended Complaint alleges generally that "Wiley infringed Plaintiffs' copyrights by exploiting their photographs in various publications without permission and/or in excess of any licenses that it may have obtained." FAC ¶ 84.

As noted above, Plaintiffs' counsel admits in correspondence with Wiley's counsel that this allegation does not apply to Hankin and the Estate of Michael Newman – they are not bringing any copyright infringement claims at all in this action.

The remaining Plaintiffs have failed to identify "which specific original works are the subject of the copyright claim." Instead they have merely attached spreadsheets listing their photographs "known to be published by" Wiley, and asserted the conclusory allegation, made

indiscriminately on behalf of all Plaintiffs, that "Wiley used, published, distributed, and/or exploited Plaintiffs' creative works in excess of and outside the limited scope of its limited licenses." FAC ¶ 111. Plaintiffs also claim that "[a] reasonable opportunity for further investigation and discovery will confirm that Defendants [sic] also has infringed other copyrighted works created and owned by Plaintiffs." *Id.* ¶ 87. However, copyright infringement claims with those exact allegations (made by the very same counsel representing Plaintiffs here) have been dismissed by other courts in this District. "Not only is it inadequate to base an infringement claim on overly-inclusive lists of copyrighted works, but it is also insufficient to list certain works that are the subject of an infringement claim, and then allege that the claim is also intended to cover other, unidentified works." *Cole v. John Wiley & Sons, Inc.*, No. 11 Civ. 2090, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012) (dismissing claims where plaintiff attached spreadsheets of images and alleged "a reasonable opportunity for further investigation and discovery will yield evidence that Wiley's infringing of Plaintiff's images is not limited to the photographic works identified herein"); *Plunket*, 2001 WL 175252, at *4 (dismissing infringement action where plaintiff alleged that her copyright claims were not limited to the works identified); *Palmer Kane LLC*, 2013 WL 709276, at *3 (same). Indeed, in the recent cases of *Warren/Rubin/Young-Wolff v. John Wiley & Sons, Inc.*, Nos. 12 Civ. 5070; 12 Civ. 5071; 12 Civ. 5230, 2013 WL 3328224, at *4 (S.D.N.Y. July 2, 2013), Judge Oetken dismissed plaintiff Young-Wolff's claims based on photographs listed in the exhibits to his complaint, letting stand only those claims explicitly described in the body of the pleading.

### B. Plaintiffs Have Not Identified by What Acts and During What Time Their Copyrights Were Infringed

Plaintiffs entirely fail to allege "by what acts and during what time" Wiley purportedly infringed their copyrights. The Amended Complaint merely repeats, without differentiating

between any Plaintiff or any images, that "upon information and belief," Wiley exploited their photographs in "various publications" and "in various ways," such as "exceeding the limitations of licenses" or "publishing Plaintiffs' works prior to obtaining a valid license." FAC ¶¶ 84, 86. Indeed, every allegation in the Amended Complaint is generalized as to all Plaintiffs and as to any and all "photographs" or "creative works." *See id.* ¶¶ 84, 86, 87, 111-116. The only specific facts as to *any* works are found in Exhibits 7-11 of the Amended Complaint, the spreadsheets containing lists of photographs "known to be published by" Defendant. In some instances, the entries on these spreadsheets include certain terms of the purported license issued to Wiley, such as the publication and the licensed print run, while in many other instances, they include <u>no</u> information regarding the purported license terms. *See, e.g.*, Exhibit 7, p. 4; Exhibit 11. But, in either scenario, these generalized pleadings cannot withstand a motion to dismiss. *See Palmer Kane LLC*, 2013 WL 709276, at *3 (the generalized and conclusive pleadings that defendant "exceeded the licenses it obtained to use Plaintiff's images, reused Plaintiffs works without a license" and used the images "without permission" or "prior to obtaining permission" were insufficient to state a claim); *Sun Micro Med. Technologies Corp. v. Passport Health Commc'ns, Inc.*, No. 06 Civ. 2083, 2006 WL 3500702, at *12 (S.D.N.Y. Dec. 4, 2006) ("general allegations as to acts of infringement are insufficient at the pleading stage").

Even in those limited instances where the exhibits identify license terms, they provide no facts to support the Plaintiffs' claims that the licenses were infringed, nor do they provide any timeframe for the purported infringements. This too is fatal to Plaintiffs' copyright claims. *See Palmer Kane LLC*, 2013 WL 709276, at *3 ("Although Exhibit A, listing Palmer Kane's works contains an invoice date for each of the images, the complaint makes no mention of these dates, let alone how they relate to a time period in which Scholastic infringed on Palmer Kane's copyrights"); *Lennon v. Seaman*, No. 99 Civ. 2664, 2002 WL 109525, at *6 (S.D.N.Y. Jan. 28,

2002) (dismissing claims related to 347 photographs where defendant used "only generic and imprecise language" to allege infringement and failed to identify "by what acts" and "at what time" his works were infringed); *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) ("The mere allegation that [Defendant] procured a license to use a copyrighted photograph, which Gruner [co-defendant] later published beyond the scope of that license, is too broad and sweeping to satisfy Rule 8."). Plaintiffs try to mask the lack of any factual support under the veil of Wiley's purported "history" of infringement. *See* FAC ¶¶ 19-30, 100-106. However, the pleading standards do not permit Plaintiffs to make this inferential leap to survive a motion to dismiss. *See, e.g.*, *Cole*, 2012 WL 3133520, at *12 (dismissing copyright claims where plaintiff tried, unsuccessfully, to claim that because "Wiley allegedly obtained access to the 66 photographs listed in the chart [attached to plaintiff's complaint] and published certain of these photographs in some of the 40 publications that were identified in another action as containing unlicensed photographs, Wiley is likely to have infringed his rights in at least one of these 66 photographs.").

Simply put, vague and conclusory allegations of infringement, accompanied by spreadsheets containing lists of images that were published by Defendant, cannot state valid claims for copyright infringement. The Amended Complaint fails to spell out, for each Plaintiff, what images were infringed, when and how – very basic information that Wiley would need in order to respond. These are exactly the type of pleadings that the Federal Rules are intended to prohibit. Wiley should not be made to guess at Plaintiffs' claims. Accordingly, Plaintiffs' copyright claims must be dismissed.

## C.     In the Alternative, Plaintiffs' Claims Should be Severed

Should the Court determine that any of the Plaintiffs' claims survive dismissal, they should be severed into separate actions.  The fact that Plaintiffs are represented by the same counsel and bring suit against the same defendant is insufficient to permit them to join otherwise distinct claims.  FRCP 20 provides that multiple individuals may join in one action as plaintiffs only if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a).

Courts may sever claims improperly joined under FRCP 20 pursuant to FRCP 21.  *Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, No. 03 Civ. 3923, 2004 WL 1586429, at *1 (S.D.N.Y. July 15, 2004).  In determining whether severance is appropriate, courts look to the following factors: "(1) whether the claims arise out of the same transaction or occurrence, (2) whether the claims present common questions of fact or law, (3) whether severance would serve judicial economy, (4) prejudice to the parties caused by severance, and (5) whether the claims involve different witnesses and evidence." *Id.*

While the Amended Complaint (impermissibly) speaks in generalizations as to all Plaintiffs, it is nevertheless evident from the scant allegations and exhibits that each Plaintiff's claim is distinct:  The seven Plaintiffs did not take any photographs together.  Each allegedly licensed their photographs to Wiley through multiple different stock photo agencies or through their own license agreements; the transactions were entered into separately over a span of at least twenty years and often relate to different Wiley book titles and different editions of those books. *See* FAC Exs. 7-11.  Indeed, there is no publication that is common to all Plaintiffs.  *Id.*  Even in those cases involving the same publication, the underlying transaction history is different.

*Compare, e.g.*, Ex. 11 (Gibson photo that appears in *Environmental Science, Second Edition* licensed by Visuals Unlimited) *with* Ex. 10 (Wu photo that appears in *Environmental Science, Second Edition* licensed by Wu directly). Nowhere do Plaintiffs allege that the license terms are identical to each Plaintiff, nor do they allege that there was one act of infringement by Wiley common to all of them. Further, two of the Plaintiffs (Hankin and the Estate of Michael Newman) do not assert copyright infringement claims at all (*see* Part I(A), *supra*).[2]

Accordingly, Plaintiffs' claims (to the extent that they arise at all) arise out of wholly separate transactions and occurrences, involve different facts, and will involve different witness and different defenses. *See Allstate Ins. Co.*, 2004 WL 1586429, at *2-3 (severing insurance coverage claims, even those based on identical contracts, because they involve different occurrences and defenses); *Abraham v. Am. Home Mortgage Servicing, Inc.*, No. 12 Civ. 4686, 2013 WL 2285205, at *4 (E.D.N.Y. May 23, 2013) (severing claims based on separate loan transactions).

Plaintiffs will suffer no prejudice from having to assert claims involving different photographers, different images, different publications, different time periods, different defenses and different witnesses in separate actions. But, Wiley's litigation strategy for each defendant will vary. For instance, how Wiley addresses Plaintiff Psihoyos's claims, which may contain some of the identical photographs and/or books that a court in this district dismissed on summary

---

[2] The same is true of Plaintiffs' declaratory claims (discussed below). Certainly any relief based on contract provisions in licenses entered into between Wiley and the Plaintiffs do not arise out a common transaction or occurrence. Further, even in those cases where Plaintiffs' claims are based on their third-party beneficiary status, each agreement between Wiley and a stock photo agency is different, as is each agreement between the Plaintiffs and the different stock photo agencies. Moreover, those agreements change over time and as evident from the Exhibits, the licensing history in question spans twenty years. There is nothing in those claims that is common to all Plaintiffs.

judgment, may differ from how it addresses Plaintiff Senisi's claims. *See Psihoyos v. John Wiley & Sons, Inc.*, No. 11 Civ. 1416, 2011 WL 4916299 (S.D.N.Y. Oct. 14, 2011), *reconsideration denied,* 11 Civ. 1416, 2011 WL 5980423 (S.D.N.Y. Nov. 29, 2011) (granting and upholding summary judgment on "narcoleptic dog" photographs and other photographs that appeared in textbooks that also are at issue in this case). Given that Plaintiffs suggest that they have claims based on licenses more than twenty years old, it is clear that some, but not necessarily all, of Plaintiffs' claims would be met with a statute of limitations defense.

The joinder of these Plaintiffs is yet another of their counsel's inappropriate attempts to bring distinct copyright infringement cases together, and should not be permitted by the Court. *See, e.g.*, *Palmer Kane LLC v. Scholastic Corp.*, No. 11 Civ. 7456, 2012 WL 2952898 (S.D.N.Y. July 16, 2012) (refusing to certify class of photographers claiming infringement over the same educational product on account of the variety of contractual relationships at issue and thus, the lack of "predominance"). While it may be more convenient for Plaintiffs' counsel to bring this novel lawsuit as one claim, there is no common tie among these Plaintiffs, and if not dismissed, their claims should be severed.

## II.

### THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' DECLARATORY CLAIM AND PLAINTIFFS HAVE FAILED TO STATE A COGNIZABLE CLAIM FOR SUCH RELIEF

Plaintiffs' object in making a claim for declaratory relief is clear. They are not looking for a declaration of their rights on some cognizable claim, instead they are seeking judicial approval for a fishing expedition through Wiley's records, because their counsel hopes to uncover other instances of infringements to sue about (*see* FAC ¶¶ 52, 83) or the names of new photographers to add to their stable. Their theory is unprecedented. By merely alleging that they

are third-party beneficiaries to unpled agreements with unidentified Stock Photo Agencies (none of whom have sued Wiley), Plaintiffs expect to receive unfettered access to Wiley's books and records. However, the Supreme Court has made clear that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Plaintiffs' unprecedented effort to use the Declaratory Judgment Act to circumvent basic jurisdictional and pleading requirements cannot be sustained.

A.     **Declaratory Claims Do Not in and of Themselves Invoke Federal Jurisdiction**

While Plaintiffs allege that jurisdiction lies "pursuant to 28 U.S.C. § 2201 which authorizes the Court to declare the rights and other legal relations between the parties" (FAC ¶ 16), the Declaratory Judgment Act does not independently create federal jurisdiction. Rather, "an action for declaratory judgment may be brought in federal court ordinarily *only* if there would exist a basis for federal jurisdiction in a coercive action between the two parties." *Ariel (UK) Ltd. v. Reuters Grp. PLC*, 2006 WL 3161467, at *10 (S.D.N.Y. Oct. 31, 2006) (internal quotations omitted), *aff'd*, 277 F. App'x 43 (2d Cir. 2008); *see also Tasini v. New York Times Co., Inc.*, 184 F. Supp. 2d 350, 358 (S.D.N.Y. 2002) (federal jurisdiction lies only in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."); *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 851 F. Supp. 2d 544, 551 (S.D.N.Y. 2012), *aff'd*, 2012-1298, 2013 WL 2460949 (Fed. Cir. June 10, 2013) (there must be "an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff had preempted it," because otherwise "any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction").

Furthermore, "[a]s with any federal action, courts may not entertain actions for declaratory judgment '. . . when there is no standing to maintain the action.'" *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) (*quoting Flast v. Cohen*, 392 U.S. 83, 95 (1968)). To assert their claims, Plaintiffs must demonstrate an invasion of a "judicially cognizable interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Cmty. Health Care Ass'n of New York v. DeParle*, 69 F. Supp. 2d 463, 478 (S.D.N.Y. 1999).

The only allegation in Count II that in any way relates to federal law is the conclusory claim that "Wiley's refusing to provide such information to Plaintiffs and infringes [sic], obstructs and violates Plaintiffs' rights, including their rights under the Copyright Act." FAC ¶ 127. However, Plaintiffs' allegations fail to allege a claim that indeed "arises under" the Copyright Act sufficient to confer jurisdiction. Furthermore, even if this claim would require construction of the Copyright Act, it is clear that the statute provides no such basis for relief.

1.    Plaintiffs' Declaratory Claim Does Not "Arise Under" the Copyright Act

In the Second Circuit, a claim "arises under" the Copyright Act for the purpose of jurisdiction "when it: (1) seeks a remedy provided under or (2) alleges a claim requiring construction of the Copyright Act." *Tasini*, 184 F. Supp. 2d at 358-59 (S.D.N.Y. 2002) (*citing Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 349 (2d Cir. 2000)). To invoke jurisdiction, Plaintiffs allege that, "as the owner[s] of copyrights to their creative works," they are entitled to know the full scope of Wiley's uses of their images. FAC ¶ 123. Plaintiffs claim that "Wiley's refusing to comply with Plaintiffs' audit requests constitutes a distinct violation of Plaintiffs' copyrights, including their right to exercise exclusive control over the use of their photos and their inherent right to know the uses that any third-party licensor is making of their works." *Id.* ¶ 63.

The remedy sought by Plaintiffs, however, is not available under Copyright Act, nor have Plaintiffs cited any provision of the Copyright Act that provides for such relief. *See, e.g.*, *Tasini*, 184 F. Supp. 2d at 359 (claim did not "arise under" the Copyright Act because "the complaint, on its face, does not request a remedy expressly granted by the Act"); *Iza Music Corp. v. W & K Music Corp.*, 995 F. Supp. 417, 418 (S.D.N.Y. 1998) ("Because…a joint author's right to an accounting is a creature of state law rather than of the Copyright Act, an action seeking an accounting alone does not satisfy [the "arises under"] test and therefore does not invoke the Court's subject matter jurisdiction under § 1338.").

Nor do Plaintiffs' claims require construction of the Copyright Act. "Not every action affecting or involving copyright 'arises under' the Copyright Act." *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 194 F. Supp. 2d 246, 255 (S.D.N.Y. 2002). While Plaintiffs claim (seemingly to invoke jurisdiction) that Wiley's failure to provide an audit is an infringement of their copyrights, "conduct does not constitute infringement unless that conduct 'conflicts with one of the specific exclusive rights conferred by the copyright statute. Those 'exclusive rights' apply to reproduction of, preparation of derivative works based on, distribution of copies of, public performance of, or public display of, the copyrighted work." *Id.* at 256 (quoting *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 448 (1984)).

Rather, Plaintiffs base their declaratory claim on their purported right, as third-party beneficiaries, to enforce the alleged audit provisions in the agreements between Wiley and unidentified stock photo agencies. *See* FAC ¶¶ 73 ("Plaintiffs are the intended and direct beneficiaries of any licenses related to their photos that the Stock Photo Agencies granted to Defendant") and 82 ("Wiley's refusal to comply with Plaintiffs' audit demands or to disclose its uses of their photos violates the express provisions of license [sic] granted to Wiley."). Such claims, however, are premised on state law, not on the Copyright Act and therefore, do not "arise

under" the Copyright Act. *See Iza Music Corp.*, 995 F. Supp. at 418 (asserting rights conferred

by state law does not invoke federal jurisdiction under § 1338); *Tasini*, 184 F. Supp. 2d at 359

(claims based on interpretation of contract do not "arise under" the Copyright Act).

Accordingly, the Court should decline to exercise jurisdiction over Plaintiffs' claim.[3]

## 2. The Copyright Act Does Not Create a Right to Audit

Even if the Court construes Plaintiffs' declaratory claim as "arising under" the Copyright

Act, which it does not, there is still no right under Copyright Law for the relief Plaintiffs are

seeking. Plaintiffs allege that "as owners of the copyrights," they "have an inherent right to

know the uses that any third-party licensor is making of their works." FAC ¶ 63. But the

Amended Complaint fails to identify any provision of the Copyright Act that confers upon

Plaintiffs the right "to know what uses are being made by a third-party." The rights afforded to

copyright owners are clearly enumerated in Section 106 of the Copyright Act, and nothing in

Section 106 or elsewhere grants copyright owners a statutory right to audit Wiley's supposed

uses of their works. *See* 17 U.S.C. § 106; *see also Elektra Entm't Grp., Inc. v. Barker*, 551 F.

Supp. 2d 234, 246 (S.D.N.Y. 2008) ("the only rights granted to the copyright holder by the

statute are found in the numbered sub-sections of Section 106, and unless one of those rights is

infringed, the copyright holder has no recourse in law under Section 106.").

Were such a right to exist under the Copyright Act, it would render superfluous all

contractual audit rights that copyright holders and licensees bargain for on a regular basis.

---

[3] The Complaint does not allege, nor can it, that jurisdiction lies on account of diversity pursuant to 28 U.S.C. § 1332(a), which confers jurisdiction "only when all adverse parties to a litigation are completely diverse in their citizenships." *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). As admitted in the Amended Complaint, Plaintiffs Ellen Senisi, Laura Dwight, and Hazel Hankin are residents of New York (FAC ¶¶ 3, 4, 8) and Wiley is a New York corporation. FAC ¶ 10. *See Correspondent Servs. Corp. v. First Equities Corp. of Florida*, 442 F.3d 767, 769 (2d Cir. 2006) (dismissing declaratory judgment action based on state law claims where plaintiff failed satisfy elements for diversity action).

Indeed, in cases where parties have made claims related to an accounting or audit of copyright uses, those allegations have invoked state law claims, different and apart from claims under the Copyright Act. *See, e.g., Iza Music Corp*, 995 F. Supp. at 418 (a joint author's right to an accounting is a state law claim, not a copyright claim); *eScholar, LLC v. Otis Educ. Sys., Inc.*, 387 F. Supp. 2d 329, 333 (S.D.N.Y. 2005) (contractual claim for a right to audit and receive license fee sought to protect rights is "qualitatively different" from those protected by copyright and therefore not preempted by the Copyright Act).

Finally, while Plaintiffs claim that a refusal to provide an audit is a "distinct . . . infringement of copyright," they have ignored the pleading standards for a copyright infringement claim. *See* Point I, *supra*. Among the requisite elements is an identification of the "specific original works are the subject of the copyright claim," (*Kelly*, 145 F.R.D. at 36) and Plaintiffs have not done so here. Plaintiffs' claim for declaratory relief turns copyright law on its head by demanding that Wiley identify *to Plaintiffs* what uses Wiley may be making of Plaintiffs' unidentified "creative works." FAC ¶¶ 127, 129. There is no cognizable legal action, or right, under the Copyright Act that provides a basis for Plaintiffs to assert their declaratory relief claims. For this additional reason, Count II must be dismissed.

## B.     Plaintiffs Fail to Allege any other Cognizable Claim for Relief

By adding a copyright infringement claim to their Amended Complaint, Plaintiffs hope to bootstrap into this action their declaratory requests for audits. While adding the infringement claim might entitle Plaintiffs, if they prevailed, to a declaration that their copyrights were infringed, in no way does it give them a free pass into Wiley's record rooms. There is no copyright claim here that would entitle Plaintiffs to that sort of relief, and in reality, Plaintiffs have not alleged *any* cognizable right, under federal or state law, that would allow that kind of remedy. Count II of the Amended Complaint must be dismissed.

Plaintiffs have alleged that they licensed their photographs to Wiley in one of two manners, either: (a) directly or (b) through a third party licensor. Plaintiffs fail to state a claim for an "audit" under either scenario.

1.    <u>Plaintiffs Fail to Allege a Contractual Right to an Audit</u>

Plaintiffs fail to allege any audit right on account of any direct agreements with Wiley. The sole allegations as to *any* contract between the Plaintiffs and Wiley is the claim that Plaintiffs issued direct licenses to Wiley that were limited to specific usage rights regarding specific books. FAC ¶¶ 36-38. Plaintiffs do not identify any details concerning those contracts, such as when they were entered into, who the parties are, and what images they concern. More tellingly, Plaintiffs do not even allege that such contracts contain an "audit" provisions entitling them to the relief they seek. "A breach of contract claim will withstand a motion to dismiss only if plaintiff 'allege[s] the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated.'" *Broughel v. Battery Conservancy*, No. 07 Civ. 7755, 2009 WL 928280, at *5 (S.D.N.Y. Mar. 30, 2009) (quoting *Sirohi v. Trustees of Columbia Univ.*, 162 F.3d 1148 (2d Cir. 1998)). The Plaintiffs must also clearly identify which contract provisions were breached as a result of the defendant's conduct. *Id.* Plaintiffs cannot plausibly allege an invasion of a "judicially cognizable interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" (*DeParle*, 69 F. Supp. 2d at 478) on the basis of contractual provisions that they have not even alleged to exist.

2.  Plaintiffs Fail to Allege a Third-Party Beneficiary Right

Plaintiffs maintain that they have standing to assert audit rights on account of their third-party beneficiary status under unidentified agreements between Wiley and unidentified third-party "Stock Photo Agencies." FAC ¶¶ 73-82. Plaintiffs' claims, however, do not establish any right to enforce purported "audit" provisions between Wiley and the "Stock Photo Agencies."

To claim a right as a third-party beneficiary, each Plaintiff must demonstrate: "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to [Plaintiffs] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, No. 11 Civ. 4491 PGG, 2013 WL 1294519, at *11 (S.D.N.Y. Mar. 30, 2013). Further, "New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement. . . . Absent such intent, the third party is merely an incidental beneficiary with no right to enforce the contract." *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272, 2004 WL 35439, at *14 (S.D.N.Y. Jan. 6, 2004) (internal quotations omitted); *see also Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006) ("It is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed") (internal quotations omitted). Each of the Plaintiffs fails to meet the basic pleading requirements to confer standing to assert such a claim.

Plaintiffs have failed to allege the most basic element of their third-party beneficiary claim – the existence of a valid and binding agreement between Wiley and some third party. *Capmark Bank*, 2013 WL 1294519, at *11. Instead, they allege in general that the "licenses issued by these Stock Photo Agencies included express audit or certification provisions that obligate Wiley to disclosure information regarding use of any licensed content" (FAC ¶ 75) and

that Plaintiffs are the "intended and direct beneficiaries of any licenses related to their photos that the Stock Photo Agencies granted to Defendants." *Id.* ¶ 73.

The form agreements they attach (Getty and Science Faction) *are not with Wiley*. The only allegation that those terms are part of Wiley's purported agreements with those agencies (if there are any such agreement) is that "all" of Getty and Science Faction's licenses are accompanied by such terms. FAC ¶¶ 76, 79. Simply alleging that "the licenses issued by the other Stock Photo Agencies include similar audit provisions" (*id.* ¶ 78) entirely fails to properly establish a "valid and binding" contract between Wiley and any of the "Stock Photo Agencies." For this reason alone, Plaintiffs have failed to allege a third-party beneficiary claim.

Plaintiffs have failed to plead the other elements of a third-party beneficiary claim as well. "New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 733 (S.D.N.Y. 1989). To meet this burden, Plaintiffs must allege that "no one other than the third party can recover if the promisor breaches the contract" or that "the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party," such as "by fixing the rate or price at which the third party can obtain services or goods." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 45, 485 N.E.2d 208, 212 (1985); *see also Abu–Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F.Supp.2d 155, 172 (S.D.N.Y.2009) (a third-party beneficiary has standing "only if no one other than the [beneficiary] can recover if the promisor breaches the [promise] or the contract language . . . clearly evidence[s] an intent to permit enforcement by the third-party.").

The form Getty and Science Faction agreements Plaintiffs attach do not meet these requirements. Not only do both agreements give the respective photo agencies an option, at their discretion (not Plaintiffs'), to exercise any audit rights (*see* Ex. 5, ¶ 11.2; Ex. 6 ¶ 2.h), but the

Getty agreement also makes explicit that NBA Entertainment (and two other NBA entities) *are* third-party beneficiaries for certain enumerated licenses. *See* Ex. 5 ¶ 10.5 ("Licensee agrees that (i) for licenses of NBA Licensed Material, NBA Entertainment . . . is a third-party beneficiary of this Agreement . . ."). Accordingly, when Getty intends to make a party a third-party beneficiary, it does so explicitly. In addition, the fact that Plaintiffs allege that the *Plaintiffs'* agreements with Getty and Science Faction contain royalty provisions (*id.* ¶ 72) does not render them third-party beneficiaries of any agreements between Wiley and these photo agencies – an incidental benefit is insufficient to warrant third-party standing to enforce an agreement. A Massachusetts court recently addressed a similar claim and, applying New York law, determined that the plaintiff-photographer was *not* a third-party beneficiary to the license between publisher HMH and Corbis. *See Lefkowitz v. Houghton Mifflin Harcourt Pub. Co.*, No. Civ.A. 12-10614-FDS, 2013 WL 3816717, at *4 (D. Mass. July 19, 2013). The court noted that while "[t]here is no question that plaintiff benefits from the overall contract between HMH and Corbis, as he undoubtedly receives payments from Corbis as a result of the payments to Corbis made by HMH," "that benefit only establishes that he is an incidental beneficiary of the contract." *Id.*

In sum, Plaintiffs have failed to identify anything in the two quoted licensing agreements (and certainly nothing in unidentified agreements) that affords them standing to seek the declaratory relief. Accordingly, their claims must be dismissed. *See, e.g.*, *Highlands Ins. Co.*, 2004 WL 35439m at *13 (where plaintiff was "not an intended third-party beneficiary to the agreement . . . it has no standing to raise a claim or seek declaratory or injunctive relief."); *Eaton Vance Mgmt. v. ForstmannLeff Associates, LLC*, No. 06 Civ.1510, 2006 WL 2331009, at *6 (S.D.N.Y. Aug. 11, 2006) ("Parties who lack standing to enforce an agreement also lack standing to seek a declaration of rights under the contract.").

3.    Plaintiffs Fail to Allege a Right to an Accounting

Lastly, Plaintiffs' vague allegation that they are entitled to an "accounting" of Wiley's uses of their images fails to state a claim. FAC ¶ 48. Under New York law, a claim for an accounting "requires a fiduciary relationship between plaintiff and the defendant, or the existence of a joint venture or other special circumstance warranting equitable relief." *Gary Friedrich Enterprise, LLC v. Marvel Enterprises, Inc.*, 713 F. Supp.2d 215, 233 (S.D.N.Y. 2010). *See also Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, 484 (S.D.N.Y. 2009) ("Proof of a fiduciary relationship is a mandatory element of an accounting claim under New York law."). Nothing in the Amended Complaint identifies or makes any allegations that would support such a claim. Accordingly, any claim for declaratory relief on the basis of an accounting must be dismissed. *See Affiliated Records Inc. v. Taylor*, No. 09 Civ. 9938, 2012 WL 1675589, at *5 (S.D.N.Y. May 14, 2012) (dismissing accounting claim where "the record is devoid of any evidence that plaintiff and defendant [] had a confidential or fiduciary relationship . . . nor does plaintiff allege as much in its complaint"); *see also Saunders v. AOL Time Warner, Inc.*, 18 A.D.3d 216, 217 (1st Dep't 2005)("[I]n the absence of a confidential or fiduciary relationship, plaintiffs have no cause of action for an accounting.").

## CONCLUSION

For each of the foregoing reasons, Wiley respectfully request that the Court grant its motion to dismiss the Amended Complaint in its entirety, with prejudice. Plaintiffs were given the opportunity to amend their pleadings and failed to remedy the fatal deficiencies. Instead, the Amended Complaint merely added additional deficient claims. Plaintiffs' attempt to circumvent well-established pleading standards in an effort to obtain discovery is impossible, and must be denied.

Dated: August 5, 2013

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By:_____
        Edward H. Rosenthal
        Jessie F. Beeber
        Anna Kadyshevich
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax:  (212) 593-9175
erosenthal@fkks.com
jbeeber@fkks.com
akadyshevich@fkks.com

*Attorneys for Defendants*