UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
ELLEN SENISI et al.,

            Plaintiffs,

     -v-                                     No.  13 Civ. 3314 (LTS)(AJP)

JOHN WILEY & SONS, INC.,

            Defendant.
------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

          Defendant John Wiley & Sons, Inc. ("Defendant" or "Wiley"), a publisher of academic, scientific and educational journals and books, including textbooks, moves, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the Amended Complaint of Plaintiffs Ellen Senisi ("Senisi"), Laura Dwight ("Dwight"), Louis Psihoyos ("Psihoyos"), Norbert Wu ("Wu"), Mark Gibson ("Gibson"), Hazel Hankin ("Hankin") and the Estate of Michael Newman ("Newman Estate") (collectively, "Plaintiffs").  Four of the Plaintiffs, who are the owners of copyrights to numerous photographs, have sued Wiley for copyright infringement. In their Amended Complaint,[1] all Plaintiffs also seek a declaration, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., that Plaintiffs, as copyright owners of works previously used and currently being used by Wiley, are entitled to an audit or accounting of all of Wiley's uses of all of Plaintiffs' works.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.  The Court has considered the parties'

---

[1]    Plaintiffs amended their initial complaint in response to detailed notice of Defendant's intent to move against the original complaint.  (See Notice of Motion, Docket Entry No. 15.)

submissions and arguments.  For the following reasons, the Court grants Wiley's motion to dismiss the Amended Complaint, without prejudice to the renewal of certain claims.


<u>BACKGROUND</u>

The following facts are alleged in the Amended Complaint.  Plaintiffs are six professional photographers and the estate of a deceased photographer, Michael Newman.  Plaintiffs license their photographs to end-users both directly and through various licensing agreements with third-party agencies or "stock photo agencies."  (Am. Compl. ¶¶ 14, 36, 67, 71.)[2]  Wiley obtains photographs for its publications under direct licenses with photographers and under indirect licenses through stock photo agencies.  (<u>Id.</u> ¶¶ 34, 36, 67.)

Plaintiffs allege that they own the copyrights in "hundreds of images" licensed to Wiley "for limited and specific uses."  (<u>Id.</u> ¶¶ 13, 31.)  According to Plaintiffs, all of the licenses that were issued to Wiley were "Rights Managed," meaning that Wiley could only use Plaintiffs' photographs in limited ways and that the license fees were calculated based on the limited rights being granted.  (<u>Id.</u> ¶¶ 33, 37.)  Plaintiffs further allege that the licenses issued by the stock photo agencies included express audit or certification provisions obliging Wiley to disclose information regarding the use of any licensed photographs and that Plaintiffs were the direct and intended beneficiaries of these licensing agreements.  (<u>Id.</u> ¶¶ 70-73.)

Plaintiffs claim that Wiley has been sued for numerous copyright infringement and license violations that are "identical" to those alleged here.  (Am. Compl. ¶¶ 19-30.)  The

---

[2]    These stock photography agencies include Corbis Corp. ("Corbis); Getty Images (US) Inc. ("Getty"); Minden Pictures Inc. ("Minden Pictures"); Visions of Tomorrow, Inc. (d/b/a Science Faction) ("Science Faction"); The Image Works ("Image Works"); Visuals Unlimited ("VU"); and other vendors.  (Am. Compl. ¶ 68.)

Amended Complaint alleges that, "[g]iven the growing evidence of Wiley's history of copyright infringements, Plaintiffs became concerned and reasonably suspected that Wiley similarly violated the terms of licenses governing its limited right to use Plaintiffs' photos, including both the licenses issued directly by Plaintiffs and licenses issued indirectly by their agents." (Id. ¶ 39.) Plaintiffs further contend that "Wiley remains in sole possession of the information necessary to determine the actual uses that it made of each photo including whether it exceeded the limitations of its licenses," but that Wiley has not disclosed any usage information to them. (Id. ¶¶ 44-50.) According to Plaintiffs, they need this information in order to manage the licensing of their photographs to other clients. (Id. ¶¶ 51-53.)

        In the Amended Complaint, Plaintiffs allege generally, "upon information and belief," that Wiley routinely exceeded and continues to exceed license limitations and infringes Plaintiffs' copyrights by, inter alia, publishing photographs without permission; reusing Plaintiffs' photographs without obtaining a valid license prior to publication; exceeding the scope of the licenses by printing more copies than authorized; publishing Plaintiffs' works in electronic, ancillary, foreign or derivative publications without permission; and refusing to provide usage information to Plaintiffs. (Id. ¶¶ 23, 86, 111-115.)

        Four of the Plaintiffs assert copyright infringement claims against Wiley, which are related to the photographs identified in Exhibits 7 through 10 attached to the Amended Complaint. (Am. Compl. ¶¶ 108-109.) Plaintiffs allege generally that they registered their copyrights with the U.S. Copyright Office, but do not provide registration numbers or registration dates. (Id. ¶ 110.) Exhibits 7 through 10[3] are spreadsheets titled "Photos known to

_____

[3]     On a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b), the court may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied upon by the plaintiff in bringing the suit. ATSI Commc'ns, Inc. v. Shaar Fund. Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

be Published by John Wiley Sons, Inc. [sic]," which list photographs owned by Plaintiffs Senisi, Dwight, Psihoyos, and Wu.[4]  These exhibits contain information identifying the photographs (either by image number or description), information relating to the publication in which the photograph was allegedly published, and information relating to the terms of the licensing agreement or lack thereof.  (See Am. Compl., Exs. 7-10.)[5]  No photographs are attributed to Hankin or the Newman Estate, neither of which is asserting copyright infringement claims at this time.  (Id. ¶ 108.)  Plaintiffs assert that "[a] reasonable opportunity for further investigation and discovery will confirm that Defendants [sic] also has infringed other copyrighted works created and owned by Plaintiffs."  (Id. ¶ 87.)

In Count I of the Amended Complaint, Plaintiffs Senisi, Dwight, Psihoyos and Wu assert claims for copyright infringement, alleging that Wiley willfully violated their copyrights in the works identified in Exhibits 7 through 10 by exploiting the works in various ways that exceeded the scope of limited licenses, and by making unlicensed use of the works.

---

[4]    In the body of the Amended Complaint, Plaintiff Gibson alleges that he owns a photograph that Wiley published in the Third Edition of a book entitled "Environmental Science" (for which Wiley was held liable for copyright infringement in another case) and in two books entitled "Visualizing Geology" and "Visualizing Earth Science" also published by Wiley (and at issue in another case). (Id. ¶ 41.)  Exhibit 11 lists "Gibson photos known to be published by John Wiley & Sons, Inc."  However, Gibson does not assert a claim for copyright infringement. (See Am. Compl. ¶¶ 108-109.)

[5]    Each spreadsheet includes columns specifically identifying: the individual plaintiff copyright owners; Wiley as "user;" either the owner or a specific agency as licensor; the image number and/or other description of the title of the allegedly infringing publication; the number of the allegedly infringing publication; the number of the allegedly infringing edition; publication author; "invoice number;" "invoice or royalty settlement date;" licensed print run; licensed distribution region; electronic rights if any; licensed language; and, in some instances, the location of the photograph in the work.  None specifically identifies the date of any license or of any alleged infringement, nor are any license provisions other than those summarized in the spreadsheet provided.  With respect to some works, the "Invoice No." column entry indicates "not licensed."  Some of the columns are blank with respect to some of the photographs.

These Plaintiffs seek injunctive relief precluding Wiley from copying, displaying, distributing, advertising and/or selling the infringing publications identified within the Amended Complaint. (Id. ¶¶ 107-121.)  In Count II of the Amended Complaint, all Plaintiffs demand that Wiley disclose all of the uses that it has made of their photographs.  (Id. ¶¶ 43-49, 121-131.)  Plaintiffs assert that Wiley's failure to disclose this information is "a distinct violation of Plaintiffs' copyrights," a breach of their direct licensing agreements with Wiley and a breach of the licenses issued by the stock photo agencies, which allegedly require that Wiley disclose information regarding the use of any licensed content. (Id. ¶¶ 63, 73, 75, 123-128.)  Claiming that there is "an actual controversy" as to whether Plaintiffs are entitled to obtain such information from Defendants, Plaintiffs seek a declaration "of their rights to know and to be provided information regarding what uses Defendant has made and is making of their creative works."  (Id. ¶¶ 128, 129.)

In its motion, Wiley asserts that Plaintiffs' copyright infringement claims are insufficiently pleaded and that, to the extent any of the claims is properly pleaded, each Plaintiff's claims should be severed from those of the others.  As to the declaratory judgment claim asserted in Count II, Wiley contends that the court lacks federal question subject matter jurisdiction and the claim fails on its merits because the disclosure right that Plaintiffs assert under the Copyright Act is non-existent, and that the claim fails on its merits to the extent it is asserted pursuant to contracts because Plaintiffs have failed to plead the relevant terms of any of the contracts.

DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), to survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Facial plausibility means that the plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully;" "the plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (internal quotation marks and citation omitted). "However, [c]onclusory allegations or legal conclusions masquerading as factual conclusions' will not withstand dismissal." Jacobs v. Carnival Corp., No. 06 Civ. 0606, 2009 WL 856637, at *3 (S.D.N.Y. March 25, 2009) (citation omitted; alteration in original).

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Court has subject matter jurisdiction of a matter "only if there would exist a basis for federal jurisdiction in a coercive action between the two parties." Ariel UK Ltd. v. Reuters Grp. PLC, No. 05 Civ. 9646(JFK), 2006 WL 3161467, at *10 (S.D.N.Y. Oct. 31, 2006), aff'd, 277 F. App'x 43 (2d Cir. 2008). A plaintiff must also have standing to bring a claim under the Declaratory Judgment Act. Velvet Underground v. Andy Warhol Found for the Visual Arts, 890 F. Supp. 2d 398, 403-04 (S.D.N.Y. 2012). Where a motion to dismiss for lack of subject matter jurisdiction is brought under Federal Rule of Civil Procedure 12(b)(1), the court must accept factual allegations in the

complaint as true, but it need not draw inferences favorable to the plaintiff.  <u>J.S. ex. Rel. N.S. v.</u>
<u>Attica Cent. Sch.</u>, 386 F.3d 107, 110 (2d Cir. 2004).

<u>Count I – Copyright Infringement Claims</u>

   Wiley moves to dismiss Plaintiffs' copyright infringement claims, arguing that
the Amended Complaint has not plausibly alleged facts framing their claims for copyright
infringement.  "In order to state a claim for copyright infringement a plaintiff must allege 1)
which specific original works are the subject of the copyright claim, 2) that plaintiff owns
copyrights in those works, 3) that the copyrights have been registered in accordance with the
statute, and (4) by what acts during what time the defendant infringed the copyright."  <u>Palmer</u>
<u>Kane LLC v. Scholastic Corp.</u>, No. 12 Civ. 3890, 2013 WL 709276, at *2 (S.D.N.Y. Feb. 27,
2013) (internal quotation marks and citation omitted).  "[B]road, sweeping allegations of
infringement do not comply with Rule 8," which sets the basic pleading standards for federal
court actions.  <u>Jacobs</u>, 2009 WL 856637 (internal quotation marks and citation omitted).

   As for the second and third elements of a claim for copyright infringement,
namely, that Plaintiffs own copyrights in the relevant works and that those copyrights are valid,
"the complaint is not required to attach copies of registration certificates or provide registration
numbers for all of the copyrights at issue in order to survive a motion to dismiss."  <u>Palmer Kane</u>
<u>LLC</u>, 2013 WL 709276, at *3 (citations omitted).  The Amended Complaint here alleges that
Plaintiffs hold valid copyrights that are registered with the United States Copyright Office.  (Am.
Compl. ¶¶ 108-110.)  Accordingly, at this juncture, Plaintiffs have satisfied the second and third
requirements for the photographs identified in the Complaint.  <u>See</u>, <u>e.g.</u>, <u>Bill Diodato</u>

Photography LLC v. Avon Products, Inc., 12 Civ. 847(RWS), 2012 WL 3240428, at *8

(S.D.N.Y. Aug.7, 2012) ("The facts alleged in the Complaint, which are accepted as true at this

stage of the litigation, expressly state that 'Plaintiff has a registered copyright in the creative

works identified herein.'  Accordingly, Plaintiff has fulfilled the precondition of alleging that it

holds a registered copyright") (internal citation omitted).

    As for the first element, whether Plaintiffs have sufficiently pleaded the specific

works that are the subjects of the copyright claim, the spreadsheets attached to the Amended

Complaint as Exhibits 7 through 10 list Plaintiffs' copyrighted photographs that are purportedly

"known to be published by" Wiley  (See Am. Compl., Exs. 7-10.)  In the spreadsheets, the

Plaintiffs offer varying degrees of information as to each photograph, including: the

photograph's licensor; image identification(s); a description of the photograph; the title of the

Wiley publication in which the photograph was published, the publication's edition number and

author; the invoice number for the purchase of the photograph; the invoice or royalty statement

date; the licensed print run quantity; the licensed distribution region; electronic rights; licensed

languages; and the location of the photograph in the publication.  (Id.)  Where the claim is that

Wiley had no rights to publish the work at all, the legend "Not licensed" appears in the "Invoice

No." column.  (Id.)

    Wiley contends that, even if Plaintiffs have satisfied the first element of a

copyright infringement claim by identifying the relevant works, they have not satisfied the fourth

element because Plaintiffs must identify "by what acts during what time the defendant infringed

[Plaintiffs'] copyright[s]."  Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992).  The

Amended Complaint does so, insofar as it specifies relevant publications and licensing

restrictions.  According to the Amended Complaint, Wiley obtained licenses to use Plaintiffs'

photographs for a specific purpose and then used the images for other purposes and in other

publications, and also used images for which it had not obtained a license.  (Am. Compl. ¶ 111.)

In paragraph 86 of the Amended Complaint, Plaintiffs further allege that Wiley infringed upon

each copyrighted work in at least one of eight ways.  (Am. Compl. ¶ 86.)  As in

Warren/Rubin/Young-Wolff v. Wiley & Sons, Inc., 952 F. Supp. 2d 610, 618 (S.D.N.Y. 2013),

the Court finds the complaint "provides sufficient notice to Wiley as to how the copyrights at

issue have been infringed, as Wiley 'may, in an abundance of caution, assume that it is being

accused of violating each license in every way identified.'"  Id. (quoting Pacific Stock, Inc. v.

Pearson Educ., Inc., No. 11 Civ. 0423, 2012 WL 93182, at *6 (D. Haw. Jan. 11, 2012) (holding

that it is "not fatal to [plaintiff's] copyright claim that the Complaint fails to specify how each

particular photograph has been infringed")); Palmer Kane, 2013 WL 709276, at *3 ("the

complaint need not specify which copyright is infringed by which act").  Although the Amended

Complaint does not specify the relevant licensing date for each photograph, Exhibits 7 through

10 do identify the edition of the publication in which the photograph was published; the invoice

or royalty statement dates; the license start dates and the authorized print run.  This information

appears to be sufficient to indicate the approximate time frame.  C.f. Young-Wolff v.

McGraw-Hill Companies, No. 13 Civ. 4372 (KMW)(JCF), 2014 WL 349711, at * 5 (S.D.N.Y. Jan.

31, 2014) (copyright claim dismissed), where "the Complaint d[id] not contain a single date or

reference to a time period  . . . and thus fail[ed] to specify during what time the defendant

infringed the copyright" (internal quotation marks and citations omitted)).

              The Court finds that Plaintiffs have adequately pleaded copyright infringement as

to each of the works identified in Exhibits 7 through 10.  See Young-Wolff v. McGraw-Hill

Companies, 2014 WL 349711, at * 4 (finding that allegations in an exhibit "which lists for each

photograph at issue an image number and description, the publication title in which the photograph appears (for most photographs), and the licensing agent, are specific enough to give Defendant fair notice of the claims against it") (collecting cases where other courts found similar allegations to be sufficient); see also Schneider v. Pearson Educ. Inc., No. 12 Civ. 6392(JPO), 2013 WL 1386968, at *2 (S.D.N.Y. Apr. 5, 2013) (the exhibit to the complaint was sufficient as it "enumerate[d] not only the name and registration number of each work, but also the name of the Pearson publication or publications in which each work appeared").

Plaintiffs further contend that "[a] reasonable opportunity for further investigation and discovery will confirm that Defendan[t] also has infringed other copyrighted works created and owned by Plaintiffs." (Am. Compl. ¶ 87.) This allegation, however, is too vague and speculative to state a claim for copyright infringement. "[T]o the extent that Plaintiff[s] ha[ve] attempted to state a claim for copyright infringement concerning works [other than the specific ones listed in exhibits 7-10], [Plaintiffs] ha[ve] failed to do so." Schneider, 2013 WL 1386968, at *3. Defendant's motion is granted as to any claims for photographs that are not identified in Exhibits 7 through 10, without prejudice to timely applications to specify further works.


Severance of Plaintiffs' Claims

Defendants further request that the Court sever any of Plaintiffs' copyright infringement claims that survive dismissal, arguing that Plaintiffs do not assert a right to relief jointly, severally, or in the alternative; their claims do not arise out of the same transactions or series of transactions or occurrences; and there are insufficient common questions of law or fact. Under Federal Rule of Civil Procedure 21, a court may sever claims improperly joined but must consider: "(1) whether the claims arise out of the same transaction or occurrence, (2) whether the

claims present common questions of fact or law, (3) whether severance would serve judicial

economy, (4) prejudice to the parties caused by severance, and (5) whether the claims involve

different witnesses and evidence."  Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co., No.

03 Civ 3923, 2004 WL 1586429, at *1 (S.D.N.Y. July 15, 2004).  "Further, '[t]he decision

whether to grant a severance motion is committed to the sound discretion of the trial court.'"

In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, 214 F.R.D. 152, 155

(S.D.N.Y. 2003) (quoting New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1082 (2d Cir.

1988)).  "The trial court . . . has great discretion to restructure an action to promote the efficient

administration of justice."  Id.  (citation omitted).

       Here, the Plaintiffs did not take any photographs together and each allegedly

licensed his or her photographs to Wiley through multiple stock photography agencies or

through individual direct licensing agreements.  These transactions were entered into over a time

span of at least twenty years and relate to different Wiley book titles and different editions of

those books, and there is no publication that is common to all Plaintiffs.  (See Am. Compl., Exs.

7-11 (identifying approximately 200 images allegedly licensed to Wiley from at least 10

different sources, printed in approximately numerous textbooks and editions spanning from 1991

to 2011).)  Even those claims based on publications that contain more than one allegedly

infringing photograph have different transaction histories.  (See Id., Exs. 10-11, the Gibson

photo that appears in Environmental Science, Second Edition was licensed by Visuals Unlimited

while the Wu photo that appears in the same publication was licensed by Wu directly.)  Wiley

argues that it will be prejudiced if these actions remain combined, citing examples of how some

defenses, like the statute of limitations or estoppel, will only be available as against certain

Plaintiffs.  Despite Wiley's centralized licensing department and the overlap in the publications

in which the photographs appear, the Court finds that the lack of common questions of fact and law and the potential prejudice to Wiley justify granting Wiley's motion to sever Plaintiffs' remaining copyright infringement claims.  See, e.g., Kalie v. Bank of Am. Corp., No 12 Civ. 9192(PAE), 2013 WL 4044951 (S.D.N.Y. Aug. 9, 2013) (severing claims against mortgage providers alleged to be part of a "single predatory lending scheme" where "[e]ach of those 16 plaintiffs entered into a different loan transaction at a different time, and with one exception each of the 16 plaintiffs' claims related to a distinct property").  Accordingly, Plaintiffs will be afforded 45 days in which to amend the instant complaint to assert the claims of only one of the Plaintiffs.  The surviving claims of the other individual Plaintiffs may be asserted in separate, new, actions.

Count II – Declaratory Relief Claims

Wiley also moves to dismiss Plaintiffs' claims for declaratory relief, arguing that Plaintiffs' claim of entitlement to accountings of Wiley's use of their works have no foundation in the Copyright Act and are plead insufficiently to the extent that they are premised on contract rights.[2]

---

[2]    Defendants also assert that the Court lacks subject matter jurisdiction of the claims to the extent that copyright infringement claims fail.  As explained above, the copyright claims of the four Plaintiffs whose works are identified in Exhibits 7 through 10 are pleaded sufficiently.  As to the other three Plaintiffs, who have not pleaded copyright infringement claims, the Court finds that their invocation of the Copyright Act as a basis for the claimed right to an accounting is sufficient to support subject matter jurisdiction, but that the claim fails on the merits for the reasons explained infra.  The contract-based declaratory judgment claims of those three Plaintiffs are dismissed for lack of an independent basis for subject matter jurisdiction.

Plaintiffs assert that, "as the owner[s] of copyrights to their creative works, Plaintiffs are entitled to know the full scope of Defendant's past and ongoing use of their creative works" (Am. Compl. ¶ 123), and that Defendant's "refus[al] to comply with Plaintiffs' audit requests constitutes a distinct violation of Plaintiffs' copyrights, including their right to exercise exclusive control over the use of their photos and their inherent right to know the uses that any third-party licensor is making of their works" (id. ¶ 63). Plaintiffs identify no specific provision of the Copyright Act that confers the claimed rights on them. The rights afforded to copyright owners are enumerated in Section 106 of the Copyright Act. "Unless one of those rights is infringed, the copyright holder has no recourse in law under Section 106. Elektra Entm't Grp., Inc. v. Barker, 551 F. Supp. 2d 234, 246 (S.D.N.Y. 2008) (citation omitted). The Copyright Act only confers specific exclusive rights which apply to the "reproduction of, preparation of derivative works based on, distribution of copies of, public performance of, or public display of, the copyrighted work." Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc., 194 F. Supp. 2d 246, 256 (S.D. N. Y. 2002) (internal quotation marks and citation omitted).

Plaintiffs have not pointed to any language in the Copyright Act that supports their right to an audit of Wiley's alleged past and ongoing uses of their copyrighted works, nor have they shown how such a right could fall within one of the six exclusive rights granted to copyright owners and enumerated under 17 U.S.C. § 106. They also have not provided any case law to support their claim. Indeed, the only decisions dealing with such a claim that have been brought to the Court's attention reject Plaintiffs' position. See Young-Wolff v. McGraw-Hill Companies, 2014 WL 349711, at *6 (dismissing declaratory judgment claim because "Plaintiff points to neither case law nor language in the Copyright Acting indicating that a copyright owner has an inherent right to sue a licensee for an audit"). See also Edward H. Rosenthal Decl., Ex. B

(Ellen Senisi v. The Houghton Mifflin Harcourt Publishing Co. et. al., 13 Civ. 2891 (GBD),

Aug. 13, 2013, Transcript, 41: 14-18 ("I am not aware of any case law, any language in the

Copyright Act, or any legitimate legal theory that gives the copyright owner an inherent right to

audit everybody who is licensed by others to use her photograph.  She doesn't have the right to

demand audits from everybody who printed her photo") (dismissing plaintiff's declaratory

judgment claim).  Accordingly, the Court holds that Plaintiffs' declaratory judgment claim fails

on the merits insofar as it is based on the Copyright Act.


Contract Based Claims

          The Court next considers whether Plaintiffs are entitled, pursuant to contracts

with Wiley and/or as third party beneficiaries of contracts between Wiley and the stock photo

agencies, to an audit or accounting of Wiley's records under state law.  Plaintiffs allege that

Wiley, in refusing to provide them with details of its usage of their works, has breached

obligations under direct and stock photo agency licensing agreements.  "Under New York law,

the elements of a breach of contract claim are: (1) the existence of an agreement; (2) adequate

performance of the contract by the plaintiff; (3) breach of [the] contract by the defendant; and (4)

damages."  Swan Media Grp., Inc. v. Staub, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012).  A

sufficient pleading for breach of contract must, "at a minimum, allege the terms of the contract,

each element of the alleged breach and the resultant damages in a plain and simple fashion."

Zaro Licensing Inc., v. Cinmar, Inc., 779 F. Supp. 276, 286 (S.D.N.Y. 1991).  Plaintiffs allege

that they issued direct licenses to Wiley that were limited to specific usage rights regarding

specific publications and that Wiley exceeded the limits of those direct licenses.  Plaintiffs fail,

however, to provide any details regarding the alleged direct contracts between themselves and Wiley including, when they were entered and what images they concerned.  Most significantly, Plaintiffs do not allege that the direct contracts contained "audit" provisions entitling them to the relief that they now seek.  Accordingly, the Court finds that "[t]hese breach of contract claims lack the level of specificity required by Rules 8(a)(2) and 12(b)(6)" insofar as they are premised on obligations under direct agreements between Plaintiffs and Wiley.  See Warren/Rubin/Young-Wolff, 952 F. Supp. 2d at 625 (dismissing breach of contract claim when the complaint only described an array of photographs and the plaintiff did not identify "with any specificity the 'material' or 'express or implied' terms referenced" in the contract.)

       To the extent that Plaintiffs assert their declaratory judgment claims as third party beneficiaries to contracts between the stock photo agencies and Wiley, each Plaintiff must allege facts sufficient to demonstrate plausibly: "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [plaintiff's] benefit and (3) that the benefit to [plaintiff] is sufficiently immediate, rather than incidental, to indicate the assumption of a duty to compensate [plaintiff] if the benefit is lost."  Filmore E. BS. Fin Subsidiary LLC v. Capmark Bank, No. 11 Civ. 4491(PGG), 2013 WL 1294519, at *11 (S.D.N.Y. Mar. 30, 2013). "It is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed."  Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 251 (2d Cir. 2006) (internal quotation marks and citations omitted).  Plaintiffs allege that the "[l]icenses issued by these Stock Photo Agencies included express audit or certification provisions that obligate Wiley to disclose information regarding use of any licensed content," and assert that "Plaintiffs are the intended and direct beneficiaries of any licenses related to their photos that the Stock Photo

Agencies granted to Defendants." (Am. Compl. ¶¶ 73,75.) However, Plaintiffs attach only two blank form Getty and Science Faction agreements to the Amended Complaint. These two agreements explicitly give only the respective photo agencies – and not Plaintiffs – the option to exercise any audit rights. (See Ex. 5,¶ 11.2, Ex. 6 ¶ 2.h.)[3] While the Getty form agreement contains a specific provision regarding third party beneficiary status of the National Basketball Association and certain of its affiliates with respect to the licensing of their materials (see Ex. 5,¶ 10.5), neither of the stock agreements contains anything indicative of an intent to grant all individual artists the right to invoke the audit provisions. Plaintiffs proffer no other factual material in support of their claimed third party beneficiary status and have, accordingly, failed to state a claim for declaratory relief pursuant to the stock photo agency contracts. See Warren/Rubin/Young-Wolff, 952 F. Supp. 2d at 625 ("[w]ere the Court to allow such pleading, it would provide an avenue to use the discovery process to conduct baseless fishing expeditions, something the Supreme Court has explicitly directed lower courts to prevent").

---

[3]     In Paragraph 11.2 of the Rights Managed License issued by Getty, "Getty Images may . . . audit Licensee's records directly related to this Agreement and use of Licensed Material in order to verify compliance with the terms of this Agreement." (Am. Compl., Ex. 5.) Science Faction's licensing agreement with Wiley similarly states "[u]pon reasonable notice, Science Faction may inspect any records, accounts and books relating to the Reproduction of any Licensed Material to ensure that the Licensed Material is being used in accordance with this Agreement." (Am. Compl. Ex. 6,¶ 2.h.)

<u>CONCLUSION</u>

For the foregoing reasons, Wiley's motion to dismiss Plaintiffs' Amended

Complaint is granted.  Within 45 days from the date of this Memorandum Opinion and Order, the

Complaint in this action may be amended to assert the copyright infringement claims of one of the

Plaintiffs as detailed in Exhibit 7,8, 9, or 10 of the Amended Complaint.  Such claims of the other

Plaintiffs are dismissed without prejudice to reassertion in separation actions.

SO ORDERED.

Dated: New York, New York
       March 28, 2014

   /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge