Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELLEN SENISI, | No. 13-cv-3314 (LTS) |
| *Plaintiff*, | Hon. Laura T. Swain |
| v. | |
| JOHN WILEY & SONS, INC., | **SECOND AMENDED COMPLAINT** |
| *Defendant*. | |

Plaintiff ELLEN SENISI ("Plaintiff" or "Senisi"), by and through undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure and the Local Rules of this Court, hereby demands a trial by jury of all claims and issues so triable, and for her Second Amended Complaint against Defendant JOHN WILEY & SONS, INC. ("Wiley" or "Defendant"), asserts and alleges as follows:

**NATURE OF THE ACTION AND RELIEF SOUGHT**

1.       This is an action for copyright infringement and related claims brought against Defendant Wiley by Plaintiff Senisi, the owner of copyrights to numerous photographs that were published by Defendant in its textbooks and other publications, for unauthorized and infringing uses of Plaintiff's photographs.

1

## THE PARTIES

2. Plaintiff Ellen Senisi is a resident of the State of New York.

3. Defendant Wiley is a New York corporation having its principal place of business at 111 River Street, Hoboken, New Jersey.

4. Plaintiff is a professional photographer who makes her living by creating and licensing photographs.

5. Defendant is a publishing company specializing in creating educational textbooks and other similar materials and publications.

6. Plaintiff is the holder of copyrights to numerous photographs that Defendant published in various publications.

## JURISDICTION AND VENUE

7. Jurisdiction for Plaintiff's claims lies with the United States District Court for the Southern District of New York pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, and 28 U.S.C. § 1338(a) (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights).

8. This Court also has jurisdiction over Plaintiff's claims pursuant 28 U.S.C. § 2201 which authorizes the Court to declare the rights and other legal relations between the parties.

9. Venue is proper in this Court under 28 U.S.C. §§ 1391(a) and (b) because Defendant conducts substantial business within the State of New York, infringed Plaintiff's copyrights within the State of New York, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the State of New York; and under 28 U.S.C. § 1400(a) since the alleged misconduct by Defendant occurred in this District and/or because Defendant may be found in this District.

10. This Court has personal jurisdiction over Defendant because it conducts substantial business in the State of New York; infringed Plaintiff's copyrights in the State of New York as described herein; purposely targeted its activities to and systematically transacted, conducted, and solicited business in this District; and has consented to this Court's jurisdiction over it in identical actions by other copyright owners.

## FACTUAL ALLEGATIONS

### *Wiley's Pattern of Copyright Infringement*

11. Defendant Wiley has a documented history of infringing the copyrights of third-party photographers.

12. Numerous photographers and stock photography agencies have brought actions against Wiley under the Copyright Act alleging the same types of copyright infringements alleged by Plaintiff herein, including:

- *John Wiley & Sons, Inc. v. Hiser*, No. 1:09-cv-4307 (S.D.N.Y.);
- *Grant Heilman v. John Wiley & Sons, Inc.*, No. 5:11-cv-01665 (E.D. Penn.);
- *Visuals Unlimited, Inc. v. John Wiley & Sons, Inc.*, No. 1:11-cv-0415 (D.N.H.);
- *Bean v. John Wiley & Sons, Inc.*, No. 3:12-cv-8001 (D. Ariz.);
- *DRK Photo v. John Wiley & Sons, Inc.*, No. 3:11-cv-8133 (D. Ariz.);
- *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (S.D.N.Y.);
- *Frerck v. John Wiley & Sons, Inc.*, No. 1:11-cv-2727 (N.D. Ill.);
- *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090 (S.D.N.Y.);
- *Warren v. John Wiley & Sons, Inc.*, No. 12-cv-05070 (S.D.N.Y.) ; and
- *Rubin v. John Wiley & Sons, Inc.*, No. 12-cv-05071 (S.D.N.Y.).

13. Evidence submitted to the courts in these cases demonstrates that Wiley has engaged in a systematic pattern of copyright infringement.

14. Wiley's copyright abuses include, among other things: (i) using third-party photographic works in its publications without permission; (ii) exceeding the limitations of licenses pertaining to third-party photographs, including by exceeding the print run limits of its license and making unpermissioned uses of photos, such as publishing photos in ancillary publications or foreign editions without permission; and (iii) maintaining high-resolution copies of third-party photos and then republishing those works in subsequent editions or even different titles without first obtaining proper licenses prior to publication.

15. Wiley has been found liable for these types of copyright infringements and/or settled nearly identical claims to those alleged herein in multiple cases brought against Wiley.

16. Wiley failed to adopt license compliance policies and thus failed to take appropriate steps to ensure license compliance.

17. Wiley has conducted audits to identify its license violations and unlicensed uses of photos. However, even after gaining actual knowledge of license violations and unlicensed uses of photos in particular publications, Wiley executives made the knowing and intentional decision to continue to sell inventory of publications that Wiley determined included unauthorized copies of third-party content.

*General Allegations*

18. Plaintiff owns the copyrights in and to hundreds of images that have been licensed to Wiley for limited and specific uses.

19. Plaintiff licensed her photos to Wiley both directly and also through third-party stock photography licensing agencies, including The Image Works and PhotoResearchers ("Plaintiff's Licensing Agents").

20. Whether her images were licensed to Wiley directly or through her Licensing Agents, Plaintiff did not transfer her copyrights or any ownership interests in her images to Wiley.

21. In all instances, Plaintiff retained ownership and copyrights in the works being licensed to Defendant.

22. Plaintiff is the intended and direct beneficiary of any licenses relating to her photos that her Licensing Agents granted to Defendant.

23. As the sole copyright owner of her photos published by Defendant, Plaintiff is entitled to assert claims against Defendant relating to any infringing use of her photos regardless of whether Defendant acquired her photos from Plaintiff directly or from her Licensing Agents.

24. Regardless of the licensing pathway, Plaintiff's images were never licensed to Defendant on a "Royalty Free" basis. Rather, in any cases where Defendant obtained a license to use her photos, Plaintiff's images were licensed according to the "Rights Managed" licensing model, which means each license that was granted to Defendant allowed only limited usage rights and the license fee was calculated based on the limited usage rights being granted.

25. Consequently, in all cases, if Defendant intended to make any additional uses of Plaintiff's photos beyond the specific terms of the initial license issued to Wiley, then it was required to obtain permission and pay agreed upon license fees prior to the use of her photos.

26. In all cases, the licenses granted to Defendant permitted use of Plaintiff's photos only in a specified edition of a specific textbook. The licenses granted to Defendant did not permit reuse in subsequent editions or different books without additional rights being purchased.

*Wiley Refused To Comply with Plaintiff's Demands for Usage Information*

27. Given the growing evidence of Wiley's history of copyright infringements, Plaintiff became concerned and reasonably suspected that Wiley similarly violated the terms of licenses governing its limited right to use Plaintiff's photos, including both the licenses issued directly by Plaintiff and licenses issued indirectly by her agents.

28. Based on these concerns, Plaintiff explicitly demanded, through counsel, that Wiley make a full and complete disclosure of all its uses of her photographs, including unlicensed uses and uses in excess of license restrictions.

29. Plaintiff demanded this usage information from Wiley because Wiley remains in sole possession of the information necessary to determine the actual uses that it made of each photo, including whether it exceeded the limitations of its licenses.

30. Despite Plaintiff's demand for a full and complete disclosure of Wiley's use of her photos, Wiley refused to provide the information requested because Plaintiff was represented by legal counsel.

31. In prior lawsuits, Wiley has taken the (now rejected) legal position that a copyright owner's claims for infringement accrue, for purposes of the statute of limitations set forth in 17 U.S.C. §507(b), on the date that the infringement occurs, not the date that the copyright owner discovers that the infringement occurred.

32. Wiley also has argued in prior lawsuits, including this case, that copyright owners are required by the pleading requirements of the Federal Rules of Civil Procedure to identify specific instances of license violations or unlicensed use in order to assert an infringement claim against Wiley.

33. Wiley has made these arguments despite knowing that it remains in sole possession of such information and refuses to provide such information to Plaintiff Senisi.

34. Wiley has refused to provide complete information regarding its use of Plaintiff's photos in order to conceal copyright infringements and hinder Plaintiff's statutory right to bring claims for infringement against Wiley for unlicensed uses of her photos.

### *Wiley's Copyright Infringements*

35. Wiley infringed Plaintiff's copyrights by exploiting her photographs in various publications without permission and/or in excess of any licenses that it may have obtained.

36. Attached hereto as Exhibit 1 is a chart summarizing use of Plaintiff's photos and/or licenses granted to Defendant pertaining to Plaintiff's photos.

37. Upon information and belief, Wiley infringed Plaintiff's copyrights in the photographs identified in Exhibit 1 in various ways, including:

- Publishing Plaintiff's works without permission;
- Reusing Plaintiff's works in subsequent editions of titles without obtaining a valid license prior to publication;
- Publishing Plaintiff's works prior to obtaining a valid license;
- Exceeding the limitations of licenses by printing more copies of the publications than was authorized;
- Exceeding the limitations of licenses by publishing Plaintiff's works in electronic, ancillary, or derivative publications without permission;
- Exceeding the limitations of licenses by publishing Plaintiff's works in foreign editions of publications without permission;
- Exceeding the limitations of licenses by distributing publications outside the authorized distribution area; and/or
- Refusing to provide usage information to Plaintiff relating to photographs owned by Plaintiff.

38. A reasonable opportunity for further investigation and discovery will confirm that Defendant also has infringed other copyrighted works created and owned by Plaintiff.

100. After being sued repeatedly for copyright infringement, Wiley conducted audits to determine the scope of its license violations and copyright infringements.

101. Despite its actual knowledge of infringements, Wiley did not contact Plaintiff to provide her with usage information and did not disclose license violations uncovered by these audits.

102. Instead, Wiley implemented an intentional scheme to persuade photographers whose images were used without permission or in excess of permission to grant a license "extension" to Wiley. Wiley requested these *ex post facto* licenses with full knowledge of its infringing uses of the photos in question and yet did not reveal complete usage information to licensors.

103. Wiley implemented this scheme in order to "clean up" known infringements and license violations.

104. In the course of these cleanup efforts, Wiley has circumvented copyright owners, some of whom were pursuing claims against Wiley, and attempted to deal with licensing agents who were unaware of Wiley's infringements.

105. In dealing with licensing agents, Wiley routinely withheld critical information, including actual publication dates and print runs, to conceal evidence of its infringements and in order to obtain cleanup licenses at cheaper rates.

106. Wiley's cleanup campaign proves that Wiley's conduct is willful and intentional.

## COUNT I
## COPYRIGHT INFRINGEMENT

107. Plaintiff repeats and re-allege each allegation set forth in all paragraphs above as if set forth fully herein.

108. Plaintiff is the owners of all copyrights in and to the photos identified in Exhibit 1.

109. Plaintiff asserts copyright infringement claims against Wiley related to the photos identified in Exhibit 1.

110. Plaintiff registered her copyrights in all photos identified in Exhibit 1 with the U.S. Copyright Office.

111. As alleged herein, Wiley used, published, distributed, and/or exploited Plaintiff's creative works identified in Exhibit 1 in excess of and outside the scope of its limited licenses.

112. Defendant exceeded any limited authority it may have had to use Plaintiff's photographs in the licensing and publications identified in Exhibit 1 by printing and distributing more copies of the publications than it was permitted to create under any applicable license.

113. Defendant also violated Plaintiff's copyrights by distributing publications in regions or territories not permitted under its licenses.

114. Defendant also violated Plaintiff's copyrights by publishing Plaintiff's photos in component or ancillary publications not permitted under the licenses.

115. Defendant also violated Plaintiff's copyrights by making unlicensed uses of her photos, including by republishing her photos in subsequent editions or different books that were not covered by its licenses.

116. Wiley's violations of its licenses occurred in close proximity to or shortly after the licensing dates identified in Exhibit 1.

117. Wiley remains in sole possession of the information regarding its use of Plaintiff's photos, including whether and when it violated the licensed the photos identified in Exhibit 1.

Plaintiff, therefore, makes her allegations related to Wiley's license violations upon information and belief as described herein.

118. Defendant's use of Plaintiff's photographs in excess of the applicable license limitations infringes Plaintiff's copyrights.

119. By exceeding the terms and restrictions of its limited licenses, Defendant misappropriated Plaintiff's intellectual property for its own profit, causing Plaintiff significant injuries, damages, and losses in amounts to be determined at trial.

120. Defendant's unauthorized use of Plaintiff's copyrighted images was willful.

121. Defendant's efforts to conceal or ratify its unauthorized use of Plaintiff's creative works demonstrate that it was fully aware that its use was unauthorized and infringing and that its misconduct was intentional, willful, reckless, and/or malicious.

122. Defendant's refusal to disclose the full scope of its use of the photographs at issue in this suit is itself a violation of Plaintiff's exclusive rights as the copyright owner of those photographs.

123. Plaintiff seeks all damages recoverable under the Copyright Act, including statutory or actual damages, including Defendant's profits attributable to the infringing use of Plaintiff's creative works, and the damages suffered as a result of the lack of compensation, credit, and attribution.

124. Plaintiff also seeks all attorneys' fees and any other costs incurred in pursuing and litigating this matter.

**WHEREFORE,** Plaintiff respectfully prays for judgment on her behalf and for the following relief:

1. A preliminary and permanent injunction against Defendant precluding Defendant from copying, displaying, distributing, advertising, promoting, and/or selling the infringing publications identified herein, and requiring Defendant to deliver to the Court for destruction or other appropriate disposition all relevant materials, including digital files of Plaintiff's photographs and all copies of the infringing materials described in this complaint, that are in the control or possession or custody of Defendant;

2. All allowable damages under the Copyright Act, including but not limited to, statutory or actual damages, including damages incurred as a result of Plaintiff's loss of licensing revenue and Defendant's profits attributable to infringement;

3. Plaintiff's full costs, including litigation expenses, expert witness fees, interest, and any other amounts authorized under law, and attorneys' fees incurred in pursuing and litigating this matter;

4. Any other relief authorized by law, including punitive and/or exemplary damages; and

5. For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**
Dated May 12, 2014
New York, New York.

Respectfully submitted,

NELSON & McCULLOCH LLP

By: _____
Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
155 East 56th Street
New York, New York 10022
T: (212) 907-6677
F: (646) 308-1178

*Attorneys for Plaintiff*