UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ELLEN SENISI,  :
                                  :

                 Plaintiff,  :     Case No: 1:13-cv-3314 (LTS)(AJP)
                                    :

                 v.  :

JOHN WILEY & SONS, INC.,  :

                 Defendant.  :

                                    :
                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
<u>COMPLAINT IN PART, AND TO STAY REMAINING CLAIMS</u>**

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Edward H. Rosenthal
Toby M.J. Butterfield
Anna Kadyshevich
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone: (212) 980-0120
Fax: (212) 593-9175

*Attorneys for Defendant John Wiley & Sons, Inc.*

**TABLE OF CONTENTS**

                                                                                                                    **Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT.......................................................................................................................... 4

    I. THE COURT MUST DISMISS OR STAY CLEARLY
       ARBITRABLE CLAIMS ...........................................................................................4

          A.      Standard for Dismissal in Favor of Arbitration.......................................4

          B.      Senisi's Deal Memos Contain an Arbitration Clause..............................5

    II. THE COURT SHOULD STAY THE REMAINING CLAIMS ..................................7

          A.      Standard for a Stay of the Remaining Claims..........................................7

          B.      The Court Should Stay the Remaining Claims .........................................8

CONCLUSION.......................................................................................................................11

**Page(s)**

**Cases**

*2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital, LLC*,
    No. 00 Civ. 5773 (GEL), 2001 WL 410074 (S.D.N.Y. Apr. 23, 2001)...................................3

*ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
    307 F.3d 24 (2d Cir. 2002) ...........................................................................................5

*Alghanim v. Alghanim*,
    828 F. Supp. 2d 636 (S.D.N.Y. 2011) ............................................................................8

*Arciniaga v. GM Corp.*,
    460 F.3d 231 (2d Cir. 2006) .......................................................................................4, 5

*Cartagena Enterprises, Inc. v. J. Walter Thompson Co.*,
    13 CIV. 4238 (SAS), 2013 WL 5664992 (S.D.N.Y. Oct. 16, 2013) ................................5, 9

*Cole v. Houghton Mifflin Harcourt Publishing Company*,
    No. 10 Civ 9502 (DLC), Dkt. No. 12 (unpublished Order, dated Mar. 17) ...........................4

*Cole v. John Wiley & Sons, Inc.*,
    No. 11-cv-2090 (DF), 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) ...............................4, 5

*Cole v. Pearson Educ., Inc.*,
    No. 10 Civ. 7523(JFK)(RLE), 2011 WL 4483760 (S.D.N.Y. Sept. 28, 2011) .......................4

*Dale Metals Corp. v. Kiwa Chem. Indus. Co.*,
    442 F. Supp. 78 (S.D.N.Y. 1977)...................................................................................9

*Gen. Media, Inc. v. Shooker*,
    No. 97-cv-510, 1998 WL 401530 (S.D.N.Y. July 16, 1998)...............................................8

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*,
    815 F.2d 840 (2d Cir. 1987) .........................................................................................7

*JLM Indus., Inc. v. Stolt–Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) .........................................................................................4

*Life Receivables Trust v. Goshawk Syndicate 102 at Lloyd's*,
    66 A.D.3d 495, 888 N.Y.S.2d 458 (2009).....................................................................10

*Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg*,
    No. 92-cv-2236, 1992 WL 249914 (S.D.N.Y. 1992)........................................................9

*Nilsen v. Prudential-Bache Sec.*,
    761 F. Supp. 279 (S.D.N.Y. 1991) ...................................................................................7

*Nulife Entm't, Inc. v. Torres*,
    698 F. Supp. 2d 409 (S.D.N.Y. 2010) ...........................................................................5

*Renaissance Capital Grp., Ltd. v. Hedge Fund Adm'rs, Ltd.*,
    00-cv-3260, 2000 WL 1716353 (S.D.N.Y. Nov. 15, 2000) ........................................9

*Stuto v. Fleishman*,
    164 F.3d 820 (2d Cir. 1999) ........................................................................................3

*Veliz v. Collins Bldg. Servs., Inc.*,
    10 CIV. 06615 RJH, 2011 WL 4444498 (S.D.N.Y. Sept. 26, 2011) ............................1

**Statutes and Rules**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*............................................................1, 4

FED. R. CIV. P. 12(c) and 12(h) ...................................................................................1, 2

Defendant John Wiley & Sons, Inc. ("Wiley") submits this Memorandum, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* and Federal Rules of Civil Procedure ("FRCP") 12(h)(3) and 12(c),[1] in support of its motion to dismiss portions of the Second Amended Complaint ("Amended Complaint" or "SAC") of Plaintiff Ellen Senisi ("Senisi" or "Plaintiff"), and to stay the remaining claims.

## PRELIMINARY STATEMENT

The exhibit to Plaintiff's Complaint includes a list of claims connected to Wiley's alleged infringement of the copyright in roughly 59 different photographs (the "Photographs") purportedly owned by Senisi. *See* SAC Ex. 1. Many of these claims are subject to the arbitration provision that Senisi included in the invoices she provided to Wiley in licensing these images. Wiley can demonstrate this specifically with respect to some of the invoices (*see* Exhibit A to the Declaration of Toby M.J. Butterfield dated August 4, 2014 ("Butterfield Decl.")), and is virtually certain that the other invoice issued by Plaintiff includes the same provision. Accordingly, the claims set forth in Exhibit B to the Butterfield Declaration (which are the subset of claims in Exhibit 1 to the Amended Complaint concerning Photographs licensed to Wiley by Senisi directly) must be dismissed in favor of arbitration.

This should not have required a motion. Plaintiff's counsel should have proceeded with arbitration in the first place or, at the very least, agreed to withdraw the claims subject to arbitration once Wiley's counsel pointed out the relevant provision. But Plaintiff's counsel

---

[1]As explained by the court in *Veliz v. Collins Bldg. Servs., Inc.*, "there is a lack of clarity in the case law of this Circuit (and others) as to what procedural mechanism must be employed by courts to dismiss actions in which the parties are bound to resolve (or attempt resolution of) their claims in accordance with a contractual grievance procedure, such as an agreement to arbitrate." *Veliz v. Collins Bldg. Servs., Inc.*, 10 CIV. 06615 RJH, 2011 WL 4444498, at *3 (S.D.N.Y. Sept. 26, 2011) (quotations omitted) (collecting cases and noting that courts have dismissed claims in favor of arbitration pursuant to FRCP 12(b)(1), 12(b)(6), 12(c), or pursuant to the FAA).

refused, instead insisting that it would only consent to arbitration if Wiley agreed to a variety of demands wholly outside of, and irrelevant to, the arbitration provision.

Given the fact that at least some of Plaintiff's claims are subject to arbitration, the Court should stay the remaining claims pending the outcome of that proceeding. Senisi's claims almost certainly concern common issues of law and fact, and judicial economy will be served by waiting for the arbitration tribunal to determine precisely which claims are subject to arbitration.

## BACKGROUND

This action began as an attempt to join together a group of seven photographers with nothing in common other than generalized allegations of wrongdoing by Wiley and their representation by the same counsel. *See* First Amended Complaint, dated July 15, 2013, Dkt. No. 11. Numerous plaintiffs asserted various unparticularized copyright infringement claims against Wiley and sought a judicial determination pursuant to the Declaratory Judgment Act of their purported "rights to know and to be provided information regarding what uses [Wiley] has made and is making of their creative works." *Id.* Wiley moved to dismiss all copyright claims for failure to state a claim under FRCP 12(b)(6) and moved to dismiss the declaratory claim under FRCP 12(b)(1) and 12(b)(6). *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint, dated August 5, 2013, Dkt. No. 16. Wiley also requested that the Court sever any surviving claims of each individual plaintiff as lacking any common questions of facts or law with each other. *Id.* On March 28, 2014, the Court granted Wiley's motion in part. *See* Order, Dkt. No. 43. The Court dismissed the plaintiffs' declaratory claims for failure to state a claim and granted Wiley's motion to sever, instructing one of the plaintiffs to amend the complaint to assert his or her copyright infringement claims separately. *Id.*

Thereafter, Plaintiff Senisi filed the Amended Complaint on May 12, 2014, asserting

claims for copyright infringement with respect to the Photographs identified in Exhibit 1 in the

Complaint. *See* Dkt. No. 45. Thirty of the Photographs were licensed directly to Wiley by

Senisi through seven different invoices, six of which are attached to the Butterfield Declaration

at Exhibit A (each, an "Invoice"). The Invoices, sent by Plaintiff to Wiley, were each

accompanied by a "Deal Memo Terms and Conditions" (each, a "Deal Memo") on the reverse of

the Invoice. *See* SAC Ex. 1; *see also* Butterfield Decl. Ex. A. The remaining twenty-nine

Photographs identified in the Amended Complaint were licensed to Wiley by Senisi's licensing

agent, The Image Works, Inc. ("Image Works"). SAC Ex. 1.

All six of the Invoices Wiley has now located, which collectively cover all thirty

Photographs, are identical in form and indicate that they incorporate Senisi's standard Deal

Memo terms, located on the reverse side. *See* Butterfield Decl. Ex. A at pp. 1, 3, 5, 7, 9, 11.[2]

These standard terms include an arbitration provision that states:

> Client [Wiley] and Photographer [Senisi] agree to submit all disputes hereunder to
> arbitration at the following location: Albany, NY under the rules of the American
> Arbitration Association. The arbitrator's award shall be final and judgment may
> be entered on it in any court having jurisdiction thereof.

*See id.* at pp. 2, 4, 6, 10, 12 ¶ 6. Despite identifying and relying on these Invoices and

Deal Memos in the Amended Complaint, Plaintiff and her counsel ignored the arbitration clause,

choosing instead to improperly bring suit in federal court. Wiley pointed out the arbitration

clauses to Plaintiff's counsel and requested that Plaintiff voluntarily withdraw all claims

---

[2] Although the Invoices and Deal Memos were not attached to the Complaint, the Court may
consider them as being incorporated by reference. *See*, *e.g.*, *Stuto v. Fleishman*, 164 F.3d 820,
826 n.1 (2d Cir. 1999) (citations omitted) (considering a document that was "discussed in the
complaint and therefore was incorporated by reference"); *2 Broadway L.L.C. v. Credit Suisse
First Boston Mortg. Capital, LLC*, No. 00 Civ. 5773 (GEL), 2001 WL 410074, at *5 (S.D.N.Y.
Apr. 23, 2001) (considering documents that "the Complaint explicitly references").

concerning these thirty Photographs.  Despite Wiley's efforts to avoid filing this motion,

Plaintiff's counsel refused.  *See* Butterfield Decl. ¶¶ 4-6 and Exs. C-E.

**ARGUMENT**

## I.     THE COURT MUST DISMISS OR STAY CLEARLY ARBITRABLE CLAIMS

Where a license to use an image contains an arbitration clause, courts readily dismiss

suits such as this one in favor of arbitration.  Indeed, this is not the first time that Plaintiff's own

counsel—whose goal appears to be to make all of its litigations as expensive as possible—has

ignored arbitration terms, only to have the claims dismissed after expensive and unnecessary

motion practice.  *See, e.g.*, *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090 (DF), 2012 WL

3133520, at *18 (S.D.N.Y. Aug. 1, 2012) (dismissing copyright infringement claims in favor of

arbitration based on arbitration terms in invoice); *Cole v. Pearson Educ., Inc.*, No. 10 Civ.

7523(JFK)(RLE), 2011 WL 4483760 (S.D.N.Y. Sept. 28, 2011); *Cole v. Houghton Mifflin

Harcourt Publishing Company*, No. 10 Civ. 9502 (DLC), Dkt. No. 12 (unpublished Order, dated

Mar. 17, 2011).  But the law is clear: just as in the *Cole* cases, the claims set forth in Exhibit B of

the Butterfield Declaration must be dismissed.

### A.     Standard for Dismissal in Favor of Arbitration

The FAA provides that "an agreement in writing to submit to arbitration an existing

controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and

enforceable."  9 U.S.C. § 2.  The Second Circuit has held that "the FAA represents a strong

federal policy favoring arbitration as an alternative means of dispute resolution."  *JLM Indus.,

Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (quotations omitted); *see also

Arciniaga v. GM Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (the policy favoring arbitration is one

that the Second Circuit has "often and emphatically applied").  Where an agreement contains an

arbitration clause, there is "a presumption of arbitrability." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 34 (2d Cir. 2002). Indeed, in determining whether a contract contains an arbitration clause, and whether an arbitration clause applies to a given dispute, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 29. Accordingly, "the burden lies with the party attempting to avoid arbitration to show that the arbitration provision does not apply." *Arciniaga*, 460 F.3d at 235.

As evidenced by the *Cole* cases, courts routinely dismiss copyright claims subject to arbitration. *See also Cartagena Enterprises, Inc. v. J. Walter Thompson Co.*, 13 CIV. 4238 (SAS), 2013 WL 5664992, at *3 (S.D.N.Y. Oct. 16, 2013) (dismissing breach of contract and copyright infringement claims based on arbitration clause that incorporated American Arbitration Association rules).

### B. Senisi's Deal Memos Contain an Arbitration Clause

All of the Invoices and Deal Memos supplied by Senisi that Wiley has been able to locate are attached to the Butterfield Declaration and contain the same arbitration clause excerpted above. *See* Butterfield Decl. Ex. A (¶ 6 in each Deal Memo). The Amended Complaint specifically identifies these Invoices and Deal Memos (SAC Ex. 1) and alleges that Wiley exceeded their terms (SAC ¶¶ 35-37). Accordingly, all claims in Exhibit 1 of the Amended Complaint that are governed by Senisi's Invoices and Deal Memos are subject to arbitration pursuant to their terms, *see Nulife Entm't, Inc. v. Torres*, 698 F. Supp. 2d 409, 413 (S.D.N.Y. 2010) (dismissing breach of contract and trademark infringement claims where parties' contract provided for arbitration for "any controversy or dispute arising out of or related to this Agreement"), and this subset of claims must be dismissed. *See* Butterfield Decl. Ex. B (subset of claims identified in Exhibit 1 to the SAC that were licensed to Wiley by Senisi directly).

Included in Exhibit B are four claims concerning the use of three Photographs—
identified as AE-pkf_0319, PN-30773 and AE-pKf_6479— in a product described as a
"PowerPoint presentation" for the publication "Child Psychology, 5e." *See* Butterfield Decl. Ex.
A at p. 7. The Invoice which covers this particular use is in every respect identical to every other
Invoice. *Id.* Wiley, however, cannot locate the reverse side of that Invoice, which contains the
Deal Memo terms. The front page of this Invoice indicates that it is "Subject to All Terms and
Conditions on Reverse Side" and looks identical in form to every other Invoice, all of which
contain the Deal Memo terms with the same arbitration provision on the reverse. *Id.* The
reverse of this Deal Memo is incorporated by reference to the SAC in the same manner as the
rest of the Deal Memos (*see supra* n. 2). Indeed, these *same* three Photographs were licensed by
Wiley for the main text of the *same publication* just a few weeks earlier. Butterfield Decl. Ex. A
at pp. 5-6. That Deal Memo contains the arbitration provisions. *Id.* at p. 6 ¶ 6.

In an effort to avoid filing this motion, Wiley requested that Plaintiff provide a copy of
the missing Deal Memo. Plaintiff, however, *refused* to do so unless Wiley agreed to engage in
broader and irrelevant "informal" discovery, apparently in connection with claims not even
asserted in the Amended Complaint. *See* Butterfield Decl. ¶¶ 7-8 and Ex. F. Given Senisi's
pattern of including identical terms and conditions in each one of her Deal Memos, including
those provided to Wiley in the same year, weeks before, for the same Photographs in the same
publication, there can be little doubt that the missing reverse side of the Invoice includes the
exact same arbitration clause. Moreover, these same Photographs are already subject to
arbitration on account of the other claims made in the Amended Complaint. *Id.* Ex. A pp. 5-6.
Thus, "all disputes" related to the use of these three Photographs must be arbitrated.

Finally, Wiley has been unable to locate the seventh Invoice and Deal Memo altogether,
identified in the Amended Complaint as NO. ST058 for use of a single Photograph (labeled as

AE-pkf 0546) in the publication "Abnormal Psychology 10e." SAC Ex. 1 (first line of Exhibit).

Wiley wrote to Plaintiff's counsel requesting that Plaintiff supply this Invoice and Deal Memo to

Wiley, but again, Plaintiff refused to do so. Butterfield Decl. ¶¶ 7-8 and Ex. F. Nevertheless,

the claim concerning this Photograph in this publication should also be dismissed in favor of

arbitration. First, the same Photograph was also licensed by Wiley for use in the subsequent

edition of the very same publication. *See* SAC Ex. 1 (second line of Exhibit). That Deal Memo

(attached in Exhibit A of the Butterfield Decl. at pp. 1-2) includes Senisi's standard arbitration

clause and thus, claims related to use in the publication will be arbitrated. Second, Senisi's

counsel has provided no indication that the Deal Memo for the earlier edition of the publication

omits any arbitration clause. Accordingly, like the other claims set forth in Exhibit B of the

Butterfield Declaration, this one too must be dismissed.

## II.     THE COURT SHOULD STAY THE REMAINING CLAIMS

Once this Court has determined that the above claims must be dismissed in favor of

arbitration, it has discretion to stay the remaining claims. To serve judicial efficiency, the Court

should order such a stay pending the outcome of the arbitration.

### A.     Standard for a Stay of the Remaining Claims

Where a "court concludes that some, but not all, of the claims in the case are arbitrable, it

must then determine whether to stay the balance of the proceedings pending arbitration."

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987). "That decision is

largely within the discretion of a trial court as a method of controlling its docket." *Nilsen v.*

*Prudential-Bache Sec.*, 761 F. Supp. 279, 288 (S.D.N.Y. 1991) (citing *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23).

To secure a stay, "[t]he movant must initially establish that 'there are issues common to

the arbitration and the court proceeding,' and that 'those issues will be finally determined by

arbitration.'" *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 664 (S.D.N.Y. 2011) (quoting *Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y.1995)). If this requirement is met, then "the moving party [must show] that [it] will not hinder the arbitration, that the arbitration will be resolved within a reasonable time, and that such delay that may occur will not cause undue hardship to the non-moving parties." *Id.* at 664-65. However, "[g]enerally, a stay of remaining claims has been found appropriate where such action would 'promote judicial economy, avoidance of confusion and possible inconsistent results and would not work undue hardship or prejudice' against the parties." *Gen. Media, Inc. v. Shooker*, No. 97-cv-510, 1998 WL 401530, at \*11 (S.D.N.Y. July 16, 1998) (quoting *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 838 (E.D.N.Y. 1995) (staying remaining claims, based in part on a separate contract, where arbitration of claims under the original "agreement will likely provide significant insight, if not actually resolve, the claims arising out of the other contracts and directed towards other Defendant")).

**B.     The Court Should Stay the Remaining Claims**

Wiley offered to arbitrate *all* claims in the same proceeding but Senisi's counsel refused to do so. Butterfield Decl. at ¶ 4, Ex. C. However, there is little doubt that all of Plaintiff's claims will involve common issues—namely, Wiley's licensing practices and policies with respect to Plaintiff, the licensing history of Plaintiff's Photographs and Plaintiff's damage claims. For example, Wiley licensed Photographs for use in "Child Psychology, 5e" from Senisi directly, as well as from Senisi's agent Image Works. *See* SAC Ex. 1. Because arbitration of the above claims will therefore necessarily provide significant insight into Plaintiff's remaining claims, and because determining all claims together would avoid inconsistent results and promote judicial economy, Plaintiff's remaining claims should be stayed pending the outcome of the arbitration.

Moreover, a stay is particularly appropriate here where the parties have just begun the discovery process. Further arbitration clauses may yet be found, as Plaintiff has not yet produced her master agreement with her agent Image Works, and Wiley has not yet determined which of its master agreements with Image Works (collectively, the "Master Agreements") apply and whether they contain arbitration clauses. The early stage of this litigation ensures that arbitration of the claims governed by the Invoices and Deal Memos will proceed without duplication of effort by this Court. A stay of the remaining claims should issue to prevent such wasteful duplication of effort should any of these Master Agreements contain arbitration clauses, making Plaintiff's remaining claims also subject to arbitration. *See Renaissance Capital Grp., Ltd. v. Hedge Fund Adm'rs, Ltd.,* 00-cv-3260, 2000 WL 1716353, at \*3 (S.D.N.Y. Nov. 15, 2000) (finding that the arbitration provision of the parties' Master Agreement governed where "respondent has offered no evidence that the [subsequent agreement] was intended to abrogate the Master Agreement").[3]

A stay of the remaining claims at this stage would therefore avoid such duplicative discovery in this action. Instead, the arbitrator would have the ability to conduct relevant discovery without delay, determine the proper scope of any arbitration provisions revealed by discovery in the arbitration, and rule on all arbitrable claims in one proceeding.

---

[3] This is true even though both Senisi and Wiley are not parties to each Master Agreement. Where an arbitration clause is broad, it may bind third-party non-signatories. *See Cartagena Enterprises, Inc.,* 2013 WL 5664992, at \*4 (compelling non-signatory to contract containing arbitration clause to arbitrate copyright infringement claims). In those circumstances, a stay of all claims is appropriate. *See Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg*, No. 92-cv-2236, 1992 WL 249914, at \*2 (S.D.N.Y. 1992) (staying litigation against non-signatory to arbitration agreement pending arbitration) (internal citations omitted); *Dale Metals Corp. v. Kiwa Chem. Indus. Co.*, 442 F. Supp. 78, 81-82 (S.D.N.Y. 1977) (holding that stay pending arbitration was appropriate even though it affected parties not bound to arbitrate).

A stay of the claims not covered by Deal Memos is especially appropriate because Senisi has chosen arbitration subject to the rules of the American Arbitration Association (the "AAA"). *See* Butterfield Decl. Ex. A (¶ 6 in each Deal Memo). "The AAA rules authorize the arbitration tribunal to rule on its own jurisdiction, including *objections with respect to the existence, scope or validity of the arbitration agreement*." *Life Receivables Trust v. Goshawk Syndicate 102 at Lloyd's*, 66 A.D.3d 495, 888 N.Y.S.2d 458, 459 (2009), *aff''d*, 14 N.Y.3d 850, 927 N.E.2d 553 (2010) (emphasis added) (holding that, under the AAA Rules, the arbitrator, and not the court, should determine issues of arbitrability). It is therefore all the more appropriate for this Court to stay the remaining claims before this Court to allow the parties to conduct discovery concerning the Master Agreements so that the arbitrator may determine whether the remaining claims are arbitrable too.

## CONCLUSION

For the reasons set forth above, all of the claims identified in Exhibit B to the Butterfield Declaration must be dismissed in favor of arbitration, and Plaintiff's remaining claims should be stayed. Moreover, opposing counsel's uncooperative and burdensome conduct warrants an award of costs and attorneys' fees. Wiley should not have had to waste time and resources in filing this motion, which Plaintiff has no basis to oppose given the obvious arbitrability of these claims. Senisi's counsel has repeatedly ignored arbitration provisions in other cases and these abusive litigation strategies should no longer be condoned.

Dated: August 4, 2014
New York, New York

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: ___/s/ Edward H. Rosenthal_____
Edward H. Rosenthal
Toby M.J. Butterfield
Anna Kadyshevich

488 Madison Avenue, 10th Floor
New York, New York 10022
Phone: (212) 980-0120
Fax: (212) 593-9175
erosenthal@fkks.com
*Attorneys for John Wiley & Sons, Inc.*