**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ELLEN SENISI, | Case No. 13-cv-3314 (LTS) (AJP) |
| *Plaintiff,* | Hon. Laura T. Swain |
| *v.* |  |
| JOHN WILEY & SONS, INC., | ECF CASE |
| *Defendant.* | Electronically Filed |

**PLAINTIFF'S OBJECTIONS UNDER FRCP 72(a)
TO MAGISTRATE JUDGE PECK'S DECEMBER 1, 2014 DISCOVERY RULING**

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178

December 15, 2014                    *Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

FACTUAL BACKGROUND ........................................................................................................ 5

THE CHALLENGED DISCOVERY RULING ............................................................................ 9

ARGUMENT ............................................................................................................................... 12

I.    Applicable Legal Standards. ............................................................................................ 12

II.   Discovery of other uses of plaintiff's photos is relevant and within the scope of
rule 26. ............................................................................................................................. 14

    A.  Magistrate Judge Peck's Decision Allowing Wiley To Redact Information
From Responsive Documents On The Basis Of Relevance Alone Is
Contrary To Law. ...................................................................................................... 14

    B.  Evidence Of Prior Incidents Of Similar Infringements By Wiley Is Directly
Relevant To The Willfulness And Statutory Damages Inquiries. ..................................... 16

    C.  Courts Consistently Have Held That Wiley and Other Textbook Publishers
Being Sued For Copyright Infringement Must Submit To Discovery
Regarding Prior Incidents Of Similar Misconduct. ........................................................ 20

    D.  Wiley's Refusal To Provide Discovery Of Other Uses Of Plaintiff's Photos
Is Inconsistent With Its Position That The Claims In *Psihoyos* Are
Precluded Under *Res Judicata*. ................................................................................ 23

CONCLUSION ............................................................................................................................ 25

# TABLE OF AUTHORITIES

**CASES**

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618 (N.D. Cal. 2006) .......................................... 13

*Brandwynne v. Combe Int'l Ltd.*, No. 98-cv-2653 (SAS) (MHD), 1998 WL 751657 (S.D.N.Y. Oct. 28, 1998) ................................. 15

*Bryant v. Media Right Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010) ................................. 23

*Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224 (7th Cir. 1991) ....................................... 17

*Conopco, Inc. v. Wein*, No. 05-cv-9899, 2007 WL 1040676 (S.D.N.Y. April 4, 2007) ....................................... 19

*Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine,* 951 F.2d 1357 (2d Cir. 1991) ................................. 13

*Evergreen Trading, LLC v. United States*, 80 Fed. Cl. 122 (2007) ........................................... 16

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228 (1952) ....................................... 17, 18

*Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110 (2d Cir. 1986) ....................................... 17

*Flynn v. Goldman, Sachs & Co.*, No. 91-cv-0035 (KMW), 1991 WL 238186 (S.D.N.Y. Nov. 1, 1991) ................................. 15

*Herbert v. Lando*, 441 U.S. 153 (1979) ................................. 13

*Howell v. City of New York*, No. 06-CV-6347 (ERK) (VVP), 2007 WL 2815738 (E.D.N.Y. Sept. 25, 2007) ................................. 15

*James Michael Leasing Co., LLC v. PACCAR Inc.*, No. 11-cv-0747, 2013 WL 694764 (E.D. Wis. Feb. 26, 2013) ................................. 18

*John v. City of New York*, No. 11-cv-5610, 2012 WL 2719154 (S.D.N.Y. July 9, 2012) ................................. 14

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995) ................................. 17

*Los Angeles News Service v. Reuters Television Int'l, Ltd.*, 149 F.3d 987 (9th Cir. 1998) ................................. 18

*Loussier v. Universal Music Group, Inc.*, No. 02-2447, 2005 WL 5644420 (S.D.N.Y. Aug. 30, 2005) ................................................................ 19

*Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.,* No. 02-CV-795, 2005 WL 551092 (S.D.N.Y. March 9, 2005) ............................ 12

*Manno v. Tennessee Prod. Ctr., Inc.*, 657 F. Supp. 425 (S.D.N.Y. 2009) ..................................................................................................... 17

*Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2372-GV, 2002 WL 33003691 (W.D. Tenn. Jan. 30, 2002) ....................................... 15

*Moore v. Kaye Ins. Assocs.*, No. 94-cv-6559 (DLC), 1995 WL 600244 (S.D.N.Y. Aug. 8, 1995) ................................................................ 15

*N.A.S. Import Corp. v. Chenson Enter., Inc.*, 968 F.2d 250 (2d Cir. 1992) ............................................................................................................. 17

*Nielsen v. New York City Dep't of Educ.*, No. 04-CV-2182, 2007 WL 1987792 (E.D.N.Y. July 5, 2007) .......................................................... 12

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ........................... 13

*Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416, 2012 WL 5506121 (S.D.N.Y. Nov. 7, 2012) .............................................................. 16

*Schiller v. City of New York*, Nos. 04-cv-7922 & 7921 (JCF), 2007 WL 136149 (S.D.N.Y. Jan. 19, 2007) ..................................................... 14

*Sellon v. Smith*, 112 F.R.D. 9 (D. Del. 1986) ............................................... 15

*St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919) ...................... 18

*Stevens v. Aeonian Press*, No. 00-cv-6330, 2002 WL 31387224 (S.D.N.Y. Oct. 23, 2002) ...................................................................... 18

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682 (2d Cir. 1989) ............................................................................................................. 13

*U.S. Media Corp. v. Edde Entm't Corp.*, No. 94-cv-4849, 1998 WL 401532 (S.D.N.Y. July 17, 1998) ................................................... 18

*U2 Home Entertainment, Inc. v. KyLinTV, Inc.*, No.06-cv-770 (DLI), 2008 WL 1771913 (S.D.N.Y. April 15, 2008) ............................ 15

*United States v. Becton, Dickinson & Co.*, 30 F.R.D. 132 (D.N.J. 1962) ............................................................................................................. 25

*United States v. Davis*, No. 85-cv-6090 (KC), 1988 WL 96843 (S.D.N.Y. Sept. 13, 1988) ...................................................................... 15

*Weber v. Multimedia Entertainment, Inc.*, No. 97-cv-0682-PKL,
   1997 WL 729039 (S.D.N.Y. Nov. 24, 1997) ......................................................... 13

*Zhao v. City of New York*, No. 07-cv-3636 (LAK) (MHD), 2007
   WL 4565019 (S.D.N.Y. Dec. 18, 2007) ............................................................... 14

**STATUTES**

17 U.S.C. § 504(c)(1) ......................................................................................................... 14

**RULES**

Fed. R. Civ. P. 72(a) ......................................................................................................... 10

Fed. R. Civ. P. 26(b)(1) ..................................................................................................... 10

Fed. R. Civ. P. 26(b)(1), Adv. Comm. Note, 2000 Amendment ...................................... 17

Fed. R. Civ. P. 26(c) ......................................................................................................... 11

Plaintiff, by and through undersigned counsel, hereby respectfully submits these objections under Fed. R. Civ. P. 72(a) to the December 1, 2014 discovery order by Magistrate Judge Peck allowing Defendant John Wiley & Sons, Inc. ("Defendant" or "Wiley') to redact crucial discovery materials for the sole, stated purpose of allowing Wiley to conceal additional uses of Plaintiff's photos in Wiley publications.

## FACTUAL BACKGROUND

This is one of numerous related copyright infringement cases against Defendant Wiley that have been coordinated before Magistrate Judge Peck for discovery purposes. In each case, the Plaintiff sought discovery of all Wiley's uses of his or her photos, including but not limited to the photos specifically identified in each Plaintiff's respective complaint. In each case, Wiley objected to such discovery on the grounds that information related to photos not specifically identified in the complaint is not relevant to the claims in suit and is merely a "fishing expedition" and that such discovery is unduly burdensome.

Copyright owners in prior cases against Wiley and other defendant textbook publishers have sought similar discovery. In each case, the publisher defendant, including Wiley, have objected to providing such discovery on the grounds of relevance and burden. For instance, Plaintiff Psihoyos initially sought this same discovery in June 2011 in his initial case against Wiley before Judge Rakoff. *See Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (JSR). Specifically, on June 8, 2011, Plaintiff submitted a letter to Judge Rakoff, as required by his individual practices at the time, seeking a pre-motion conference to move to compel such discovery. *See* McCulloch Decl. Ex. 1. Wiley opposed this request on the grounds that the discovery being sought related to other photos owned by the Plaintiff was nothing more than a "fishing expedition" and had no relevance to the claims in suit and because such discovery supposed was too burdensome for Wiley to gather. *See id.* Ex. 2.

In support of Wiley's argument that such discovery was too burdensome, Wiley submitted a declaration of Jane Ann Berlin, the former Vice President of Production and Manufacturing for the Higher Education Division of Wiley, in which she claims that Wiley was incapable of determining other uses of Plaintiff's photos because "Wiley does not have once centralized department in charge of obtaining photo permissions." *See* McCulloch Decl. Ex. 2 at 6 ¶ 4. Therefore, according to Ms. Berlin, "in order to identify every single use of a photographer's work, Wiley would be required to review the permissions files for each individual work it has published to determine whether the work includes any photographs by Plaintiff." *Id.* at 6, ¶ 7. Ms. Berlin also represented that "Wiley will license use of a particular photographer's work from a stock photo agency" and the existence of such a licensing intermediary allegedly "adds an extra layer of difficulty to searching records as one invoice or license from an agency . . . will often cover several photographs that were taken by different photographers." *Id.* at 6, ¶ 6.

These representations were incredible, particularly given that they suggest that Wiley, one of the largest and most sophisticated publishers in the world, lacked a centralized database to track photo usage and thus was incapable of determining uses of a particular photographer's works without literally paging through every book it publishes every year. Nevertheless, Judge Rakoff accepted Wiley's representations regarding the capabilities of its systems and thus granted Wiley's motion to deny such discovery.

As expected, Wiley's claims of burden were discredited during the recent deposition of Wilhelm Zerter, Wiley's Vice President of Finance of its Global Education division, who was deposed on October 28, 2014 in *Senisi v. Wiley*, No. 13-cv-3314 (Swain, J.). During his deposition, Mr. Zerter testified quite differently regarding Wiley's ability to track and identify

uses of a photographer's works in Wiley publications regardless of whether Wiley acquired the

photos from a licensing intermediary:

> Q. How did you find out all this information about purchasing [Plaintiff] Ellen Senisi's images in four hours?
> A. It's a system called FileMaker.
> Q. What is FileMaker?
> A. It's an off the shelf photo permission system that some publishers use.
> Q. And you can search by photographer?
> A. Yes.
> Q. Even if they're licensed through an agency?
> A. Yes[.] . . . You can search by photographer.
> Q. Even if [the license] goes through an agency?
> A. Yes.
> Q. What records are in this FileMaker database if I type in Ellen Senisi?
> A. The images that were purchased from her and the books that they were used in.
> Q. Does it have books that her photos were used in or only books that her images were licensed for?
> A. Licensed for[?] . . .
> Q. What about books, like subsequent editions where there was no license, would that appear in FileMaker?
> A. Yes.
> Q. When FileMaker searches to find out uses of Ellen's images, it's not searching invoices, it's searching credits?
> A. Yes.
> Q. Even if Wiley doesn't have an invoice, it can still identify uses of Ms. Senisi's images?
> A. If it has been properly maintained, it can.
> Q. And it took you less than four hours to do that?
> A. That's right.
> Q. When you put in Ellen Senisi's name, what is generated? Is it just all the books she's in? What does that look like? What is the product?
> A. It's a database that has information about the title and the name, the image information in it, the listing.

*See* McCulloch Decl. Ex. 3 ("Zerter Dep. Trans.") at 110:9—112:18.  As Mr. Zerter agreed:

> Q. So, Wiley armed with nothing more than the last name of a photographer in less than four hours can find all or at least almost all the uses of that photographer's photos and what the licensed print run was and determine

7

whether or not there is an overrun; is that correct?

A. That's correct.

*Id.* at 126:4-10.

Perhaps intentionally, Ms. Berlin's declaration regarding the burden and impossible challenges that Wiley supposedly faced in producing such discovery focused only on whether Wiley had a "centralized" department or system regarding "photo permissions." Conversely, Mr. Zerter acknowledged that, regardless of whether the "photo permissions" are centralized, Wiley employs a centralized database of all of the credits pages for Wiley's publications (at least for its Global Education division) and this system allows Wiley to generate a report of all uses of a photographer's works regardless of whether the image was acquired through a licensing intermediary.

Given this testimony, Wiley can no longer seriously argue that the discovery being requested is burdensome to gather or produce. Accordingly, Wiley has no remaining objections to providing such discovery other than relevance. Wiley's position regarding the supposed lack of relevance of these materials is weak, bordering on frivolous. In fact, Wiley has taken a contrary position in the *Psihoyos* case in arguing that claims related to any and all photos owned by a photographer – including photos not specifically identified in the complaint – are precluded under the doctrine of *res judicata* because such claims are implied by (or somehow included within) the plaintiff's allegations that Wiley's specific infringements are part of a broader "pattern and practice" of copyright abuse. According to Wiley, such allegations put all Wiley's uses of all photos at issue in the case and thus the preclusion doctrine applies.

Wiley's *res judicata* argument is fundamentally inconsistent with – and should itself be precluded or estopped by – Wiley's refusing to participate in any discovery related to its use of any of the claimant's photos not specifically identified in the complaint. Wiley cannot

simultaneously argue that copyright owners have one chance to assert claims for all photos that Wiley used or face preclusion of other infringements at the same time it is arguing that a claimant is not entitled to any discovery of Wiley's uses of other photos because such discovery is not relevant to any claims in suit.

For this and the many other reasons set forth below, Magistrate Judge Peck's recent discovery ruling explicitly permitting Wiley to *redact* information from responsive documents merely because it pertains to other photos used by Wiley is a clear mistake of law.

## THE CHALLENGED DISCOVERY RULING

During the most recent coordinated discovery hearing held on December 1, 2014 covering all of the related copyright infringement cases against Wiley, Plaintiffs' counsel requested that Magistrate Judge Peck order Wiley to generate and produce Filemaker reports for each Plaintiff showing all uses of their photos in any Wiley publications and the associated usage information for each title (*e.g.*, licensed and actual print run). Although Magistrate Judge Peck agreed that such reports included relevant information and should be produced, he improperly accepted Wiley's request to limit discovery to only the photos identified in the complaint:

> So for all of the photos listed in the complaint, it seems to me that the Filemaker report, with all its flaws, should be provided. So all uses of all the photos identified in the complaint, whether that's in Exhibit 1 or in the actual paragraphs of the complaint.

McCulloch Decl. Ex. 4 (Transcript of Dec. 1, 2014 Discovery Hearing) at 13:2-7.

As Plaintiffs' counsel attempted to explain during the hearing, however, Wiley's Filemaker system is "an electronic database of credits pages" which allows Wiley to search electronically stored copies of credits pages by a photographer's last name and to generate a report of all publications (and related usage information) in which Wiley published photos by that photographer. Because the Filemaker system generates a report based on the photographer's

name, Wiley's request to "limit" its report to only those photos listed in the complaint actually means that Wiley intends to review each "line by line and **redact out** all the uses that don't involve photos in the complaint." *Id.* at 13:13-21 (emphasis added).

Addressing this point specifically, Judge Peck ruled that Wiley was permitted to redact these Filemaker reports to conceal any uses of photos not specifically identified in the complaint.[1] As Magistrate Judge Peck put it: "If they run the report under [a plaintiff's] name, the Filemaker report, and then go through it to redact, so be it. . . . If they want to take on that burden, that's their problem." *Id.* at 14:24-25; 13:22-23.

Magistrate Judge's Peck only rationale for allowing Wiley to redact information related to additional uses of Plaintiff's photos was his conclusion that such discovery "goes beyond the causes of action in the complaint" and thus was not relevant to any aspect of the claims in suit. *Id.* at 15:7-8.

Plaintiff's counsel attempted to advise Magistrate Judge Peck that this Court repeatedly has ruled that violations of licenses not specifically identified in the complaint is relevant to the issue of willfulness. Although Magistrate Judge Peck seemingly agreed, he confusingly ruled that such discovery would be unnecessarily redundant because Plaintiffs already have sufficient information to prove that Wiley's misconduct is willful:

> It would only be relevant to show the issue of willfulness, and you've got enough other discovery from all these cases that you can prove willfulness without using the willfulness as a way to get beyond what's alleged in the briefs.

---

[1] Significantly, Judge Peck indicated his clear agreement that Wiley's refusal to provide discovery regarding photos not specifically identified in the complaint would mean that any potential claims related to Wiley's use of these additional photos would not be at issue in this case and thus Wiley could not take the position that the any such claims were subject to preclusion based on these proceedings.: "[T]he file maker reports have to be produced, and if the defendants want to redact, they can spend the time and effort to do so. If they don't, without prejudice, they still may get the benefit by producing the unredacted report; that any photo in any book that's on the file maker report will be deemed to be something that is in this case for purposes of preclusion, if it's not followed up in this case," conversely, where Wiley failed to produce such discovery then the plaintiff could bring "a second case or a third case. . . down the road." *Id.* at 14:8-16.

*Id.* at 15:20-24.  Because no finding of willfulness has been made in these cases and Wiley has vigorously litigated the issue of willfulness in every prior case in which it has been sued, it was premature to deny relevant discovery merely because Magistrate Judge Peck believes that other discovery he has ordered should support a finding of willfulness against Wiley.  Because Wiley continues to dispute the issue of willfulness, any evidence that is relevant to that issue is a proper subject of discovery.

Plaintiff's counsel also advised Judge Peck that Wiley has asserted "course of dealing" and "industry standard" defenses in numerous cases, including as a basis for opposing a finding of willfulness, and that this Court already has ruled that such defenses support allowing broad discovery of all dealings between the publisher and the relevant licensors related to all photos obtained by the publisher, not just the photos specifically identified in the complaint.  *See Psihoyos v. Pearson Educ., Inc.*, No. 10-cv-5912 (Oetken, J.), Discovery Hearing Transcript (S.D.N.Y. Apr. 11, 2012) (ordering defendant publisher to produce broad discovery regarding prior incidents of similar violations) at 7:23—8:15 (attached as McCulloch Decl. Ex. 5).[2]

Again, however, Magistrate Judge Peck essentially ignored the issue, stating only: "Well, it's the course of dealing with the agencies . . . and they will present that however they present it, and we'll see where that goes.  At this point, enough time on this.  Move on."  *See* McCulloch Decl. Ex. 3 at 16:12-17.

---

[2] Judge Oetken ordered:  "I do think that a broader scope of additional discovery is required [related to the] course of dealing, you know, implied license by course of dealing [defenses].  You are going to have to produce -- defendant is going to have to produce a larger group of documents, including communications back and forth, really any communications back and forth with [relevant licensing agents] for the relevant time periods that have any relevance to the dating issue, that is the retroactive licensing or retroactive invoicing of not just the images at issue but images that could establish a course of conduct, which I think could be not only the plaintiffs' images but other images that are part of that course of conduct with the agents of the plaintiffs; that is Science Faction and Getty.  So I do think you're going to have to do a broader communications search."  *See* McCulloch Ex. 5 at 7:23—8:15 (emphasis added).

For the reasons already discussed and those addressed below, the District Court should reverse Magistrate Judge Peck's ruling related to these Filemaker reports as his decision to allow Wiley to redact relevant information from responsive documents was a clear mistake of law.

## ARGUMENT

## I.    APPLICABLE LEGAL STANDARDS.

A party may object to a magistrate judge's non-dispositive orders under Fed. R. Civ. P. 72(a), which provides that "the district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Although Rule 72(a) imposes a deferential standard of review, *see Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.,* No. 02-CV-795, 2005 WL 551092, at *1 (S.D.N.Y. March 9, 2005), the district court reverse the ruling if, based on the entire record, the district court is "left with the definite and firm conviction that a mistake has been committed." *Nielsen v. New York City Dep't of Educ.*, No. 04-CV-2182, 2007 WL 1987792, at *1 (E.D.N.Y. July 5, 2007) (quotation omitted).

In evaluating whether a mistake has been made or a ruling is contrary to law, the District Court must consider the challenged ruling against the legal standard that governed the underlying issue presented. Because Plaintiffs challenge Magistrate Judge Peck's discovery ruling allowing Wiley to redact information from otherwise responsive documents, the District Court must apply the liberal standard for allowing broad discovery and the standard for establishing "good cause" needed to show a protective order under Fed. R. Civ. P. 26 is warranted.

The Federal Rules of Civil Procedure permit the parties to obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party" so long as the request is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). All courts agree that the scope of discovery permissible under Rule 26 "should be

liberally construed" and that the Federal Rules contemplate discovery "into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case." *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 621 (N.D. Cal. 2006); *Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir. 1991) (same). Thus, courts consistently hold that the scope of discovery should be given a "generous treatment." *Weber v. Multimedia Entertainment, Inc.*, No. 97-cv-0682-PKL, 1997 WL 729039, at *1 (S.D.N.Y. Nov. 24, 1997).

In defining the limits of discovery, the Supreme Court has held that Rule 26(b) is broad enough to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (emphasis added). As the Supreme Court explained:

> "Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits."

*Id*.; *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials"). Discovery rules must be construed liberally because they are "designed to achieve disclosure of all the evidence relevant to the merits of a controversy." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir. 1989).

Given the breadth of permissible discovery, Wiley was required to satisfy its burden to show "good cause" to withhold or redact portions of responsive discovery. Fed. R. Civ. P. 26(c). To establish "good cause," Wiley was required to demonstrate "that disclosure will result in a clearly defined, specific and serious injury. Broad allegations of harm, unsubstantiated by

specific examples of articulated reasoning, do not satisfy the Rule 26 test. Moreover, the harm must be significant, not a mere trifle." *Schiller v. City of New York*, Nos. 04 Civ. 7922 & 7921 (JCF), 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007).

Wiley cannot demonstrate good cause exists to permit it to redact Filemaker reports merely to conceal additional uses of Plaintiff's photos because Wiley cannot seriously argue that disclosure of such information—even if the information is negative to Wiley—would result in "a clearly defined, specific and serious injury" that the Court has a duty to protect Wiley against.

## II.  DISCOVERY OF OTHER USES OF PLAINTIFF'S PHOTOS IS RELEVANT AND WITHIN THE SCOPE OF RULE 26.

### A.  Magistrate Judge Peck's Decision Allowing Wiley To Redact Information From Responsive Documents On The Basis Of Relevance Alone Is Contrary To Law.

Unlike prior cases where Wiley has sought to avoid all discovery related to photos not identified in the complaint, here Wiley sought approval from the Court to *redact* portions of otherwise responsive documents merely to conceal and hide its uses of other photos owned by the Plaintiffs.  Magistrate Judge Peck's ruling allowing Wiley's counsel to make such redactions, without even any pretense of a showing of "good cause" for doing so, is contrary to controlling line.  Indeed, there is a long line of rulings by this Court expressly holding that such conduct is inappropriate and sanctionable.  *See John v. City of New York*, No. 11-cv-5610, 2012 WL 2719154, at *6 (S.D.N.Y. July 9, 2012) ("It is not Defendants' counsel's role, however, to determine the sufficiency of discovery for Plaintiff's counsel. If the documents were not of relevance to the Complaint, Defendants should have moved for relief."); *Zhao v. City of New York*, No. 07-cv-3636 (LAK) (MHD), 2007 WL 4565019, at *1 (S.D.N.Y. Dec. 18, 2007) ("[R]edaction is ordinarily inappropriate merely on the basis of a claim of irrelevance"); *U2 Home Entertainment, Inc. v. KyLinTV, Inc.*, No.06-cv-770 (DLI), 2008 WL 1771913, at *1

(S.D.N.Y. April 15, 2008) (rejecting argument that producing party was "entitled to redact from concededly discoverable documents information that they contend is irrelevant "); *Brandwynne v. Combe Int'l Ltd.*, No. 98-cv-2653 (SAS) (MHD), 1998 WL 751657, at *1 (S.D.N.Y. Oct. 28, 1998) (rejecting redactions based upon claim of irrelevance); *United States v. Davis*, No. 85-cv-6090 (KC), 1988 WL 96843, at *3 (S.D.N.Y. Sept. 13, 1988) (rejecting claimed right to unilaterally "redact from otherwise relevant documents" information producing party deems irrelevant); *Flynn v. Goldman, Sachs & Co.*, No. 91-cv-0035 (KMW), 1991 WL 238186, at *2 (S.D.N.Y. Nov. 1, 1991) ("At the discovery stage, doubts about relevance should ordinarily be resolved in favor of production in the first instance"); *accord Howell v. City of New York*, No. 06-CV-6347 (ERK) (VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) ("It is not the practice of this court to permit parties to selectively excise from otherwise discoverable documents those portions that they deem not to be relevant.").

In rejecting this practice, this and other courts have roundly criticized the practice of unilateral relevance-based redactions as presenting both legal and practical concerns. Most importantly, allowing parties to make their own, self-serving determinations of relevance is antithetical to the discovery process. *See Moore v. Kaye Ins. Assocs.*, No. 94-cv-6559 (DLC), 1995 WL 600244, at *5 (S.D.N.Y. Aug. 8, 1995) ("Permitting parties to make . . . unilateral determinations as to the relevancy of discovery requests would bring the orderly progression of litigation to a halt and prevent disputes from being resolved on the basis of all the relevant facts"); *Sellon v. Smith*, 112 F.R.D. 9, 13 (D. Del. 1986) (producing party "should not be the final arbiter of what is relevant or irrelevant in a particular document"); *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2372-GV, 2002 WL 33003691, at *5 (W.D. Tenn. Jan. 30, 2002) ("The Federal Rules of Civil Procedure do not recognize irrelevance as a privilege or

objection that warrants redaction."); *Evergreen Trading, LLC v. United States*, 80 Fed. Cl. 122, 145 (2007) (finding "no legal basis upon which to excise the names of the unrelated taxpayers from what otherwise are relevant documents").

Given this controlling law, Magistrate Judge Peck's decision to allow Wiley to impose unilateral redactions on the basis of relevance was improper, particularly because Magistrate Judge Peck failed to require Wiley to make the requisite showing of "good cause" to support such redactions.

### B. Evidence Of Prior Incidents Of Similar Infringements By Wiley Is Directly Relevant To The Willfulness And Statutory Damages Inquiries.

Magistrate Judge Peck's ruling also is contrary to law in the sense that substantial case law supports the conclusion that such discovery is directly relevant to the issue of willfulness. Although Magistrate Judge Peck seemingly acknowledged that such discovery may be relevant to willfulness, he nevertheless permitted Wiley to redact such information because, in his opinion, Plaintiffs already have substantial evidence showing Wiley's license violations are willful. But no determination on willfulness has happened in any of these cases yet and Wiley has made clear that it disputes this aspect of Plaintiffs' claims in each case. As such, it was premature to deny such discovery on the basis of redundancy.

The law also discredits Wiley's contention that discovery of Wiley's misuse of photos beyond those identified is merely a "fishing expedition" and is not relevant to the issue of willfulness. Section 504(c) allows the copyright owner to elect to recover statutory damages and also allows for heightened damages where the infringement was "willful." *See* 17 U.S.C. § 504(c)(2). An infringement is deemed "willful" if the infringer acted "recklessly" or "with 'reckless disregard' for, or willful blindness to, the plaintiff's rights." *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416, 2012 WL 5506121, at *2 (S.D.N.Y. Nov. 7, 2012) (citing *Lipton v.*

*Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995)).  Therefore, as numerous courts have held, the inquiry into whether the particular infringements at issue were willful is <u>not limited only to the incidents in suit</u> because it "need not be proven directly but may be inferred from the defendant's conduct."  *N.A.S. Import Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (citation omitted).  In fact, a whole range of factors are relevant to assessing heightened statutory damages for willful infringement, many of which are not related to the specific infringements at issue and also may support an award of damages that is significantly above the copyright owner's actual damages.  *See*, *e.g.*, *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 234 (1952) (statutory damages not limited to profits; court may consider all facts); *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (courts may consider need for deterrence and punishment).  For instance, the Southern District of New York has identified a number of non-exclusive factors, including:

> (1) "the expenses saved and the profits reaped," (2) "the revenues lost by the plaintiff," (3) "the value of the copyright," (4) "the deterrent effect on others besides the defendant," (5) "whether the defendant's conduct was innocent or willful," (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced," and (7) "the potential for discouraging the defendant."

*Manno v. Tennessee Prod. Ctr., Inc.*, 657 F. Supp. 2d 425, 433 (S.D.N.Y. 2009) (quoting *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986)).

Whereas certain factors relevant to the statutory damages inquiry clearly relate to the Copyright Act's compensatory goal and thus involve the particular infringements at issue and the actual damages suffered by the claimant (such as factors 1 through 3), many of the other factors relate to the "blameworthiness" of the infringer and thus involve broader factors that extend beyond the incidents at issue in the particular case.  *Id.*  Courts look to factors beyond the incidents in suit because Congress implemented the statutory damages mechanism specifically to

allow courts to impose damages that go beyond compensating the plaintiff in order to fulfill the punitive and deterrent goals of the Copyright Act and to also punish the infringer and deter future violations. *See F. W. Woolworth Co.*, 344 U.S. at 232. ("The statutory rule… not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct."); *Los Angeles News Service v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) ("statutory damages serve both compensatory and punitive purposes"). Indeed, the entire rationale underlying statutory penalties—which are intended to discourage conduct contrary to the public's interests—requires that they go beyond the specific, private injury at issue. *See St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66 (1919) (statutory penalties vindicate public interests and thus need not be "confined or proportioned" to plaintiff's "loss or damage"); *accord James Michael Leasing Co., LLC v. PACCAR Inc.*, No. 11-cv-0747, 2013 WL 694764, at *2 (E.D. Wis. Feb. 26, 2013) ("statutory penalties must be proportioned to the state's interest in encouraging compliance with the underlying law rather than to the harm caused to the plaintiff by the specific violation at issue in the case").

In fact, mant courts have held that evidence of a broader pattern of infringements that rises to the level of a "habit" constitutes *prima facie* evidence of willfulness and requires that heightened statutory damages be imposed. *See Stevens v. Aeonian Press*, No. 00-cv-6330, 2002 WL 31387224, at *3 (S.D.N.Y. Oct. 23, 2002) (allowing evidence at trial to show that defendants "have made a habit of reprinting works without permission from the copyright owners"); *U.S. Media Corp. v. Edde Entm't Corp.*, No. 94-cv-4849, 1998 WL 401532, at *18 (S.D.N.Y. July 17, 1998) (finding willful infringement based on defendant's "mode of operation" which was established by evidence of prior infringements involving works not in suit); *Loussier v. Universal Music Group, Inc.*, No. 02-2447, 2005 WL 5644420 *3 (S.D.N.Y.

Aug. 30, 2005) (considering, for purposes of damages, that the defendant engaged "in a regular and uniform practice of infringing copyrights in a manner that constitutes the kind of systematic or semi-automatic conduct necessary to permit the inference of habit").

Because evidence of prior incidents of similar wrongdoing may establish a pattern or habit of misconduct, courts routinely permit discovery of such misconduct. For instance, in *Conopco, Inc. v. Wein*, No. 05-cv-9899, 2007 WL 1040676, at *5 (S.D.N.Y. April 4, 2007), the Southern Disrict of New York held that the defendant's prior settlement agreements concerning similar RICO violations were discoverable because the plaintiff claimed that the defendant was "engaged in a pattern of racketeering" and that "the threat posed by the enterprise's racketeering activity continues and threatens to continue indefinitely, as evidenced by Defendants' ongoing fraudulent solicitation of other targeted manufacturers." *Id*. Because the complaint alleged a pattern and practice, the Court held that "[a]ny evidence of an ongoing pattern of fraudulent activity by the RICO enterprise is clearly relevant to Plaintiff's RICO claim." *Id*. In fact, the Court emphatcally stated: "<u>That the information sought is relevant cannot seriously be disputed</u>." *Id*. (emphasis added).

The mere fact that Plaintiff's claims involve copyright rather than RICO violations is not relevant. The salient fact is that Plaintiff makes the same allegations of an ongoing "pattern-and-practice" of license violations, and thus the logic supporting the relevance of such discovery is the same. Indeed, the Advisory Committee notes regarding the 2000 Amendment to Rule 26 explicitly states that "<u>other incidents of the same type</u>, or involving the same product, <u>could be properly discoverable</u> under the revised standard." Fed. R. Civ. P. 26(b)(1), Adv. Comm. Note, 2000 Amendment (emphasis added).

**C. Courts Consistently Have Held That Wiley and Other Textbook Publishers Being Sued For Copyright Infringement Must Submit To Discovery Regarding Prior Incidents Of Similar Misconduct.**

Contrary to Magistrate Judge Peck's ruliing that Defendant's other uses of photos that are not in the complaint are not relevant, there actually is a growing consensus that such discovery is relevant and appropriate.

In light of the relevant factors identified by courts for determining statutory damages, courts consistently have held that evidence regarding prior instances of similar infringements – including evidence regarding an infringer's settlement of similar claims – is relevant to the damages inquiry and thus a proper subject of discovery. *See*, *e.g.*, *Psihoyos v. Pearson Educ., Inc.*, No. 10-cv-5912 (Oetken, J.), Discovery Hearing Transcript (S.D.N.Y. Apr. 11, 2012) (ordering defendant publisher to produce broad discovery regarding prior incidents of similar violations) (attached as McCulloch Decl. Ex. 4); *Warren/Young-Wolff v. John Wiley & Sons, Inc.*, Nos. 12-cv-5230; 12-cv-5070 (Dolinger, J.), Discovery Hearing Transcript (S.D.N.Y. May 15, 2013) (ordering Wiley to produce evidence pertinent to violations of licenses related to other photos in books at issue and unlicensed uses of copyright owner plaintiffs' photos) (attached as McCulloch Decl. Ex. 5); *Wu v. Pearson Educ., Inc.*, No. 09-cv-6557 (Francis, J.), Discovery Order, Dkt. No. 58 (S.D.N.Y. July 14, 2010) (ordering broad discovery of usage information related to all of plaintiff photos, not only those photos identified in the complaint) (attached as McCulloch Decl. Ex. 6).

Courts overseeing copyright infringemnet claims against Wiley and other textbook publishers have ruled numerous times that these infringers cannot avoid discovery of their pattern and practice of infringements. For instance, in litigating this same issue in the Southern Disrtict of New York in the *Warren* and *Young-Wolff* cases, Wiley argued that it should not be compelled to provide such discovery because whether it violated other licenses from other

photographers in the same books was not relevant to any issues related to the plaintiffs claims

related his specific photos.  In other words, Wiley made the same argument in federal court that

it is making here.  After considering Wiley's position, Magistrtage Judge Dolinger quickly

dismissed Wiley's position as baseless:

> THE COURT:  What is the basis for withholding documents pertinent to other
> images in those books, if any?
> MR. ROSENTHAL:  I think it's a relevance argument.
> THE COURT:  Okay, the relevance argument is rejected. What other argument do
> you have?

*See* McCulloch Decl. Ex. 5 at 19:16-20 (emphasis added).  After considering all of Wiley's

arguments against providing discovery related to other violations and infringements in the same

books, Magistrate Judge Dolinger rejected each of Wiley's positions and ultimately ordered

Wiley to produce documents pertinent to showing whether Wiley also had violated licenses for

"other images in those books." *Id*. at 19-20.  In reaching this conclusion, Magistrate Judge

Dolinger was very clear that, whether Wiley made subsequent, unlicensed uses of one of the

photos identified in the complaint, that information is relevant to willfulness and will rebut

Wiley's claim that is violations were simply clerical errors or isolated occurrences:

> I would think that a case in which . . . the plaintiff is alleging that Wiley used
> [plaintiffs'] photograph for an unlicensed purpose in book Y, that the discovery of
> information that Wiley used it in book Z and maybe A, B, C, D and F would be
> relevant <u>if for no other reason to the question of whether there was intentional
> infringement rather than it was just, oops, a slipup, just, sorry, we made a mistake,</u>
> we put it in book Y, we didn't mean to, but if you put it in book Z, A, B, C, D, E
> and F, too, a trier of fact might take that into consideration in inferring intent[.]

*Id*. at 38:7-18 (emphasis added).

This same reasoning applies equally to all incidents in which Wiley has committed

license violations or infringements involving Plaintiff's other photos that are similar or even

identical to those alleged by in the complaint.  As Magistrate Judge Dolinger put it, this evidence

"would be relevant if for no other reason [than] to the question of whether there was intentional infringement rather than it was just, oops, a slipup, just sorry, we made a mistake."

In *Wu v. Pearson*, Magistrate Judge Francis similarly held that Pearson was required to produce usage information for "all publications containing plaintiff's images," not just the images listed in the complaint. McCulloch Decl. Ex. 6 at 1. Although Wiley tries to distinguish this ruling on the basis that Wu involved class allegations, Judge Francis expressly addressed that issue and held that, although this information went to commonality and typicality issues, it also "will ultimately be central plaintiff's individual claims." Id.

These rulings are consistent with the broad and liberal principles underlying civil discovery. In fact, it seems unassailable that whether the defendant has violated other licenses related to the copyright owners' works or infringed other individuals' copyrights certainly is "relevant" and "likely to lead to admissible evidence." Like Judge Rakoff, Magistrate Judge Peck's ruling focused only on the fact that, under Rule 26, the parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Id.*, Adv. Comm. Note, 2000 Amend. In doing so, however, his ruling ignored that the same information may be relevant for other purposes. These other purposes, including to show a pattern of abuse, fit well within the scope of discovery allowed under Rule 26. In fact, the Advisory Committee also noted that "[t]he dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision," and that "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." *Id.* In particular, the Committee noted that "other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard." *Id.* (emphasis added). Furthermore, the

Committee made clear that "the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action," and that the "court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested." *Id.*

In this case, the requested information is discoverable because it is directly relevant to each Plaintiff's claims in the complaint, including the allegation that Defendant's conduct was "part of a pattern and practice" of malfeasance and thus was willful. Each Plaintiff's complaint expressly pleads that Wiley's infringing conduct is "not limited to the publications identified [in the Complaint]" and is "not limited to the works identified [t]herein." Although these allegations do not assert "claims" related to unidentified photo, they make clear that Wiley's use of other photos is relevant because it will bear directly on the "willfulness" determination and thus the calculation of statutory damages under 17 U.S.C. § 504(c)(2).

Defendant's efforts to obstruct discovery also will bear on the damages inquiry. *See, e.g.*, *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (holding that "the infringer's cooperation in providing evidence concerning the infringements" is a relevant consideration in calculating damages).

### D. Wiley's Refusal To Provide Discovery Of Other Uses Of Plaintiff's Photos Is Inconsistent With Its Position That The Claims In *Psihoyos* Are Precluded Under *Res Judicata*.

Despite numerous requests for this information prior to this litigation, Wiley steadfastly refused to disclose the scope of its usage of any of the Plaintiffs' images and did not identify the publications that included any of Plaintiffs' images. This information thus remains in Defendant's sole possession and the Plaintiffs have no ability to independently discover this information because Defendant maintains that such information is confidential.

Because Wiley has again taken the position that it is not required to provide discovery related to photographs not specifically identified in the complaint, it cannot take the contrary position that *res judicata* applies because copyright claimants are required to bring all claims involving all photos together in one lawsuit. Certainly Wiley cannot simultaneously argue that information involving additional photos is beyond the broad and liberal reach of Rule 26 but somehow any claims related to such photos are subject to the much more narrow and restrictive doctrine of *res judicata*. Wiley's argument that *res judicata* applies lacks any foundation in fact or law.

As a direct consequence of Defendant's refusal to cooperate, each of the Plaintiffs know that Defendant is engaged in infringing conduct but cannot identify the specific works and publications that are involved. Refusal to disclose this information obviously is part of Defendant's broader attempt to preclude copyright holders from being able to protect their copyrights, as Wiley (like other textbook publishers) repeatedly has argued that any pleadings that do not identify the particular publications and specific photographs at issue are insufficient under Rule 8 and fall short of the pleading threshold adopted in *Twombly*.

This dual approach—refusing to disclose usage information and arguing that such information is a prerequisite to suit—creates a very dangerous Catch-22 for copyright holders.

With this as background, Plaintiffs respectfully requests that the District Court reconsider and reverse Magistrate Judge Peck's ruling that Wiley is permitted to redact such information from otherwise responsive documents. If the ruling is left to stand, Plaintiffs will have no choice but to amend their complaint to plead broader, more sweeping allegations against Wiley; seek discovery on those claims; and then amend their complaint yet again following discovery to conform to the evidence. In fact, this is the sort of needless repleading that Magistrate Judge

Peck seemed to believe was necessary merely to obtain discovery of Wiley's pattern of malfeasance. This approach will create needless delay in this case and force the parties and the Court to deal with multiple additional rounds of motion practice just to end up back at this stage again sometime next year. Such a ruling cannot be squared with the underlying purpose of the notice-pleading requirement set forth in Rule 8(a) and the liberal discovery permitted under Rule 26(b).

Merely because Wiley's pattern of misconduct may involve other photos that are owned by the Plaintiffs does not somehow transform the relevant standard for discovery or turn legitimate discovery related to the issue of willfulness into a mere "fishing expedition." Plaintiffs are not on a "fishing expedition." On the contrary, they know full well that Defendant has infringed their copyrights because Defendant essentially has admitted as much. Plaintiffs are merely asking that Defendant produce Filemaker reports (which are easily generated) and that it not be permitted to redact alleged "unresponsive" information from these reports (which will be substantially more burdensome).

Unlike other cases in which discovery has been denied as a fishing expedition, Plaintiff does not seek to search through a mass of documents in Defendant's possession. *United States v. Becton, Dickinson & Co.*, 30 F.R.D. 132, 134 (D.N.J. 1962). On the contrary, Plaintiffs' discovery request pertains to *very specific* documents from a specific database that be generated without any burden whatsoever.

## CONCLUSION

For the forgoing reasons, Plaintiff respectfully request that the District Court SUSTAIN Plaintiffs' objections to the December 1, 2014 discovery ruling by Magistrate Judge Peck and order Defendant Wiley to produce complete and unredacted versions of reports from its Filemaker databases of each plaintiff in these related cases.

Dated:     December 15, 2014

Respectfully submitted,

NELSON & McCULLOCH LLP

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
155 East 56th Street
New York, New York 10022
T: (212) 655-3050
F: (646) 308-1178

*Attorneys for Plaintiff*