IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLEN SENISI, et al., <br><br>            Plaintiffs, <br><br> v. <br><br> JOHN WILEY & SONS, INC., <br><br>            Defendant. | No. 13 Civ. 3314 (LTS-AJP) <br> No. 14 Civ. 6742-6746 (LTS-AJP) <br><br> Judge Laura Taylor Swain <br> Magistrate Judge Andrew J. Peck |

**NON-PARTY PEARSON EDUCATION, INC.'S OBJECTIONS TO MAGISTRATE JUDGE'S JANUARY 7, 2015 ORDER REQUIRING PRODUCTION OF CONFIDENTIAL SETTLEMENT AGREEMENTS**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Pearson Education, Inc. ("Pearson") respectfully submits these objections to the January 7, 2015 Order of Magistrate Judge Peck requiring the production of Pearson's confidential settlement agreements to one of its direct competitors.

**I.     INTRODUCTION**

Pearson is not a party to this action. Pearson appeared before Magistrate Judge Peck at a discovery hearing on Wednesday, January 7, 2015 because Pearson understood that Defendant John Wiley & Sons, Inc. ("Wiley") – one of Pearson's direct competitors – was seeking to compel production of Pearson's confidential settlement agreements with Plaintiff Ellen Senisi ("Senisi"). Pearson did not know that Judge Peck would be addressing this issue until the day before that hearing.

1

At the hearing, Wiley asserted that the settlement agreements between Plaintiff and Pearson are relevant in assessing the value of Plaintiff's claims against Wiley.  Plaintiff and Pearson disagreed, stating that a photographer's settlement of claims against one publisher has no bearing whatsoever on the "value" of the photographer's claims against another publisher, particularly where the claims relate to different publications.  Additionally, Pearson argued that disclosure of its confidential settlement agreements would result in competitive harm and was inconsistent with public policy encouraging settlements.  Judge Peck overruled the relevance and public policy objections and ordered the production of Pearson's settlement agreements to Wiley by Friday, January 9, 2015.  Although Judge Peck agreed that the disclosure of Pearson's confidential settlement agreements to its competitor could cause competitive harm, he stated that limiting the disclosure to outside counsel eyes only alleviated this concern.

Judge Peck indicated that Pearson would have an opportunity to file objections to his Order pursuant to Rule 72(a), but stated "unless you file them immediately, there is no stay and the documents have to be produced by Friday."  In light of this statement and considering that Rule 72(a) allows a party ten days to file objections, Pearson understood that Judge Peck's Order would be stayed if Pearson filed its objections by January 9, 2015, the deadline for production of the settlement agreements.  When Pearson submitted a letter to Judge Peck to clarify this point, however, Judge Peck ruled that "no stay will be granted."  Dkt. 106.  Accordingly, Pearson immediately asked the District Court to stay Judge Peck's Order so that Pearson's objections can be considered.  Dkt. 107.

Pearson respectfully submits that Judge Peck's Order is clearly erroneous and contrary to law and should be set aside pursuant to Rule 72(a).  Contrary to Judge Peck's ruling, courts have consistently held that settlement agreements reflect a party's desire to terminate litigation; they

2

do not support a reliable inference about the merits of a claim or the value of the claim. Indeed, Rule 408 of the Federal Rules of Evidence expressly provides that settlement agreements are not admissible "either to prove or disprove the validity or amount of a disputed claim." Thus, the only ground upon which Wiley claims the settlement agreements are relevant is precisely the reason the agreements would never be admissible at trial. The most important justification for Rule 408's exclusion of settlement materials is the promotion of the public policy favoring compromise and settlement of disputes. In light of this, courts have denied motions to compel settlement agreements in discovery in cases such as this where the agreements would be inadmissible at trial. Finally, Judge Peck's restriction of the production to Wiley's outside counsel does not adequately address the competitive harm to Pearson, particularly where counsel's only stated purpose in seeking the agreements is to demonstrate the value of Plaintiff's claims.

Accordingly, Pearson respectfully requests that the Court set aside Judge Peck's January 7, 2015 Order compelling Plaintiff to produce her confidential settlement agreements with Pearson.

## II.     OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

### A.     Legal Standard

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, "[w]hen a party submits objections to a magistrate judge's non-dispositive order, the district court must review the objections and 'modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.*, 301 F.R.D. 47, 50 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 72(a)). A decision is "clearly erroneous when it is against the clear weight of the evidence or when the court has the definite and firm conviction that a mistake

has been committed." *Hughes v. LaSalle Bank, N.A.*, No. 02CIV.6384MBMHBP, 2004 WL 414828, at *1 (S.D.N.Y. Mar. 4, 2004) (quotations omitted).  An order is "contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Advanced Analytics, Inc.*, 301 F.R.D. at 50 (quotations omitted).

> B.  **Settlement Agreements Between Pearson and Plaintiff Are Not Relevant in this Action Between Plaintiff and Wiley**

To be discoverable, information must be relevant to a party's claim or defense, or reasonably calculated to lead to the discovery of admissible evidence.  *See* Fed. R. Civ. P. 26(b)(1); *In re Viovail Corp Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007).  Although litigants cannot shield a settlement agreement from discovery merely because it contains a confidentiality provision, "discovery of such an agreement is only appropriate if it is itself relevant to the subject matter of the action, or is likely to lead to relevant evidence." *ABF Capital Management v. Askin Capital*, No. 96 Civ 2978, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000) (collecting cases).

Here, Wiley asserted that the settlement agreements between Plaintiff and Pearson are relevant in assessing the "value" of Plaintiff's claims against Wiley.  *See* Dec. 19, 2014 letter from T. Butterfield, Esq. to K. McCulloch, Esq. (Ex. A hereto), at ¶ 5 (arguing that settlements "are relevant to whatever damages [Plaintiff] claims in this case"); Tr. of Jan. 7, 2015 Hearing, 8:18-24 (relevant excerpts attached as Ex. B hereto).  Plaintiff and Pearson disagreed, stating that a photographer's settlement of claims against one publisher has no bearing on the value of the photographer's claims against another publisher, particularly where the claims relate to different

publications. Tr. of Jan. 7, 2015 Hearing, 9:14-11:16, 13:3-11. Judge Peck overruled these objections and ordered the production of Pearson's settlement agreements with Plaintiff.[1]

The case law is clear, however, that settlement agreements evidence "only a party's desire to terminate the litigation" they do ***not*** "support any reliable inference about the merits of the claim ***or the amount of damages***." *ESPN, Inc. v. Office of Com'r of Baseball*, 76 F. Supp. 2d 383, 411 (S.D.N.Y. 1999) (emphasis added) (quotations omitted). A number of variables go into a decision to settle a case including (i) the desire to avoid the costs and uncertainty of protracted litigation, (ii) the defendant's risk of losing on the merits, (iii) the plaintiff's risk of losing on the merits, (iv) the costs of defending against the claims, (v) the costs of prosecuting the claims, (vi) the time, effort, and business resources that would be allocated to litigating the case, (vii) competing business objectives, (viii) the need for finality, and, importantly, (ix) the value of confidentiality, among other variables.

Accordingly, courts within this District and across the country have denied motions to compel the production of settlement agreements on the grounds that such agreements are not relevant to the issue of damages. *See Bottaro v. Hatton Associates*, 96 F.R.D. 158, 159-160 (E.D.N.Y. 1982) (holding that a settlement agreement was not discoverable where party argued that the settlement agreement was relevant "on the question of damages"); *Berryman v. SuperValu Holdings, Inc.*, No. 3:05CV169, 2008 WL 4934007, at *10 (S.D. Ohio Nov. 18, 2008)

---

[1] Judge Peck refused to consider Pearson's relevancy objection, stating that Pearson, as a non-party, did not have standing to raise the issue. Tr. of Jan. 7, 2015 Hearing, 15:23-24. Courts have recognized, however, that non-parties have standing to raise relevancy challenges, particularly in this context where a party seeks to compel production of a non-party's confidential settlement agreements. *See, e.g., Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552 (S.D. Ind. 1999) (allowing non-party to intervene to raise objection that "the terms of [the] settlement agreement with [the plaintiff] are irrelevant" and denying defendant's attempt to compel production of the settlement agreement).

("Given the constraints placed on the use of settlement agreements by Federal Rule of Evidence 408, any settlement agreement would be inadmissible regarding liability or damages, and is of questionable relevance for any other purpose in this action."); *Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552 (S.D. Ind. 1999) ("Because opposing parties might settle cases for various and not necessarily mutual reasons, it cannot be assumed that terms of settlement would be relevant to the issues of liability or damages."); *Doe v. Methacton Sch. Dist.*, 164 F.R.D. 175, 176 (E.D. Pa. 1995) (holding settlement agreement was irrelevant and not discoverable where the party seeking the disclosure "simply makes a broad assertion that the Release could lead to admissible evidence because it is 'clearly' relevant to the issue of damages and is imperative for its trial preparation"); *see also Salgado v. Club Quarters, Inc.*, No. 96CIV.383(LMM)(HBP), 1997 WL 269509, at *1 (S.D.N.Y. May 20, 1997) (finding that there was no showing that the settlement agreement was relevant and therefore holding that "there is no reason to permit its disclosure at this time"); *Riddell Sports, Inc. v. Brooks*, 92 CIV. 7851 (PKL), 1995 WL 20260, at *1 (S.D.N.Y. 1995) (holding that absent a "particularized showing," settlement agreements "are presumed irrelevant and need not be produced").

Indeed, Rule 408 of the Federal Rules of Evidence expressly states that settlement agreements are not admissible "either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). Thus, the only ground upon which Wiley claims that the settlement agreements are relevant is precisely the reason that the agreements would never be admissible at trial. *See, e.g.*, *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) (holding settlement agreement was inadmissible and therefore not discoverable); *ABF Capital Management*, 2000 WL 191698, at *2 (denying discovery of settlement agreement, stating "while disclosure of the terms of the Settlement Agreement may allow Kidder and the other

6

remaining defendants to approach settlement negotiations from a more enlightened perspective, this alone does not determine Kidder's entitlement to the Settlement Agreement at issue. . . . '[R]elevance, not simply promotion of settlement, must be the touchstone.'" (quoting *Griffin v. Mashariki*, No. 96 CIV. 6400 (DC), 1997 WL 756914, at *2 (S.D.N.Y. Dec. 8, 1997)).  Although Rule 408 governs admissibility rather than discoverability, the clear prohibition on the admissibility of settlement agreements to "prove or disprove the . . . amount of a disputed claim" confirms that settlement agreements should not be discoverable where the only stated relevance of the agreements is to prove the value of a claim.

Accordingly, Pearson respectfully submits that Judge Peck's finding that Plaintiff's settlement agreements with Pearson are relevant in assessing the value of Plaintiff's claims against Wiley is clearly erroneous and contrary to law and warrants setting aside his order requiring the production of such agreements in this action.

### C. The Public Policy Promoting Settlements Dictates that the Settlement Agreements Should Not Be Produced

Wiley's demand for the confidential settlement agreements between Plaintiff and Pearson should be denied for the additional reason that such production undermines the important public policy favoring the compromise and settlement of disputes.  *See Manko v. United States*, 87 F.3d 50, 54 (2d Cir. 1996) (explaining that the law "favor[s] the compromise and settlement of disputes").  The production of settlement agreements between Plaintiff and Pearson to serve the irrelevant and impermissible purpose of valuing Plaintiff's claims against Wiley will have a chilling effect on future settlements.  *See* Fed. R. Evid. 408.  Confidentiality is a major consideration that parties take into account when entering into settlement agreements.  If this material term is brushed aside by courts, parties will understandably be less likely to engage in

settlements. This is particularly true where, as here, the release of confidential information would be to Pearson's direct competitor.

Indeed, the most important justification for Rule 408's exclusion of settlement materials is the "promotion of the public policy favoring compromise and settlement of disputes." *ESPN*, 76 F. Supp. 2d at 411 (citing Fed. R. Evid. 408, Advisory Committee Notes). For this reason, courts generally do not allow the discovery of settlement agreements and related documents. *See, e.g.*, *Bottaro*, 96 F.R.D. at 160; *Olin Corp. v. Ins. Co. of N. Am.*, 603 F. Supp. 445, 450 (S.D.N.Y.) *on reargument*, 607 F. Supp. 1377 (S.D.N.Y. 1985) ("discovery of the terms of the agreement between Olin and Wausau is denied in order to safeguard the policy favoring settlements."); *see also Stoll v. Kraft Foods Global, Inc.*, No. 1:09-CV-0364-LJM-DML, 2010 WL 2560101, at *1 (S.D. Ind. June 24, 2010) (holding settlement agreement was not discoverable where disclosure was outweighed "by the policies favoring settlement"); *Centillion*, 193 F.R.D. at 553 (holding that confidential settlement agreement was not discoverable "[b]ecause confidentiality of settlement agreements is a primary inducement to parties to settle cases" and "settlements are and will be encouraged, in the run of cases, more by maintaining confidentiality of agreements than by disclosure.").

Although he called it an "interesting argument," Judge Peck rejected Pearson's contention that the public policy encouraging settlements dictates that Pearson's confidential settlement agreements should not be produced to Wiley. In doing so, Judge Peck suggested that Rule 408 applies only where settlement negotiations are ongoing. Tr. of Jan. 7, 2015 Hearing, 27:1-11 ("If settlement negotiations are ongoing and there is a fear that it will chill the ongoing settlement negotiations, that is one thing, but 408 is not and never has been a complete and absolute bar for the very reason that there is relevance to this."). But the Advisory Committee

8

Notes to Rule 408 confirm that the rule applies to "evidence of conduct or statements made in compromise negotiations, *as well as the offer or completed compromise itself*." Fed. R. Evid. 408 Adv. Comm. Notes (1972) (emphasis added).  While Rule 408 recognizes certain exceptions such as proving bias or prejudice, or negating a contention of undue delay, *see* Fed. R. Evid. 408(b), as set forth above, Wiley's intent to use the settlement agreements to prove the value of Plaintiff's claims is expressly prohibited.  Pearson respectfully submits that Judge Peck's Order was contrary to law in this additional respect.

### D. Production of Pearson's Settlement Agreements to Its Direct Competitor Would Result in Significant Competitive Harm

Judge Peck's Order compelling the production of Pearson's settlement agreements to Wiley should be set aside for the additional reason that it would result in significant competitive harm.  The terms of Pearson's settlement agreements are commercially sensitive and Pearson keeps them strictly confidential.  Disclosure of such terms would reveal Pearson's settlement strategy, its assessment of litigation risks and the cost of litigation, information about its usage of third-party photographs in its publications, as well as sales, distribution and licensing information.  Disclosure to Wiley, one of Pearson's direct competitors, would cause significant harm to Pearson.  *See Centillion*, 193 F.R.D. at 553 (holding that confidential settlement agreement would not be produced because of "the commercial sensitivity of the financial and business information in the agreement" and concluding that "counsel-only disclosure is not warranted under the Rules").

Judge Peck agreed that the disclosure of Pearson's confidential settlement agreements could cause competitive harm.  Tr. of Jan. 7, 2015 Hearing, 16:2-13 ("Your only basis for having any sort of standing is competitive harm.  I have ruled in your favor on that issue.").

9

Nevertheless, Judge Peck stated that limiting the disclosure to outside counsel eyes only alleviated this concern.  This restriction does not adequately address the competitive harm for several reasons.  First, Wiley's counsel can use the information in Pearson's settlement agreements for Wiley's benefit in drafting future agreements for their client.  Second, Judge Peck noted that Wiley's counsel could seek permission to disclose the agreements to their client after reviewing them.  Third, it is difficult to imagine how Wiley's counsel could use the agreements for their stated purpose of valuing Plaintiff's claims against Wiley without revealing the substance of the agreements to their client at some point in the litigation.  Accordingly, Pearson respectfully submits that Judge Peck's outside counsel eyes only restriction did not adequately address the competitive harm that will result from the disclosure of Pearson's settlement agreements to its direct competitor and provides an additional ground for setting aside the Order.

### III.  CONCLUSION

For the foregoing reasons, Pearson respectfully requests that this Court set aside Judge Peck's January 7, 2015 Order compelling Plaintiff to produce her confidential settlement agreements with Pearson.

Dated:  January 9, 2015

s/ Brian Andrew Katz
Brian Andrew Katz (BK-1967)
Morgan, Lewis & Bockius LLP
399 Park Avenue
New York, NY 10022-4689
(212) 705-7305
(212) 593-7026 (fax)
brian.katz@morganlewis.com

OF COUNSEL:

David W. Marston Jr.
Dana E. Becker
Morgan, Lewis & Bockius LLP

1701 Market Street
Philadelphia, PA 19103
(215) 963-5937
(215) 963-5001 (fax)
dmarston@morganlewis.com
dana.becker@morganlewis.com

*Attorneys for Pearson Education, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on January 9, 2015, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and served on all counsel of record.


DATED:　　January 9, 2015　　　　　　　　　　　　　　s/ Brian Andrew Katz
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Brian Andrew Katz