UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ELLEN SENISI,

        Plaintiff,

  -v-                                                   No.  13CV3314-LTS-AJP

JOHN WILEY & SONS, INC.,

        Defendant.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Defendant John Wiley & Sons, Inc. ("Defendant" or "Wiley"), a publisher of academic, scientific and educational journals and books, moves, pursuant to Federal Rules of Civil Procedure 12(c), 12(h)(3) and the Federal Arbitration Act ("FAA"), to dismiss part of the Second Amended Complaint ("SAC") of Plaintiff photographer Ellen Senisi ("Senisi" or "Plaintiff") in favor of arbitration, and to stay her remaining claims.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.  The Court has carefully considered the parties' submissions and arguments.  For the following reasons, the Court grants Wiley's motion to dismiss certain of the claims asserted in the Second Amended Complaint in favor of arbitration, and denies Wiley's motion to stay the remaining claims pending the conclusion of arbitration.

BACKGROUND

        In light of the prior motion practice in this case, the Court presumes the parties' familiarity with the underlying facts, and provides only a brief summary of the relevant background.

On May 16, 2013, Plaintiff Senisi, along with six other photographers, filed suit against Wiley, seeking a declaratory judgment regarding their rights as copyright owners of photographs used by Wiley in its textbooks, including clarity regarding Wiley's prior and ongoing use of their works.  (See Complaint, Docket Entry No. 1.)  The plaintiffs amended their complaint on July 15, 2013, adding a number of copyright infringement claims based on Wiley's alleged improper use of certain photographs beyond the agreed-upon terms of licenses.  (See First Amended Complaint, Docket Entry No. 11.)  On August 5, 2013, Wiley moved to dismiss all of the plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and moved to sever any surviving claims as lacking common questions of law or fact.  (See Docket Entry Nos. 15-16.)  On March 28, 2014, this Court granted Wiley's motion, dismissing the plaintiffs' declaratory judgment claims and granting Wiley's motion to sever.  (See Memorandum Opinion and Order, Docket Entry No. 43.)  The Court further directed that one of the seven plaintiffs should amend the complaint to assert his or her copyright claims individually.  (See id.)

Senisi thereafter filed her SAC, in which she asserted copyright infringement claims with respect to several licensed photographs.  (See Docket Entry No. 45.)  Some of the licenses at issue had been entered into directly between Wiley and Senisi, while the rest had been provided to Wiley by Senisi's licensing agent, The Image Works.  (See id., Ex. 1.)[1]

In the instant motion, Wiley argues that the invoices for the licenses provided by Senisi contain binding arbitration clauses that require the dismissal of claims stemming from those licenses in favor of arbitration.  (See Memorandum of Law in Support of Defendant's

---

[1] The first column of Exhibit 1 to the Second Amended Complaint indicates whether the images were licensed to Wiley by Senisi directly, or by her licensing agent, The Image Works.  (See SAC, Ex. 1.)  Wiley seeks dismissal only of the claims that arise from licenses provided by Senisi.

Motion to Dismiss Plaintiff's Second Amended Complaint in Part, and to Stay Remaining Claims ("Wiley Memo").)  Wiley asserts that it reached out to Plaintiff in an effort to have her voluntarily withdraw her claims concerning these licenses, but Plaintiff refused to do so.  (Wiley Memo at pp. 1-2.)  Wiley thereafter filed this motion, seeking dismissal of all claims covered by licenses that Senisi had provided, and further seeking a stay of Senisi's remaining claims pending the conclusion of arbitration.

DISCUSSION

Wiley's Motion to Dismiss Certain Claims as Subject to Arbitration

The Second Circuit has provided district courts with a four-pronged analysis to follow in determining whether a dispute is governed by an arbitration clause: "first, [a court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration."  JLM Industries, Inc. v. Stolt–Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (internal quotation marks and citations omitted).

Wiley asserts that all claims stemming from the licenses provided directly by Senisi are governed by a set of terms and conditions that includes a valid and binding arbitration clause.  Wiley has provided copies of the relevant license invoices with its briefing.  (See Declaration of Toby M.J. Butterfield in Support of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint in Part and to Stay Remaining Claims ("Butterfield Dec."), Ex. A; Reply Declaration of Toby M.J. Butterfield in Support of Defendant's Motion to Dismiss

Plaintiff's Second Amended Complaint in Part and to Stay Remaining Claims ("Butterfield Reply Dec."), Ex. C.)

Agreement to Arbitrate

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds exist at law or in equity for the revocation of any contract."  9 U.S.C.S. § 2 (LexisNexis 2008).  The Second Circuit has held that "the FAA is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution," JLM Industries, 387 F.3d at 171 (internal quotation and citation omitted), and has noted that, where a broad arbitration clause exists, there is a "presumption of arbitrability."  ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 34 (2d Cir. 2002).  See also American Express Co. v. Italian Colors Restaurant, 133 S. Ct. 2304, 2309 (2013) ("Th[e] text [of the FAA] reflects the overarching principle that arbitration is a matter of contract . . . [a]nd consistent with that text, courts must rigorously enforce arbitration agreements according to their terms.").

Each of the invoices provided by Wiley contains language on the front side stating that it is subject to the terms and conditions on the reverse side.  (Butterfield Dec., Ex. A; Butterfield Reply Dec., Ex. C.)  The reverse side of Plaintiff's invoice form includes a list entitled "Delivery Memo Terms and Conditions," comprised of ten paragraphs that lay out the terms of the license.  (See id.)  Paragraph six of this list, captioned "Arbitration," is a broad arbitration clause that reads,"[c]lient [Wiley] and Photographer [Senisi] agree to submit all

disputes hereunder to arbitration . . . under the rules of the American Arbitration Association. The arbitrator's award shall be final and judgment may be entered on it in any court having jurisdiction thereof." (Butterfield Dec., Ex. A at ¶ 6; Butterfield Reply Dec., Ex. C at ¶6.) As Wiley notes, Senisi specifically identifies these invoices in her SAC, and her claims are based on allegations that Wiley exceeded the terms of the corresponding licenses. (See SAC ¶¶ 35-37.) Neither party contests the existence of the arbitration clauses. The Court therefore finds that an agreement to arbitrate exists between Senisi and Wiley.[2]

Scope of the Agreement

The Court finds that Senisi's claims under the licenses that she issued fall within the scope of the subject arbitration clauses, which expressly cover "all disputes" under the licenses. The Court notes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." ACE Capital, 307 F.3d at 34.

Congressional Intent

The Supreme Court has explained that, "[h]aving made the bargain to arbitrate, [a] party should be held to it unless Congress itself has evinced an intention to preclude a waiver

---

[2] Senisi originally did not produce complete copies of the invoices allegedly governing some of her claims. Following Wiley's filing of the instant motion, Senisi produced a complete copy of invoice number ST0719-A, for the images associated with the PowerPoint presentation associated with "Child Psychology, 5e." (See Butterfield Reply Dec. ¶ 8, Ex. C.) This invoice contains terms and conditions identical to the other invoices at issue, and is therefore subject to the same arbitration clause. Senisi has produced only the front side of invoice number ST058 for "Abnormal Psychology, 10e." (See Butterfield Reply Dec. ¶ 8, Ex. C.) Because the front side of invoice ST058 is identical to the others proffered by Wiley, and Senisi has neither asserted that she used a different form in this instance, nor denied that the invoice incorporated identical terms and conditions on the reverse side, the Court infers that the license granted under invoice ST058 is governed by the same arbitration clause that is printed on the reverse side of Senisi's other invoices.

of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 628 (1985). Senisi has identified no such congressional statement of intent, and the Second Circuit has held that copyright claims are suited for resolution by arbitration. See, e.g., McMahan Securities Co. L.P. v. Forum Capital Markets L.P., 35 F.3d 82, 89 (2d Cir. 1994) ("we find no bar to arbitrating plaintiffs' copyright claim in any event."); JVN Music, Inc. v. Rodriguez, No. 99CV11889-DAB-KNF, 2000 WL 827702, at *4 (S.D.N.Y. June 27, 2000) ("Congress has not asserted any 'policy against arbitration of [a] claim for the infringement of a valid copyright.'") (quoting Kamakazi Music Corp. v. Robbins Music Corporation, 684 F.2d 228, 231 (2d Cir.1982)). Congressional intent does not bar arbitration of Senisi's copyright claims.

    Senisi's Waiver and Unconscionability Arguments

        *Waiver*

Senisi nonetheless argues that her claims under the direct licensing agreements cannot properly be dismissed in favor of arbitration. First she asserts that, by participating in the litigation of this case for over a year, both parties have waived their rights to arbitrate. Senisi asserts that she "waived her right to arbitrate by initiating this suit," and argues that "Wiley waived any purported right to compel arbitration against Senisi's claims by taking significant actions inconsistent with any intent to arbitrate." (Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint in Part, and to Stay Remaining Claims ("Senisi Memo"), at p. 14.)

The Second Circuit has held that "[w]aiver is not to be lightly inferred, and mere delay . . . without some resultant prejudice to a party cannot carry the day." Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985) (internal quotation marks and citations

omitted). Furthermore, the Second Circuit has "often and emphatically applied the strong federal policy favoring arbitration . . . [and this] rule preferring arbitration, when agreed upon, had led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration." Leadertex, Inc. v. Morganton Dyeing & Finishing Corp, 67 F.3d 20, 25 (2d Cir. 1995). "Whether or not there has been a waiver is decided in the context of the case, with a healthy regard for the policy of promoting arbitration." Id. Waiver is only inferred when "a party engages in protracted litigation that results in prejudice to the opposing party." Cotton v. Slone, 4 F.3d 176, 179 (2d Cir. 1993). Factors to consider in evaluating whether a party has suffered prejudice include "(1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense." S & R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83 (2d Cir. 1998).

Prejudice may take the form of "substantive prejudice to the legal position of the party opposing arbitration, such as when the party seeking arbitration loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or obtains information through discovery procedures not available in arbitration." Doctor's Associates, Inc. v. Distajo, 107 F.3d 126, 131 (2d Cir. 1997) (internal quotation marks and citations omitted). A party also may be prejudiced by unnecessary expense and delay caused "when an opponent delays invocation of its contractual right to arbitrate." Id. at 131. "No bright line defines this second type of prejudice – neither a particular time frame nor dollar amount automatically results in such a finding – but it is instead determined contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting

burdens and expenses, and the other surrounding circumstances." Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991).

Senisi has failed to show that Wiley has caused her any substantive prejudice by participating in the litigation to this point. Indeed, Senisi does not even mention the word "prejudice" in the section of her opposition brief dealing with her waiver argument. She has not proffered that she has suffered, or anticipates suffering, any prejudice to her legal position arising from the fact that Wiley has responded to the lawsuit she initiated.

Nor have Wiley's actions caused any inordinate delay or expense prejudicial to Senisi. Wiley's decision to file a meritorious motion to dismiss Senisi's first amended complaint was entirely appropriate in light of its defensive position in this litigation. Courts have consistently held that a party's decision to file a motion to dismiss or to participate in discovery does not constitute an automatic waiver of the right to invoke a valid arbitration clause. See e.g., Rush, 779 F.2d at 888 ("rather than immediately seeking arbitration in response to [plaintiff]'s complaint, defendants moved to dismiss. Such a motion alone, however, does not waive the right to arbitrate . . . Similarly, defendants' participation in pretrial discovery did not preclude them from demanding arbitration."); Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP, 434 F. Supp. 2d 211, 215 (S.D.N.Y. 2006) (finding no waiver of arbitration despite defendant's unsuccessful dismissal motion practice); Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc., 754 F.2d 457, 466 (2d Cir. 1985) (finding no waiver of arbitration where defendant had filed answer, motion to dismiss, and participated in discovery over the course of two years). As Wiley points out, Senisi's own litigation strategy was a factor in the timing of the instant motion practice. Senisi originally filed a complaint along with several other photographers seeking only a declaratory judgment and, therefore, it was not until May 2014 that she filed the SAC asserting

the specific claims at issue here. Wiley filed this motion less than three months later. Its delay was not unreasonable by any measure. Nor has Senisi demonstrated that litigation of the case thus far has caused her prejudicial expense. Senisi has therefore failed to demonstrate that Wiley's participation in this litigation has caused her any prejudice whatsoever, and the Court finds that Wiley has not waived its right to invoke the arbitration clauses covering the relevant claims.

*Unconscionability*

Senisi next argues that the arbitration clauses contained in her license invoices should not be enforced because to do so would be unconscionable. Essentially, Senisi asserts that the costs of arbitration are so high that they would block her from vindicating her rights, and that Wiley's decision to invoke arbitration is a tactical maneuver intended to prevent her from actually pursuing her claims in the arbitral forum. (See Senisi Memo at pp. 15-18.)

The Second Circuit has held that "questions of contractual validity relating to the unconscionability of [an] underlying arbitration agreement must be resolved first, as a matter of state law." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003). "Under New York law, a contract is unconscionable when it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable [sic] according to its literal terms . . . Generally, there must be a showing that such a contract is both procedurally and substantially unconscionable." Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115, 121 (2d Cir. 2010) (internal quotation marks and citations omitted). "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the

contract [per se]." Id.  (quoting State v. Wolowitz, 96 A.D.2d 47, 468 N.Y.S.2d 131, 145 (1983)).

Clearly, Senisi cannot demonstrate procedural unconscionability.  The arbitration clauses at issue were included in terms and conditions provided by Senisi herself, and she admits as much in her briefing.  (See Senisi Memo at p. 18.)  Senisi obviously did not lack a "meaningful choice" in deciding whether to include arbitration clauses in the terms and conditions of her own licensing forms.

Nor has Senisi demonstrated that the terms of the arbitration clauses at issue are unreasonably favorable to Wiley.  The clauses bind both parties, and the terms are broad and egalitarian.  Senisi points to nothing that favors Wiley, other than the potential costs of arbitration.  However, the clauses are silent with respect to which party will ultimately bear the costs.  The Supreme Court has held that this cannot be a basis for invalidating an arbitration clause.  See Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 81 (2000) ("Although the existence of large arbitration costs may well preclude a litigant . . . from effectively vindicating such rights, the record does not show that [this litigant] will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter, revealing only the agreement's silence on the subject. That fact alone is plainly insufficient to render it unenforceable.").  Senisi makes no showing of what financial burdens she might be forced to bear in arbitration; she simply speculates that the costs to her would be exorbitant. "Mere conclusory assertions that costs associated with arbitration would be excessive do not alone render an arbitration agreement unenforceable."  Gill v. World Inspection Network International, Inc., No. 06CIV3187-JFB, 2006 WL 2166821, at *6 (S.D.N.Y. July 31, 2006); cf. American Express Co., 133 S. Ct. at 2307 ("the fact that it is not worth the expense involved in

proving a statutory remedy does not constitute the elimination of the right to pursue that remedy.") (emphases in original).  Furthermore, as Wiley points out, Senisi could have included a provision in her terms and conditions allocating the costs of arbitration to Wiley if she feared that she might otherwise be prevented from availing herself of her right to arbitrate.  Her failure to do so can be attributed to her alone, and plainly does not render the arbitration clauses unconscionable.[3]

The Court finds that Wiley and Senisi agreed to arbitrate, the arbitration clauses contained in the terms and conditions of Senisi's licenses were valid and binding, the claims asserted by Senisi fall within the scope of these arbitration clauses, Congress has not indicated that such claims should not be arbitrable, and neither a theory of waiver nor unconscionability provides support for Senisi's argument that the arbitration clauses should not be enforced.  In light of these determinations, the Court grants Wiley's motion to dismiss in favor of arbitration any of Senisi's copyright infringement claims stemming from the licensing agreements for which Wiley has provided invoices to the Court.

Wiley's Application to Stay Plaintiff's Remaining Claims

The Court must next decide whether to stay Senisi's remaining claims pending arbitration.  As the Second Circuit has held, "if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration." JLM Industries, 387 F.3d at 169 (internal citation omitted).  The decision to grant a stay falls within the discretion of the trial court as a means of controlling its docket.  See, e.g., Nilsen v. Prudential-Bache Sec., 761 F. Supp. 279, 288 (S.D.N.Y. 1991).

---

[3] For substantially the same reasons, the Court declines to grant Plaintiff's request that it compel Defendant to initiate arbitration within 30 days of issuance of this Opinion and Order, and to bear the attendant costs.

No stay of the nonarbitrable claims is warranted here. As Senisi notes, this Court would not be bound by any of the arbitrator's rulings. The scope of the arbitration would be narrow, focusing only on a subset of Senisi's claims. Therefore, the arbitrator's decision – which may not even include a written opinion – is not likely to be particularly instructive with regard to any of Senisi's claims that arise from a separate set of licenses.

Wiley makes much of the possibility that discovery conducted by the arbitrator would shed light upon Senisi's nonarbitrable claims, particularly if the arbitrator can acquire copies of relevant "Master Agreements" between Wiley and Image Works, which apply to the remainder of Senisi's claims, and which may contain arbitration clauses. (See Wiley Memo, at p. 9.) There is, however, no reason to expect that such discovery cannot be conducted in this litigation to the extent that it is relevant to the remaining claims.

Additionally, staying Senisi's nonarbitrable claims would inflict undue prejudice on her. The Second Circuit has held that "delay generally works to the advantage of defendants who may well be inclined to prolong the arbitration unnecessarily in the hope that plaintiffs ultimately will be forced to abandon their nonarbitrable claims. If nonarbitrable federal claims are stayed pending the arbitration of other federal or state claims, plaintiffs . . . face the unhappy choice of either forgoing arbitrable claims in order to obtain prompt consideration of the other claims or waiting months, if not years, before their nonarbitrable claims will be heard by a federal court." Chang v. Lin, 824 F.2d 219, 222 (2d Cir. 1987) (declining to grant stay pending arbitration in a federal securities action). These concerns are equally applicable here. Senisi should not be prevented from moving forward with those claims that she stands ready to litigate. Therefore, the Court denies Wiley's request for a stay of Senisi's nonarbitrable claims.

CONCLUSION

For the foregoing reasons, Wiley's motion to dismiss Senisi's copyright claims in favor of arbitration is granted with respect to all claims arising from the following invoices: ST0538 (dated January 22, 2009), ST0653 (dated February 1, 2007), ST0719 (dated November 26, 2007), ST0719-A (dated December 4, 2007), ST0653 (dated October 6, 2009), ST010008 (dated June 1, 2010) (see Butterfield Dec., Ex. A), and ST0538 (dated November 3, 2005) (see Butterfield Reply Dec., Ex. C).  Wiley's motion to stay the remainder of Senisi's claims pending the conclusion of arbitration is denied.

Wiley has proffered no evidence of bad faith conduct on Plaintiff's part.  Its request for an award of attorneys' fees and costs incurred in this motion practice is therefore denied.

This Memorandum Opinion and Order resolves docket entry number 51.

This case remains referred to Magistrate Judge Peck for general pretrial management.

SO ORDERED.

Dated: New York, New York
       January 21, 2015

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge