THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLEN SENISI,<br><br>    *Plaintiff*,<br><br>    *v.*<br><br>JOHN WILEY & SONS, INC.,<br><br>    *Defendant.* | No. 13-cv-3314 (LTS) (AJP)<br><br>Hon. Laura T. Swain<br><br>ECF CASE<br>Electronically Filed |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
155 East 56th Street
New York, New York 10022
Tel: (212) 355-6050
*Counsel for Plaintiff*

April 30, 2015

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

OVERVIEW OF PLAINTIFF'S CLAIMS .............................................................................. 4

SUMMARY OF UNDISPUTED FACTS ................................................................................ 5

SUMMARY OF ARGUMENT ................................................................................................ 7

APPLICABLE STANDARD FOR SUMMARY JUDGMENT ............................................... 8

ARGUMENT ............................................................................................................................ 8

I.   WILEY HAS STIPULATED TO DISMISSAL OF ITS ALLEGATION THAT PLAINTIFF LACKS STANDING BECAUSE SHE ASSIGNED HER COPYRIGHTS TO HER LICENSING AGENTS. ................................................. 8

II.  WILEY'S STATUTE OF LIMITATIONS DEFENSE IS MERITLESS. ......................... 9

III. WILEY'S "INNOCENT INTENT" DEFENSE IS FRIVOLOUS. ................................. 12

CONCLUSION ....................................................................................................................... 17

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 8

*Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83
  (2d Cir. 2002) .................................................................................................................. 8

*Celotex v. Catrett*, 477 U.S. 317 (1986) ........................................................................................ 8

*Clifton v. Pearson Educ., Inc.*, 11-cv-3640, 2011 WL 1669362
  (N.D. Cal. May 11, 2012) ................................................................................................ 10

*D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29 (2d Cir. 1990) ................................................. 12

*Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) ................................................................................... 9

*Fitzgerald Publ'g Co. v. Baylor Pub. Co.*, 807 F.2d 1110 (2d Cir.
  1986) ............................................................................................................................... 12

*Gabelli v. S.E.C.*, ___ U.S. ___, 133 S. Ct. 1216 (2013) ............................................................. 11

*John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262
  (S.D.N.Y. 2014) ................................................................................................................ 5

*Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*, 281
  F.R.D. 234 (E.D.Pa. 2012) .............................................................................................. 10

*Marvel Entm't, Inc. v. Kellytoy (USA), Inc.*, 769 F. Supp. 2d 520
  (S.D.N.Y. 2011) ................................................................................................................ 8

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986) ............................................. 8

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d
  1117 (N.D. Cal. 2014) ...................................................................................................... 5

*N.A.S. Import Corp. v. Chenson Enter., Inc.*, 968 F.2d 250 (2d Cir.
  1992) ............................................................................................................................... 12

*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir.
  1990) ............................................................................................................................... 12

*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014) ............................................ 14

*Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (JPO), 2012
  WL 5506121 (S.D.N.Y. Nov. 7, 2012) ....................................................................... 14, 15

*United States v. Livecchi*, 711 F.3d 345 (2d Cir. 2013) ................................................................ 9

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) ........................................................................... 8

*Wood v. Houghton Mifflin Harcourt Publ'g Co.*, 589 F. Supp. 2d
    1230 (D. Colo. 2008). ............................................................................................... 17

**STATUTUES**

17 U.S.C. § 504(c)(2) ........................................................................................................ 12

17 U.S.C. § 507(b) .............................................................................................................. 9

**RULES**

Fed. R. Civ. P. 56(a) ........................................................................................................... 8

Plaintiff Ellen Senisi ("Plaintiff" or "Senisi"), by and through undersigned counsel, hereby submits this memorandum of law in support of her Motion for Partial Summary Judgment against Defendant John Wiley & Sons, Inc. ("Defendant" or "Wiley"). Plaintiff seeks summary judgment on Wiley's Fifth and Seventh Affirmative Defenses claiming that Wiley's infringements were "innocent" and that Plaintiff's claims are barred by the "statute of limitations."

## OVERVIEW OF PLAINTIFF'S CLAIMS

Plaintiff is a professional photographer who makes her living taking and licensing "stock" photographs. (Dkt. No. 125 ¶ 5.) Plaintiff licenses her photos directly and through third-party stock photo licensing companies, including The Image Works ("TIW"). (*Id.* ¶ 27.) Regardless of the licensing pathway, all of Plaintiff's photographs are licensed to customers as "rights managed" images, meaning that the licenses allow only limited uses of Senisi's photos and that the license fees are determined by the scope of the licensed usage rights. (*Id.* ¶ 31.)

Defendant Wiley is one of the nation's oldest and largest publishing companies, specializing in creating educational textbooks and other similar materials and publications. (*Id.* ¶ 6.) Wiley published numerous photos created by Plaintiff in its textbooks and related products. (*Id.* Ex. 1.) Wiley purchased licenses related to Plaintiff's images both from Plaintiff directly and from her licensing agents. The Court dismissed Plaintiff's claims involving licenses issued to Wiley directly by Plaintiff in favor of arbitration. (Dkt. No. 126.) Plaintiff's remaining claims thus relate to violations of licenses issued by TIW and other unlicensed uses of Plaintiff's photos.

Plaintiff alleges that the licenses issued to Wiley by TIW permitted only limited uses of her photos and the license fees charged to Wiley were calculated based on the scope of usage rights being purchased. More specifically, Plaintiff contends that the subject licenses granted to

4

Wiley identified the particular book in which Plaintiff's photos could be published and typically specified (i) the number of copies of the book in which the photos could be published (the so-called "print run"); (ii) the sales region in which copies of the book could be sold; (iii) the language in which the book could be published; and (iv) the electronic uses that were permitted. (Dkt. No. 125 ¶¶ 26-31.) Plaintiff also alleges that the licenses did not permit reuse in subsequent editions or different books without additional rights being purchased prior to publication. (*Id.* ¶ 26.)

Plaintiff's claims that, despite the express restrictions stated in its licenses, Wiley exceeded the scope of its permission and used Plaintiff's photos in a manner not permitted under the licenses without first purchasing the necessary additional rights.[1]

## SUMMARY OF UNDISPUTED FACTS

On or about March 22, 2012, Plaintiff's counsel contacted in-house counsel for Wiley to advise that Plaintiff was represented by legal counsel and to demand that Wiley provide information regarding its use of Plaintiff's photos, including photos obtained through Plaintiff's agents. (McCulloch Decl Ex. 1.) Instead of responding to the inquiry by Plaintiff's counsel, Wiley instead had its Vice President of Finance for its Global Education division, Wilhelm Zerter ("Zerter"), contact Plaintiff *ex parte* on April 5, 2012. (Senisi Decl. ¶¶ 3-6, Ex. A.) Zerter offered to provide usage information to Plaintiff but only on the condition that she abandon her legal counsel and discuss settlement terms with Wiley directly. (*Id.* ¶ 8, Ex. B.)

---

[1] As in many other cases, Wiley has attempted to retroactively cure (*i.e.*, settle) these claims through license "extensions" with TIW. Wiley's conduct in this regard is shocking given that Wiley has taken the position in numerous federal lawsuits brought by such stock photo agencies that such photo agencies do not have the right to pursue claims for copyright infringement. In fact, Wiley has prevailed on this position in cases in this Court and other jurisdictions. *See John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262 (S.D.N.Y. 2014) (holding stock photo licensing agency lacked standing to pursue copyright claims on behalf of individual copyright owners in photos licensed by Wiley); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117, 1125 (N.D. Cal. 2014) (same).

During his deposition, Zerter claimed that before he contacted Plaintiff he reviewed information regarding the use of her photos.  *See* Zerter Dep. Trans. (McCulloch Decl. Ex. 2) at 110-113.  Because Plaintiff would not agree to abandon her legal counsel, however, Zerter did not provide such information to Plaintiff.

Upon hearing of these improper *ex parte* communications, Plaintiff's counsel contacted Wiley's in-house counsel on April 12, 2012 to remind Wiley that Plaintiff was represented by legal counsel and to reiterate Plaintiff's demand for information regarding Wiley's use of her photos.  (McCulloch Decl Ex. 3.)  Wiley's counsel ignored these communications and did not respond to Plaintiff's repeated demands for usage information.  (*Id.* ¶ 6.)

Given this background, Plaintiff's initial complaint alleged that "Wiley remains in sole possession of the information necessary to determine whether it has made unauthorized uses of Plaintiffs' photographs and infringed their copyrights" and yet "has not provided the information requested" regarding the use of her photos.  (Dkt. No. 1, ¶¶ 34, 37.)  Plaintiff also alleged that she "need[ed] access to the information regarding Wiley's uses of [her] photos in order to determine whether Wiley has complied with the terms of its limited licenses or whether it has made unauthorized uses of [her] photographs."  (*Id.* ¶ 32.)  Plaintiff's First Amended Complaint included the same allegations.  (*See* Dkt. No. 11, ¶¶ 43-51.)

Plaintiff thus asserted a claim, based on her inherent rights as the copyright owner and under the contractual audit provisions in the licenses issued to Wiley, seeking a declaration that she was entitled to an audit of Wiley's uses of her photos.  (*Id.* at Count I.)  The Court ultimately granted Wiley's motion to dismiss this claim.  (Dkt. No. 43 at17.)

Because Wiley refused to cooperate with Plaintiff's pre-suit investigation and this Court determined that she could not compel an audit from Wiley, Plaintiff was forced to bring

6

copyright infringement claims against Wiley, based upon information and belief, related to all licenses granted to Wiley that she could identify. (*See* Dkt. No. 45 at ¶ 68 & Ex. 1.) Plaintiff subsequently amended her complaint, with leave of the Court, to add newly identified uses of her photos.[2] (Dkt. No. 125.)

## SUMMARY OF ARGUMENT

Despite the indisputable fact that Wiley maintains its publication information (*e.g.* the "print run" of its books) as confidential and that Wiley refused to provide any usage information to Plaintiff prior to suit, Wiley still asserted as its Seventh Affirmative Defense that Plaintiff's claims are precluded by the three-year statute of limitations set forth in Section 507(b) of the Copyright Act. (Dkt. No. 142 at 13.) Discovery revealed absolutely no evidence that Plaintiff had discovered any infringements of her copyrights by Wiley more than three years prior to her bringing this suit on May 16, 2013. Wiley's statute of limitations defense is frivolous and lacks any basis in law or fact.

Despite the litany of similar infringement suits against it and the prior rulings of this Court and the Second Circuit that Wiley's identical violations of copyrights were willful infringements, Wiley asserted as its Fifth Affirmative Defense that any use of Plaintiff's photos in excess of a license "was made with an innocent intent and without any belief that any acts of Wiley constituted an infringement of copyright." (Dkt. No. 142 at 12.) The record conclusively discredits this claim, and given that Wiley is one of the world's most experienced and sophisticated publishers, this defense is not credible.

---

[2] The Court permitted Plaintiff to amend her pleadings to add newly identified uses of her works because Wiley refused to engage in discovery related to any use of Plaintiff's works that was not specifically identified in Plaintiff's pleadings, further undermining Wiley's statute of limitations defense.

**APPLICABLE STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility for informing the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party then "must 'set forth specific facts showing that there is a genuine issue for trial' and cannot merely rest on the "allegations of the pleadings." *Marvel Entm't, Inc. v. Kellytoy (USA), Inc.*, 769 F. Supp. 2d 520, 52324 (S.D.N.Y. 2011) (quoting *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)). The non-moving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002). Where the Court determines that "a rational trier of fact could not find for the non-moving party based on the record as a whole, [then] there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). If the responding party's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

**ARGUMENT**

**I.    WILEY HAS STIPULATED TO DISMISSAL OF ITS ALLEGATION THAT PLAINTIFF LACKS STANDING BECAUSE SHE ASSIGNED HER COPYRIGHTS TO HER LICENSING AGENTS.**

Wiley's Amended Answer alleged that Plaintiff "lacks standing" because she supposedly "assigned her rights in certain of the photographs at issue to third parties such as licensing agents." (Dkt. No. 142 at 13.) During discovery, Wiley did not proffer any evidence to support this defense and the agreements between Plaintiff and her agents discredited Wiley's allegation. Therefore, Wiley agreed and stipulated to dismiss this defense with prejudice. (Dkt. No. 167.)

8

In doing so, Wiley stipulated to dismissing with prejudice its allegation that Plaintiff assigned "her rights" to any photos to the stock photo companies that licensed her photos to Wiley (*i.e.*, TIW). Thus, any alleged defenses that Wiley intends to assert that rely on purported settlements with TIW, including alleged settlements in the form of purported license "extensions" or retroactive licensing, are invalid because, as Wiley has now conceded, those companies did not hold any copyrights in the photos in suit. *See Davis v. Blige*, 505 F.3d 90, 103-07 (2d Cir. 2007) (holding retroactive licenses granted by third parties are invalid and cannot extinguish copyright owner's accrued infringement claims).

## II.   WILEY'S STATUTE OF LIMITATIONS DEFENSE IS MERITLESS.

Wiley has asserted the statute of limitations as an affirmative defense and thus bears the burden of proof. *See United States v. Livecchi*, 711 F.3d 345, 352 (2d Cir. 2013). The Copyright Act sets forth a three-year limitations period for infringement claims. 17 U.S.C. § 507(b). As Wiley well knows, the Second Circuit has explicitly adopted the "discovery rule" in determining when this limitation period begins to run. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2nd Cir. 2014) ("We agree with our sister Circuits that the text and structure of the Copyright Act . . . evince Congress's intent to employ the discovery rule, not the injury rule.") Therefore, "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." *Id.* Accordingly, Wiley bears the burden to demonstrate that Plaintiff had "actual or constructive discovery" of the "relevant infringements" at issue more than three years prior to suit. Wiley cannot sustain this burden.

Information regarding Wiley's use of Plaintiff's photos (such as the print run of a book) is not public information and thus Plaintiff could not have had actual or constructive knowledge of violations prior to suit because she did not have access to the information necessary to discover an infringement. Wiley, like all textbook publishers, contends that such information is

9

"confidential" and "proprietary" and a "trade secret."  *See, e.g.*, Wiley's Motion to Seal Confidential Exhibit, *DRK Photo v. John Wiley & Sons, Inc.*, 3:11-cv-8133, Dkt. No. 12 at 2 (D. Ariz. Sept. 21, 2011) (McCulloch Decl. Ex. 4) (asserting print-run information is "confidential" and arguing that "similar print-run information routinely has been found subject to protective orders"); *accord Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*, 281 F.R.D. 234, 236 (E.D.Pa. 2012) ("Pearson asserts that it maintains the confidentiality of its print quantities and dates of publications"); *Clifton v. Pearson Educ., Inc.*, 11-cv-3640, 2011 WL 1669362, at *1 (N.D. Cal. May 11, 2012) ("Pearson also contends that it has taken steps to keep this information confidential.").

This Court has accepted this view of publication information and allowed Wiley to maintain its publication information and documents as confidential.  In fact, this Court has even required such information to be redacted from public filings in class actions suits involving identical claims, and even denied a motion to allow print run totals to be shared with class members after the class was certified.  *See Wu v. Pearson Educ., Inc.*, 09-cv-6557, Dkt. No. 107 (S.D.N.Y. March, 17, 2011) (print-run totals and publication dates redacted from class certification brief).

Plaintiff thus could not have determined whether Wiley violated a particular license without Wiley's agreeing to disclose such "confidential" information, which it did not do.

There also is an additional information gap in this case that precluded Plaintiff from possibly discovering Wiley's infringements prior to suit because all of the remaining claims in suit relate to licenses granted by third parties.  This is significant because TIW did not report any of the substantive usage terms of the licenses granted to Wiley on the royalty statements issued to Plaintiff, such as licensed print run, allowable geographic sales regions, etc.  (*See, e.g.*,

10

McCulloch Decl. ¶ 8, Ex. 5.)  As such, Plaintiff was not even aware of the terms of Wiley's licenses prior to this suit and thus could not possibly have known whether Wiley was in violation of these unknown license terms.  Wiley's designee pursuant to Fed. R. Civ. P. 30(b)(6) conceded this point explicitly, explaining that even Wiley cannot determine whether it violated a license based on the information available to Plaintiff prior to suit:

> [I]n order to answer [whether Wiley was in compliance with a license] I'd have to know exactly what was on that invoice and exactly how many -- what the print run for geology today was and where it was distributed.  I'd have to know all of that.  So I'd have to know what we did with [book] and what grant we received from [the licensor] and then I could tell you. Just by looking at this chart, I couldn't possibly tell you.

Patelli Dep. Trans. (McCulloch Decl. Ex. 6) at 297:20—298:7.

In fact, Plaintiff's royalty statements from TIW did not even identify Wiley as the licensor.  (*See* McCulloch Decl. Ex. 5.)  Plaintiff thus could not possibly have known which of her photos had been licensed to Wiley without rigorously searching the internet for the publisher for every publication listed in every line of her royalty statement.  Copyright owners are not required to undertake such efforts to monitor against infringements.  *See Gabelli v. S.E.C.*, ___ U.S. ___, 133 S. Ct. 1216, 1222 (2013) ("Most of us do not live in a state of constant investigation; absent any reason to think we have been injured, we do not typically spend our days looking for evidence that we were lied to or defrauded. And the law does not require that we do so.").

Given that Wiley's publication information is confidential and that Plaintiff was not aware of even the actual usage terms of any licenses granted to Wiley by TIW or *even that a license had been granted to Wiley*, Plaintiff could not possibly have discovered, either actually or constructively, the basis for her claims in suit without Wiley's cooperation.  There is no dispute that Wiley refused Plaintiff's repeated demands for information regarding its uses of her photos,

11

and thus this defense must fail.[3] Wiley's statute of limitations defense is unsupportable and has no basis in law or fact.

### III. WILEY'S "INNOCENT INTENT" DEFENSE IS FRIVOLOUS.

Despite already having been found liable for willful infringements related to identical license violations that occurred during the same time period, involved the same licensing process, and even involved some of the same books that were in issue in the prior suits, Wiley still contends that it acted with "innocent intent" and "without any belief that any acts of Wiley constituted an infringement of copyright" (Dkt. No. 142 at 12.) Wiley has the burden of proving its "innocent intent" defense. *D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990) ("The burden is on the defendants to establish that any infringement was innocent."). To sustain an innocent intent defense, Wiley must show that it "was not aware **and had no reason to believe** that [its] acts constituted an infringement." 17 U.S.C. § 504(c)(2) (emphasis added). Therefore, in order to carry its burden, Wiley "must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). Again, Wiley cannot meet this burden as this defense has no possible support in the record or the law.

The notion that Wiley genuinely believed that it could exceed license restrictions is contradicted by Wiley's own photo licensing policies which explicitly prohibit such practices.

---

[3] Wiley's refusal to cooperate with Plaintiff's pre-suit investigation also will be presented at trial as additional evidence that its conduct was willful. *See N.A.S. Import Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (holding willfulness "may be inferred from the defendant's conduct," including its refusing to cooperate with a copyright owner's investigation into a potential infringement); *Fitzgerald Publ'g Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) (same); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990) (holding that defendant's refusal to provide plaintiff "statements of account identifying the royalties due" prior to litigation supported finding of willfulness); *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988) ("defendants must not be able to sneer in the face of copyright owners and copyright laws"); *Video Views v. Studio 21*, 925 F.2d 1010, 1021 (7th Cir. 1991) ("one who undertakes a course of infringing conduct may [not] hide its head in the sand like an ostrich").

(*See* McCulloch Decl. Ex. 7.)  The "Permissions and Credits" section of Wiley's Photo & Illustration Guidelines specifically require that "[a]ll permissions must be cleared in advance of publication." (*Id.* at 20.)  Wiley's Guidelines also state that "[t]he Wiley Photo Department takes permission clearance very seriously," and acknowledge that Wiley's "[f]ailure to clear proper permission or to accommodate sources can leave us with severe penalties and even the necessity to actually remove imagery from publication." (*Id.*)  Wiley's Guidelines also reflect Wiley's understanding that stock photography vendors, such as TIW, require accurate information regarding the intended uses of photos, including print run, geographic sales region, language, and electronic uses.  (*Id.* at 21.)  The Guidelines emphasize that "[i]t is very important . . . that we report to these agencies accurate information about all of our projects."  (*Id.* at 22.)  Wiley's policies even repeat:

> We can't stress enough how much we need accurate information from you.  We need to know:
> - Accurate print runs
> - Complete list of supplements (by title, project, edition, ISBN, print run) that will reuse any in-text or cover photos.
> - Information about reuses or update editions
> - Information about electronic rights.
> - Publication date

*Id.* at 24.  These Guidelines plainly demonstrate Wiley's institutional understanding of its obligation to respect copyrights and abide by license terms, including the obligation to "clear proper permission," report "accurate print runs," and to purchase licenses "in advance of publication."

Mary Ann Prince, testifying as Wiley's designee under Fed. R. Civ. P. 30(b)(6), also acknowledged that Wiley understood that it could not exceed license terms:

> Q. Why did Wiley need to get license extensions if it was going to print a book beyond the quantity that was the limit in the original license?
> A.  Because we paid a certain amount to use the images, and if we needed to

13

>   purchase extra rights to use them more.
>
> Q. Why did you need to purchase extra rights even if the license was limited?
>
> A. The license may have had a print run limitation or a geographic limitation, and we had an understanding with photographers that, you know, the price we paid originally was based on certain parameters, and if we, if we found out that we wanted to print more, then we would send out an extension letter.
>
> . . .
>
> Q. [Did] Wiley underst[and] that it was required to get permission to print a photo in a book prior to doing so[?]
>
> A. Oh, yes, that was the understanding. Yes.
>
> Q. And that's always been the understanding?
>
> A. Yes.
>
> Q. And that's always been the policy at Wiley?
>
> A. Yes.
>
> Q. Wiley doesn't believe it can use third-party photos prior to getting permission, does it?
>
> A. No.

Price Dep. Trans. (McCulloch Decl. Ex. 8) at 75:10—76:7; 80:12-24.

Wiley's "innocent intent" defense also must be rejected because this Court already has concluded that identical license violations by Wiley, committed by the same publishing division (Global Education), during the same time period, and even involving some of the same titles at issue here (specifically books in Wiley's "Visualizing" imprint series) were willful, which necessarily precludes that the same infringements in this case were somehow innocent. *See Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (JPO), 2012 WL 5506121, at *2 (S.D.N.Y. Nov. 7, 2012). The Second Circuit affirmed this ruling, explicitly noting that the evidence supported a finding that Wiley's infringements were willful, including the mountain of evidence showing that, in the words of the Court of Appeals, Wiley is a "repeat infringer." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014).

The evidence before this Court and the Second Circuit in the *Psihoyos* suit established

that Wiley repeatedly used Plaintiff's photographs without any permission or in excess of whatever usage rights were allowed under its licenses. At the *Psihoyos* trial, Wiley's employees admitted that Wiley made no effort to quarantine the infringing publications, even after becoming aware that hundreds of photos had been used without a license or the books had been printed in quantities that exceeded Wiley's licenses:

> Q: So, a decision was made in your group to continue to sell through the existing inventory of these publications, right?
> A. Inventory, meaning printed books and --
> Q. Books that had already been printed.
> A. Yes.

*Psihoyos* Trial Tr. (McCulloch Decl. Ex. 9) at 703:3-12. Wiley's witnesses also admitted that Wiley failed to issue a directive to stop the inventory department from binding new inventory of books that Wiley knew included unauthorized copies of photos, including Plaintiff's photos in the books at issue on this Motion. *Id.* at 717:14-24. Wiley's witnesses also admitted that Wiley obtained inadequate licenses for *all* of the photos in each infringing book because Wiley made the intentional decision to adopt a policy to limit the permission it requested from licensors at 100,000 units, regardless of whether the previous editions of the same title had sold more units or whether Wiley projected higher sales for the publication. *Id.* at 331:2-7. And perhaps most shockingly, Wiley's witnesses admitted that its inventory department *never had a license compliance program*, and that its inventory department manager operated independent of any license restrictions for over 20 years. *Id.* at 828:2-20.

From this evidence, the jury and then this Court both concluded that Wiley's troubling pattern of copyright violations arose from its reckless failure to adopt license compliance protocols, despite its own written policies, and other flawed licensing practices that led to widespread abuses. *Psihoyos*, 2012 WL 5506121 at *2. This Court held that the jury's finding

15

of willfulness was supported by the record, citing evidence that Wiley "made no effort to curb its infringement after becoming aware that Plaintiff's photographs had been used without license or that books had been printed exceeding Defendant's license" and noting that Wiley's "inventory department lacked a license compliance program during the relevant time period." *Id.* This Court also noted that a finding of willfulness was appropriate because Wiley "has violated license agreements with photographers on numerous other occasions" and thus the evidence "supports Plaintiff's theory that ***Defendant systematically and knowingly, or at least recklessly, exceeded its licenses***." *Id.* (emphasis added). The Court thus expressly rejected Wiley's claim that it infringements were "innocent mistakes." *Id.*

Contrary to Wiley is sure to argue, the holding in *Psihoyos* is not an isolated ruling. Rather, Wiley has been found to be a willful infringer in numerous other cases and arbitrations. *See, e.g.*, *Panoramic Stock Images v. John Wiley & Sons, Inc.*, No. 12-cv-10003 (N.D. Ill.), Dkt. No. 180 (November 24, 2014) (jury verdict finding Wiley is willful infringer) (McCulloch Decl. Ex. 10); *Bean v. John Wiley & Sons, Inc.*, No. 12-cv-8001, 2012 WL 1078662, at *3 (D. Ariz. March 30, 2012) (granting summary judgment against Wiley for 108 counts of copyright infringement).

The holding of this Court in *Psihoyos* is conclusive that Wiley's infringements were not due to innocent mistakes but rather resulted from Wiley's deeply flawed business practices that, predictably, led to widespread copyright abuses. Although Wiley surely will try to distinguish the rulings in *Psihoyos* and these other suits, the fact is that all of Plaintiff's claims here relate to books licensed by the same publishing division during the same period of time. There thus can be no *genuine* dispute that the infringements of Plaintiff's copyrights here resulted from the same flawed licensing practices.

Wiley can offer no evidence to show that it truly believed a license violations was not an infringements, and it certainly cannot meet its burden to show that such a belief was reasonable or justified. As other courts considering precisely this argument from other textbooks publishers have concluded, the notion that a license limitation is merely a suggestion that does not restrict the publisher's use of a photo is "self-serving" and "facially implausible." *Wood v. Houghton Mifflin Harcourt Publ'g Co.*, 589 F. Supp. 2d 1230, 1242 (D. Colo. 2008).

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court enter partial summary judgment against Defendant on its Fifth and Seventh Affirmative Defenses.

Dated: April 30, 2015

Respectfully submitted,

NELSON & McCULLOCH LLP

*/s/ Kevin McCulloch*

_____
Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178

*Attorneys for Plaintiff*