UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ELLEN SENISI,                                     :
                                                  :
                          Plaintiff,              :
                                                  :
              v.                                  :     Case No. 13 Civ. 3314 (LTS) (AJP)
                                                  :
JOHN WILEY & SONS, INC.,                          :
                                                  :
                          Defendant.              :
                                                  :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


# MEMORANDUM OF LAW IN SUPPORT
# OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Edward H. Rosenthal
Toby M.J. Butterfield
Anna Kadyshevich
Nicole Bergstrom
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax:  (212) 593-9175

*Attorneys for Defendant John Wiley & Sons, Inc.*

## Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

    1.    The Initial Action ............................................................................................... 3

    2.    Plaintiff's Second Amended Complaint and Wiley's Second Motion to Dismiss ................................................................................................................ 4

    3.    Plaintiff's Third Amended Complaint ................................................................. 5

STANDARD OF REVIEW ...................................................................................................... 7

ARGUMENT ......................................................................................................................... 8

    I.    WILEY IS ENTITLED TO SUMMARY JUDGMENT FOR ANY PHOTOGRAPHS THAT DO NOT HAVE A VALID COPYRIGHT REGISTRATION ................................................................................................... 8

        A.    Plaintiff's Published Group Registration VA 1-429-916 Is Invalid ........... 9

        B.    Plaintiff's Unpublished Copyright Registration VAu 1-065-133 Is Invalid ..................................................................................................... 11

        C.    Plaintiff Failed to Put Forth Any Evidence of Copyright Registration for Twelve Photographs at Issue .......................................... 12

    II.    WILEY IS ENTITLED TO PARTIAL SUMMARY JUDGMENT WHERE PLAINTIFF HAS FAILED TO SHOW "UNAUTHORIZED COPYING" OF HER PHOTOGRAPHS ............................................................. 13

        A.    Plaintiff Cannot Show That Wiley Made Twenty-Six of the Uses at Issue ........................................................................................................ 14

        B.    Plaintiff Cannot Show That Wiley Violated Its Licenses for Eighty of the Uses at Issue ............................................................................... 18

            1.    Wiley Has Not Exceeded the Scope of the Initial Licenses for Forty-Six Uses at Issue ............................................................. 18

            2.    Wiley Has Not Exceeded the Scope of License Extensions for Thirty-Four Uses at Issue ...................................................... 18

    III.  THE THIRD AMENDED COMPLAINT INCLUDES 2 USES AT ISSUE THAT ARE DUPLICATIVE ............................................................................ 22

CONCLUSION .......................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Analect LLC v. Fifth Third Bancorp*,
  380 F. App'x 54 (2d Cir. 2010) ..........................................................................15

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997)...............................................................................................15

*Banff Ltd. v. Ltd., Inc.*,
  869 F. Supp. 1103 (S.D.N.Y. 1994)................................................................16, 17

*Broadvision Inc. v. Gen. Elec. Co.*,
  No. 08 Civ. 1478, 2009 WL 1392059 (S.D.N.Y. May 5, 2009)...........................16

*BroadVision, Inc. v. Med. Protective Co.*,
  No. 08 Civ. 1478, 2010 WL 5158129 (S.D .N.Y. Nov. 23, 2010) .......................16

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
  No. 13 Civ. 7574 (KPF), 2015 WL 321863 (S.D.N.Y. Jan. 26, 2015)...................8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..........................................................................................7, 8

*Davis v. Blige*,
  505 F.3d 90 (2d Cir. 2007)..............................................................................19, 20

*Demetriades v. Kaufmann*,
  690 F. Supp. 289 (S.D.N.Y. 1988) ......................................................................17

*Determined Prods., Inc. v. Koster*,
  1993 WL 120463 (N.D. Cal. Apr. 13, 1993) .......................................................12

*Dinaco, Inc. v. Time Warner, Inc.*,
  346 F.3d 64 (2d Cir. 2003)...................................................................................21

*Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*,
  896 F. Supp. 2d 223 ...............................................................................10, 11, 12

*Faulkner v. Nat'l Geographic Enters., Inc.*,
  409 F.3d 26 (2d Cir. 2005)...................................................................................16

*Graham v. James*,
  144 F.3d 229 (2d Cir. 1998).................................................................................14

*Green v. Lindsey*,
  885 F. Supp. 469 (S.D.N.Y. 1992), *aff'd*, 9 F.3d 1537 (2d Cir. 1993) ............................13, 15

*Harris v. Simon & Schuster, Inc.*,
  646 F. Supp. 2d 622 (S.D.N.Y. 2009) ....................................................................................14

*Hecke v. Clear Channel Comm'ns, Inc.*,
  No. 04-cv-1583, 2005 WL 975837 (S.D.N.Y. Apr. 27, 2005) ...............................................13

*Jorgensen v. Epic/Sony Records*,
  351 F.3d 46 (2d Cir. 2003)......................................................................................................13

*L.A. PrintexIndus., Inc. v. Le Chateau, Inc.*,
  No. 11 Civ. 4248 (LTS), 2012 WL 987590 (S.D.N.Y. Mar. 23, 2012)....................................8

*Lone Wolf McQuade Associates v. CBS Inc.*,
  961 F. Supp. 587 (S.D.N.Y. 1997) .........................................................................................19

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..................................................................................................................15

*Marketing Tech. Solutions, Inc. v. Medizine LLC*,
  No. 09 Civ. 8122, 2010 WL 2034404 (S.D.N.Y. May 18, 2010)...........................................12

*Matthew Bender & Co. v. W. Pub. Co.*,
  158 F.3d 693 (2d Cir. 1998)........................................................................................16, 17, 18

*McLaren v. Chico's FAS, Inc.*,
  No. 10 Civ. 2481, 2010 WL 4615772 (S.D.N.Y. Nov. 9, 2010) ...........................................10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)..................................................................................................................16

*Peltz v. SHB Commodities, Inc.*,
  115 F.3d 1082 (2d Cir. 1997)...................................................................................................21

*Psihoyos v. John Wiley & Sons, Inc.*,
  No. 11 Civ. 1416 (JSR), 2011 WL 4916299 (S.D.N.Y. Oct. 14, 2011), *aff'd*,
  748 F.3d 120 (2d Cir. 2014)......................................................................................................8

*Reinhardt v. Wal-Mart Stores, Inc.*,
  547 F. Supp. 2d 346 (S.D.N.Y. 2008)......................................................................................14

*Samuels v. Mockry*,
  77 F.3d 34 (2d Cir. 1996)...........................................................................................................8

*Sheldon Abend Revocable Trust v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010).......................................................................................8

iv

*Silberstein v. Fox Entm't Grp., Inc.*,
  424 F. Supp. 2d 616 (S.D.N.Y. 2004), *aff'd sub nom. Silberstein v. John Does 1-10*, 242 F. App'x 720 (2d Cir. 2007) ....................................................................19

*Spinelli v. Nat'l Football League*,
  No. 13 Civ. 7398 (RWS), 2015 WL 1433370 (S.D.N.Y. Mar. 27, 2015)
  (Sweet, J) ....................................................................................................19, 20, 21

*Tasini v. N.Y. Times Co.*,
  206 F.3d 161 (2d Cir. 2000) ........................................................................14

*Wu v. Pearson Educ. Inc.*,
  No. 10 Civ. 6537, 2013 WL 145666 (S.D.N.Y. Jan. 11, 2013), *appeal dismissed* (Mar. 18, 2013) .........................................................19, 20, 21, 22

**Statutes**

17 U.S.C. § 101 .............................................................................................10

17 U.S.C. § 408 (C)1 ......................................................................................9

17 U.S.C. § 411(a) ........................................................................................13

17 U.S.C. § 411(b)(1) ....................................................................................10

**Other Authorities**

37 C.F.R. § 202.3 (10) ...............................................................................9, 11

Fed. R. Civ. P. 56(c) .......................................................................................7

*Registration of Claims to Copyright, Group Registration of Photographs*, 66 Fed.
  Reg. 37,142 (July 17, 2001) (to be codified at 37 C.F.R. pt. 202)............................9

Defendant John Wiley & Sons, Inc. ("Wiley") submits this Memorandum of Law, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, in support of its Motion for Partial Summary Judgment to dismiss certain claims asserted in the Complaint of Plaintiff Ellen Senisi ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff claims that Wiley infringed her copyrights in 83 stock photos (the "Photographs") by allegedly making approximately 265 separate uses of those Photographs (the "Alleged Infringing Uses"). Late on April 29, 2015—the day before this motion was filed—Plaintiff agreed to withdraw her claims with respect to 112 of Alleged Infringing Uses. *See* Declaration of Toby M.J. Butterfield, dated April 30, 2015 ("Butterfield Decl.") ¶ 78; Dkt No. 167. Accordingly, only 153 Alleged Infringing Uses remain in dispute (the "Uses at Issue"). Uncontroverted evidence shows that 143 of the Uses at Issue are non-infringing for the following (often overlapping) reasons:[1]

- Plaintiff has failed to produce a valid copyright registration for 40 Photographs, covering 141 of the Uses at Issue;

- For 26 of the Uses at Issue, Wiley did not actually use the Photographs as pled;

- Wiley has not exceeded the relevant license or license extension for 80 of the Uses at Issue; and

- 2 of the Uses at Issue are duplicative of claims previously dismissed by this Court in favor of arbitration.

Only 10 Uses at Issue—covering 6 Photographs—remain for which there are genuine issues of material fact.

---

[1] Because of the convoluted and confusing way that Plaintiff presented her copyright claim, and because there are overlapping bases for summary judgment for many of the uses at issue, Wiley has prepared a chart identifying the basis for dismissal or withdrawal for all 255 of the 265 Alleged Infringing Uses. *See* Butterfield Decl., Ex. 2.

## STATEMENT OF FACTS

Plaintiff is a professional photographer who has made her living, in part, by taking and licensing stock photographs.  *See* Defendant's Statement of Undisputed Material Facts ("DSUMF") ¶ 1.  Wiley is a publisher of textbooks, professional books, and scholarly journals.  *Id.*  ¶ 2.

Since at least the mid-1990s, Plaintiff has licensed her photography to third parties, including Wiley, directly and through photo agencies, among them ImageWorks, Inc. ("ImageWorks").  *Id.*  ¶¶ 7-8.  Plaintiff granted ImageWorks complete discretion over the terms of the licenses it entered into on her behalf:  under her written agreement with ImageWorks, the agency was "authorized to sell publication, broadcast, and reproduction rights to [Senisi's] photographs in whole and edited form at such price as determined solely by [ImageWorks]."  *Id.* ¶¶ 10, 13.  In turn, ImageWorks paid to Plaintiff fifty percent (50%) of the royalties it received from licensees of Plaintiff's photographs.  *Id.* ¶¶ 11-12.

Since at least 2002, Wiley has been paying ImageWorks for the licenses and license extensions it obtained for the use of Plaintiff's Photographs in Wiley publications (*see, e.g.*, *id.* ¶¶ 22, 35, 79, 87, 93, 195, 211, 294, 416), and Plaintiff has received and accepted her share of these payments from ImageWorks.  *See, e.g., id.* ¶¶ 23, 36, 80, 88, 196, 212, 295, 417.   Prior to engaging counsel, however, Plaintiff: (1) never requested specific information regarding ImageWorks' licenses of her works (*id.* ¶ 14); (2) never sought to review or audit ImageWorks' records (*id.* ¶¶ 15-16); (3) never requested usage information from Wiley directly (*id.* ¶ 19); and (4) never told ImageWorks to limit any number of copies any licensee was permitted to print or sell (*id.* ¶ 17).

Plaintiff commenced this action on July 5, 2012, but the claim currently at issue is set forth in Plaintiff's Third Amended Complaint (hereinafter, the "TAC").[2]  There she alleges that Wiley reproduced and distributed the 83 Photographs "without permission and/or in excess of any licenses that it may have obtained" in approximately 265 purportedly different instances—the Alleged Infringing Uses.  TAC ¶ 9 & Ex. 1.

*Procedural history*

## 1.      The Initial Action

Initially, this lawsuit was brought by seven different photographers with little in common other than their counsel and their generalized allegations of wrongdoing by Wiley.  *See* Complaint, Dkt No. 1.  The only cause of action was for declaratory relief:  plaintiffs sought an audit from Wiley based on plaintiffs' purported "inherent right to know the uses that any third-party licensor is making of their works," claiming that Wiley's failure to disclose usage information was "a distinct violation of Plaintiffs' copyrights."  *Id.* at ¶ 52.  Alternatively, plaintiffs alleged that they were entitled to an audit of Wiley's uses of their photographs because they were "the intended and direct beneficiaries of any licenses granted to Wiley relating to their photos."  *Id.* at ¶ 62.  After Wiley expressed its intention to move to dismiss the complaint, plaintiffs amended their pleading and certain plaintiffs added unparticularized claims for copyright infringement in addition to the claim for declaratory relief that remained in the amended complaint.  *See* First Amended Complaint, dated July 15, 2013, Dkt No. 11.

Wiley then moved to dismiss all copyright claims in the First Amended Complaint for failure to state a claim under FRCP 12(b)(6) and moved to dismiss the declaratory claim under FRCP

---

[2] Plaintiff's TAC, filed on January 20, 2015 as Dkt No. 125, was incorrectly titled the "Second Amended Complaint and Demand for Jury Trial."  As this was Plaintiff's third time amending, it is referred to herein as the "Third Amended Complaint" or "TAC".

12(b)(1) and 12(b)(6).  *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss

Plaintiffs' First Amended Complaint, dated August 5, 2013, Dkt No. 16.  Among other things, Wiley

objected to Plaintiffs' failure to specify precisely which images were at issue by alleging, for

example, that "a reasonable opportunity for further investigation and discovery will reveal that

Defendants [sic] also infringed other copyright works created and owned by Plaintiffs."  *Id.*  Wiley

also requested that the Court sever any surviving claims of each individual plaintiff as lacking any

common questions of facts or law.  *Id.*

On March 28, 2014, the Court granted Wiley's motion in part.  *See* Order, Dkt No. 43.  First,

the Court dismissed all of plaintiffs' copyright claims other than those specifically identified in the

exhibits to the First Amended Complaint.  *Id.* at p. 10.  Next, the Court dismissed plaintiffs'

declaratory claims for failure to state a claim (*id.* at pp. 12-16), and directed one of the plaintiffs to

amend the complaint to assert his or her individual copyright infringement claims (*id.* at pp. 11-12).

The remaining plaintiffs were dismissed and left to assert their own, surviving claims in "separate,

new actions."  *Id.*

### 2.  Plaintiff's Second Amended Complaint and Wiley's Second Motion to Dismiss

Plaintiff then filed her Second Amended Complaint ("SAC") on May 12, 2014, asserting a

claim for copyright infringement with respect to the photographs that were previously identified in an

exhibit to the First Amended Complaint and adding additional allegedly infringing uses of additional

photographs.  *Compare* Dkt No. 11, Exhibit 7 *with*, Dkt No. 45, Exhibit 1.  According to the

allegations in Plaintiff's SAC, Plaintiff had licensed certain photographs to Wiley directly, while the

rest were licensed to Wiley through Plaintiff's licensing agent, ImageWorks.  *See* SAC, Ex. 1.

All of the licenses for the photographs Plaintiff provided to Wiley directly included a binding

arbitration provision.  DSUMF ¶ 573.  Accordingly, Wiley moved to dismiss those claims in the

SAC on that basis.  *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss in

Favor of Arbitration, dated August 4, 2014, Dkt No. 53.  Plaintiff opposed this motion despite the fact that she had prepared the invoices with the arbitration provision at issue, but the Court agreed with Wiley, and in an Opinion and Order dated January 21, 2015, dismissed all claims by Plaintiff arising out of the applicable seven invoices.  *See* Dkt No. 126 at p. 13.  The specific uses that the Court dismissed in favor of arbitration are identified in Exhibit 2 to the Butterfield Declaration.

### 3.  Plaintiff's Third Amended Complaint

While Wiley's motion to dismiss in favor of arbitration was pending, discovery on all alleged uses in the SAC proceeded before Magistrate Judge Peck, who had been referred the matter for general pre-trial management.  *See* Dkt No. 54.  When Plaintiff sought discovery concerning uses and photographs not pled in the SAC, Wiley resisted such discovery on the grounds that the Court had already dismissed any claim by Plaintiff for an "audit" of all of Wiley's uses of her photographs and because the Court had dismissed any claims other than those specifically identified in Plaintiff's complaint.  *See* Dkt No. 134, Transcript of Discovery Conference before Magistrate Judge Peck, dated January 15, 2015, at 22:12-23:2; 24:24-25:15. In response, Magistrate Judge Peck permitted Plaintiff to amend her complaint again to add additional uses of the photographs already at issue in the case, and allowed expedited discovery on the new allegations in the forthcoming amended complaint.  *Id.* at 25:22-23.  However, Magistrate Judge Peck noted that Plaintiff had not pled any claim for secondary liability for copyright infringements by others, and the Court "was not giving [Plaintiff] permission to amend for that."  *Id.* at 29:14-30:6.

On January 20, 2015, Plaintiff filed her Third Amended Complaint.  *See* Dkt No. 125. The TAC added 135 new rows to its Exhibit 1, resulting in a total of 265 purported Alleged Infringing Uses.  *See* Butterfield Decl. ¶ 4, Ex. 1.  Unlike the information supplied in Plaintiff's prior exhibit, however, most of the "new" uses added to Exhibit 1 of the TAC contained very

little identifying information.  *Id.*  Plaintiff failed to provide Image ID numbers (which she had included in the exhibits to her previous complaints), instead including vague image descriptions, many of which were similar to, but different from the image descriptions Plaintiff previously used to describe photographs in the exhibit to the Second Amended Complaint.  *Compare* Dkt No. 45 (Exhibit 1 to SAC), *to* Butterfield Decl. Ex. 1 (Exhibit 1 to TAC).  The result was a mix of information that, in many instances appeared to allege uses that were duplicative to uses previously pled by Plaintiff, and in other instances, indicated that Plaintiff now was asserting claims with respect to new photographs altogether.

On several occasions, Wiley raised issues with Plaintiff and the Court concerning the indecipherable information in the new complaint.  In response, Magistrate Judge Peck ordered Plaintiff to produce documents and information relevant to the new uses.  *See, e.g.*, Dkt No. 151, February 10 Order, 2015 Tr. at 7:2-11 ("Go back both for the [TAC] . . . and to the extent you've added anything, make sure you have fully complied with all prior discovery requests and obligations, period.").

When Plaintiff refused to provide the requested documents and additional information, or withdraw improper claims, Wiley wrote to the Court requesting that the Court preclude Plaintiff from introducing documents or evidence in support thereof.  Dkt No. 155 March 25, 2015 (Letter of Toby M.J. Butterfield).  Wiley noted that the Court had previously ordered Plaintiff to produce a declaration attesting to which copyright registrations, if any, covered each of the photographs pled in her complaint.  *Id*. at pp. 2-3.  Wiley also explained that Plaintiff had failed to provide such a declaration for approximately seven to fourteen potentially new photographs identified for the first time in the TAC.  *Id.* at p. 3.

Magistrate Judge Peck ordered that any issues with the TAC related to claims that are duplicative or unidentifiable, photographs for which Plaintiff failed to connect to specific copyright registrations, and claims in the TAC that had been dismissed in favor of arbitration be addressed on summary judgment. *See* Dkt. 165 (Transcript of Conference before Magistrate Judge Peck, dated April 9, 2015), at 10:16-11:22; 18:16-20:3.

On the eve of this motion, Plaintiff finally agreed to withdraw 112 Alleged Infringing Uses because those uses had (1) been previously dismissed from the SAC by the Court's Order in favor of arbitration, (2) were duplicative of Alleged Infringing Uses pled elsewhere in the TAC, or because (3), the Photographs did not appear in the publications pled. Butterfield Decl. ¶ 78, Ex. 2; Dkt No. 167. However, Plaintiff refused to dismiss the remaining Uses at Issue that are the subject of this motion. Butterfield Decl. ¶ 78.

Accordingly, Wiley now moves for partial summary judgment on Plaintiff's copyright infringement claim. For the reasons set forth below, Plaintiff's claim fails as a matter of law to the extent that: (1) Plaintiff has failed to introduce evidence of a valid copyright registration covering the Photographs in the Uses at Issue; (2) Wiley never made the Uses at Issue; (3) the Uses at Issue were fully authorized; or (4) the Uses at Issue duplicate other Alleged Infringing Uses that were dismissed in favor of arbitration.

## **STANDARD OF REVIEW**

Summary judgment must be granted if the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). For issues where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party

makes such a showing, the "non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996); *see also Celotex*, 477 U.S. at 322-23.

## ARGUMENT

## I.

## WILEY IS ENTITLED TO SUMMARY JUDGMENT FOR ANY PHOTOGRAPHS THAT DO NOT HAVE A VALID COPYRIGHT REGISTRATION

To prevail on her claim for copyright infringement, Plaintiff must prove two elements: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 203 (S.D.N.Y. 2010) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Section 411 of the Copyright Act makes copyright registration "a prerequisite to bringing an infringement action in federal court." *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, No. 13 Civ. 7574 (KPF), 2015 WL 321863, at *4 (S.D.N.Y. Jan. 26, 2015).

Plaintiff must not only demonstrate that each of the Photographs is *registered*, but that the registration is *valid*. *See Psihoyos v. John Wiley & Sons, Inc.*, No. 11 Civ. 1416 (JSR), 2011 WL 4916299, at *2 (S.D.N.Y. Oct. 14, 2011), *aff'd*, 748 F.3d 120 (2d Cir. 2014) ("Without showing evidence of a valid, registered copyright in the photographs used by Wiley, plaintiff's claim for copyright infringement fails."). "The absence of a valid copyright registration . . . bar[s] a plaintiff from bringing a viable copyright infringement action." *L.A. PrintexIndus., Inc. v. Le Chateau, Inc.*, No. 11 Civ. 4248 (LTS), 2012 WL 987590, at *3 & n.4 (S.D.N.Y. Mar. 23, 2012). Wiley is entitled to summary judgment for 122 of the Uses at Issue because two of Plaintiff's copyright registrations that cover 28 Photographs are invalid. Wiley is entitled to summary judgement on an additional 12

Photographs that cover 19 Uses at Issue because Plaintiff failed to submit any evidence of ownership of a valid copyright registration.

### A. Plaintiff's Published Group Registration VA 1-429-916 Is Invalid

Plaintiff's Registration VA 1-429-916 is an invalid group registration that, according to Plaintiff, covers 27 of the remaining Photographs and 121 Uses at Issue (DSUMF ¶ 561; Butterfield Decl. Ex. 2).[3]  The Copyright Office permits "group registration of published photographs" *only if* the component works meet certain factual requirements.  *See* 37 C.F.R. § 202.3 (10).  In allowing these types of group registrations, the Copyright Office recognized that, pursuant to statute, "its power to fashion group registrations *is limited to cases involving 'groups of related works*.'  17 U.S.C. § 408 (C)1." Registration of Claims to Copyright, Group Registration of Photographs, 66 Fed. Reg. 37,142 (July 17, 2001) (to be codified at 37 C.F.R. pt. 202) (emphasis added).  The Copyright Office therefore limited group registration "to photographs (1) taken by the same individual and (2) first published within the same year."  *Id.  Accord* 37 C.F.R. § 202.3 (10)(iii) ("photographs in the group *must have been published within the same calendar year*.") (emphasis added).  Plaintiff's registration VA 1-429-916 fails to meet this requirement and is therefore invalid.

The VA 1-429-916 registration is for a group of photographs titled "Ellen Senisi Image Archives from 1 – 154."  DSUMF ¶ 560.  It lists the year of completion as 2007, and identifies March 1, 2007 as the date of first publication of the works.  *Id.*  As Plaintiff conceded during her deposition, however, this information is materially incorrect.  Plaintiff stated that that she submitted approximately *8,000* images for the group registration, including all of her previous work from *1990 through 2007. Id.* ¶ 564.  Plaintiff also admitted that the publication date on the registration is

---

[3] The registration VA 1-429-916 covers a total of 49 Photographs at issue in the TAC, but 12 of those Photographs are no longer in issue because they cover Alleged Infringing Uses that have been dismissed or withdrawn.  Butterfield Decl. Ex. 2; DSUMF ¶ 561.

inaccurate because the thousands of works therein were created and published over the course of

many years. *Id.* ¶¶ 569-570.  For example, as alleged by Plaintiff in the TAC, Plaintiff had licensed

one Photograph at issue included in this registration, "3 cousins sitting on couch," Image ID No.

ESEN0403160, to Wiley on December 3, 2003, four years *before* the alleged "publication" date of

this group work. *See* DSUMF ¶¶ 558, 560-561.[4]

Plaintiff admitted that she kept detailed and careful records regarding the photographs that

she submitted for registration, admitted that she understood the Copyright Office's registration

process, and admitted that she understood the meaning of "publication."  DSUMF ¶¶ 565-568.  She

cannot then bypass the Copyright Office's regulations to register thousands of unrelated photographs

as a single "group" work by falsifying information on her registration. *See* 17 U.S.C. § 411(b)(1).

"An error [in a registration] is considered material by most courts if the Copyright Office is

likely to have rejected the application had the actual facts been known."  5 Patry on Copyright §

17:124 (collecting cases); *c.f. Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d

223, 234 (finding registration invalid where it contained a material error likely to cause the Copyright

Office to reject the application); *McLaren v. Chico's FAS, Inc*., No. 10 Civ. 2481, 2010 WL

4615772, at *3 (S.D.N.Y. Nov. 9, 2010) (finding registration invalid where it failed to comply with

Copyright Office regulations for registration of a collective work).  Had Plaintiff included the truthful

information concerning the eight thousand unrelated photographs—which she admitted she knew

were taken and published over the span of seventeen years—the Copyright Office would have denied

---

[4] "Publication" under the Copyright Act includes, *inter alia*, offering to license the Photographs to Wiley or other third-parties. *See* 17 U.S.C. § 101 (defining "Publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending" including "…offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.").

her application because the photographs do not meet the requirements necessary to register group works.  37 C.F.R. § 202.3 (10)(iii).  Registration VA 1-429-916 is therefore invalid, and Plaintiff cannot assert claims based on the 121 Uses at Issue related to the Photographs registered therein.  *See* Butterfield Decl. Ex 2.

**B. Plaintiff's Unpublished Copyright Registration VAu 1-065-133 Is Invalid**

The evidence also shows that that Plaintiff's copyright registration VAu 1-065-133 is invalid because Plaintiff's application for registration includes fundamental and material misstatements about its status as a group of unpublished works.[5]  Accordingly, Plaintiff is precluded from asserting infringement claims for any photographs covered by that registration.

The "VAu" prefix like the one for Plaintiff's registration VAu 1-065-133 is the registration form used for unpublished works.  *See, e.g.*, *Family Dollar Stores, Inc.*, 896 F. Supp. 2d at 225 ("Based on UFI's representations, the Copyright Office issued a registration certificate for an unpublished collection, with registration number 'VAu 978-345' (the "Registration").  *The 'u' represents that the works are unpublished*") (emphasis added).  Fundamentally, "a published [item] included in an unpublished collection copyright registration application *cannot be registered as part of the collection.*"  *Id.* at 230 (emphasis added).  Thus, "[w]rongly identifying a number of published individual works as an unpublished collection is a fundamental registration error" which invalidates the registration of those works and requires that claims for their infringement be dismissed.  *Determined Prods., Inc. v. Koster*, 1993 WL 120463, at *1 (N.D. Cal. Apr. 13, 1993).

---

[5] Although all but 1 of the Alleged Infringing Uses covered by this registration were dismissed in favor of arbitration or withdrawn (Butterfield Decl. Ex. 2), Plaintiff refused to dismiss two duplicative Uses at Issue that Wiley maintains were dismissed in favor of arbitration, and has not otherwise provided copyright registration information for 12 other Photographs still in suit. Butterfield Decl. ¶¶ 73-75.  Accordingly, to the extent that Plaintiff alleges that registration VAu 1-065-133 covers any of Photographs at issue in this lawsuit, she is precluded from asserting an infringement claim based on those works because the registration is invalid as explained herein.

Plaintiff asserts claims on 8 Photographs covered by the registration VAu 1-065-133. DSUMF ¶ 557. During her deposition, Plaintiff admitted that she is familiar with the meaning of "publication." *Id.* ¶ 568. Nevertheless, Plaintiff's registration includes at least some *published* works. This is evident because Plaintiff alleges that the Photograph "2 students sign with ASL," Image No. PN-30773, was licensed to Wiley on November 26, 2007, three-and-a-half years before the Plaintiff improperly submitted the photographs for registration as part of an "unpublished" group of works. *Id.* ¶¶ 556-559. Because registration of previously published works in a VAu registration is a material error that invalidates the registration (*see Family Dollar, Inc.*, 896 F. Supp. 2d at 233), any Uses at Issue for Photographs covered by this registration should be dismissed (Butterfield Decl. Ex. 2).

### C. Plaintiff Failed to Put Forth Any Evidence of Copyright Registration for Twelve Photographs at Issue

After Plaintiff amended her complaint for the third time and filed the TAC, the Court, on several occasions, instructed Plaintiff to produce documents relevant to any new Photographs she added to the TAC. *See, e.g.*, Dkt No. 149, January 26 Order Tr. at 13:14-14:8. Specifically, Plaintiff was instructed to comply with all prior discovery orders, one of which was the requirement that Plaintiff submit a declaration identifying which of her registrations covers which of the Photographs at issue. Butterfield Decl. ¶¶ 73-75. At a conference with the Court on February 10, 2015, Plaintiff's counsel affirmatively represented to the Court that there were no more documents or registrations to produce (Dkt No. 151, February 10 Order Tr. at 4:9-21), and, to date, has failed to produce anything linking 12 Photographs, which cover 19 of the Uses at Issue, to any copyright registration. Butterfield Decl. ¶ 75. Plaintiff's failure to do so requires dismissal of any Uses at Issue related to these 18 Photographs. *See Marketing Tech. Solutions, Inc. v. Medizine LLC*, No. 09 Civ. 8122, 2010 WL 2034404, at *5-6 (S.D.N.Y. May 18, 2010) (holding that the "language of 17 U.S.C. § 411(a) is

12

clear" requiring that a plaintiff must establish registration as an element of liability on an infringement claim).

## II.

## WILEY IS ENTITLED TO PARTIAL SUMMARY JUDGMENT WHERE PLAINTIFF HAS FAILED TO SHOW "UNAUTHORIZED COPYING" OF HER PHOTOGRAPHS

In many instances, Wiley never made the Uses at Issue.  As Plaintiff failed to raise any material issue of fact concerning such allegations, her claims concerning these uses must be dismissed.   Other Uses at Issue were within the scope of the license granted to Wiley by Plaintiff's authorized agent.  Wiley is entitled to summary judgment with respect to these 106 Uses at Issue.

To prove the "unauthorized copying" element of an infringement claim, "a plaintiff must show *both* that her work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'"  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (citing *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)).  Put another way, in order to prove copyright infringement, Plaintiff must *first* show that the alleged infringer actually used the work at issue.  *Hecke v. Clear Channel Comm'ns, Inc.*, No. 04-cv-1583, 2005 WL 975837, at *1-2 (S.D.N.Y. Apr. 27, 2005); *accord Green v. Lindsey*, 885 F. Supp. 469, 477 (S.D.N.Y. 1992) ("plaintiff must prove that defendant *actually used plaintiff's work* as a source of material or ideas for her own work"), *aff'd*, 9 F.3d 1537 (2d Cir. 1993) (emphasis added); 3 Patry on Copyright § 9:16  (because "[t]here is no presumption of copying," "[a] plaintiff must . . . prove that defendant copied from its work").  Accordingly, if a copyright plaintiff cannot provide evidence to raise an issue of fact as to actual use, summary judgment for the defendant is warranted.  *See, e.g.*, *Hecke*, 2005 WL 975837, at *1-2 (granting summary judgment where plaintiff presented no evidence of copying, finding that "no reasonable fact-finder could conclude that defendant . . . committed infringement") (citing *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir.1999)).

Moreover, where, as here, Wiley was granted a non-exclusive license to use Plaintiff's Photographs, "'the copyright owner bears the burden of proving that the defendant's copying was unauthorized.'"  *Tasini v. N.Y. Times Co.*, 206 F.3d 161, 171 (2d Cir. 2000).  A claim of copyright infringement cannot stand where any use was within the scope of a license.  *See, e.g.*, *Reinhardt v. Wal-Mart Stores, Inc.*, 547 F. Supp. 2d 346, 355 (S.D.N.Y. 2008) (dismissing infringement claim where disputed use was within scope of license); *see also Harris v. Simon & Schuster, Inc.*, 646 F. Supp. 2d 622, 630 (S.D.N.Y. 2009) ("A valid license, either exclusive or non-exclusive, 'immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor'"); *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) ("A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement.").

As set forth below, the uncontroverted evidence shows that even if Plaintiff had valid registrations for all of the Photographs (which she does not), Wiley never actually made 26 of the Uses at Issue, and 80 of the Uses at Issue were licensed.   Accordingly, Wiley is entitled to summary judgment on Plaintiff's claim for those 106 Uses at Issue.

### A. Plaintiff Cannot Show That Wiley Made Twenty-Six of the Uses at Issue

Twenty-six of the Uses at Issue appear, according to Plaintiff, in Canadian and Australian versions of certain publications (the "Foreign Publications").  *See* Butterfield Decl. Ex. 2, Rows 16-18, 83-84, 93-95, 103-117.  These Foreign Publications were all created and distributed by John Wiley & Sons Canada Ltd. ("Wiley Canada") and John Wiley & Sons Australia Ltd. ("Wiley Australia"), two entirely distinct corporate entities.  *See* DSUMF ¶¶ 41, 44, 49, 52, 54, 58, 60, 62, 64, 69, 73, 163, 168, 173.  Plaintiff has put forth no evidence of direct infringement by Wiley with respect to these Foreign Publications, nor has she put forth any evidence showing that Wiley is responsible for any unsubstantiated infringement by these distinct corporate entities.

14

To state a claim for copyright infringement against Wiley with respect to the Foreign Publications, Plaintiff must show that Wiley actually used the works at issue.  *See, e.g.*, *Green v. Lindsey*, 885 F. Supp. 469, 477 (S.D.N.Y. 1992) ("plaintiff must prove that defendant *actually used plaintiff's work* as a source of material or ideas for her own work"), *aff'd*, 9 F.3d 1537 (2d Cir. 1993) (emphasis added).  Wiley did not publish any of the Foreign Publications identified in the TAC (*see, e.g.*, DSUMF  ¶¶ 41, 49, 60, 64, 69, 73, 256, 270, 279, 379, 388, 542) and Plaintiff has put forth no evidence to the contrary.  Accordingly, the infringement claim based on the Foreign Publications must be dismissed.

Further, it is well settled that "[s]tanding to sue *or defend* is an aspect of the case-or-controversy requirement."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (emphasis added).  The injury complained of must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (alterations omitted).  Accordingly, as a threshold jurisdictional matter, Plaintiff has the burden of demonstrating that the named defendant, Wiley – a U.S. corporation – is responsible for alleged infringement by a separate corporate entity.  *See id.*; *see also Analect LLC v. Fifth Third Bancorp*, 380 F. App'x 54, 56 (2d Cir. 2010) ("Under New York law, a parent corporation and its subsidiary are regarded as legally distinct entities and a contract under the corporate name of one is not treated as that of both.") (internal citations omitted).

Moreover, as Magistrate Judge Peck acknowledged, Plaintiff had not pled a claim against Wiley for secondary copyright liability, and stated that the Court "was not giving [Plaintiff] permission to amend for that."  Dkt No. 134 at 29:14-30:6.  Therefore Plaintiff has not pled, and cannot make a claim against Wiley for any purported infringement by non-parties.  Even if Plaintiff

had pled vicarious or contributory liability, however, Wiley would still be entitled to summary judgment on any such claim.

In order to prevail on any such claim, Plaintiff must first establish liability by the direct infringers.  *See Faulkner v. Nat'l Geographic Enters., Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) (holding that "there can be no contributory infringement absent actual infringement"); *BroadVision, Inc. v. Med. Protective Co.*, No. 08 Civ. 1478, 2010 WL 5158129, at *4 (S.D .N.Y. Nov. 23, 2010) ("A party claiming vicarious liability must establish that direct infringement occurred....").

Then, Plaintiff must prove that Wiley knew of, and caused, induced, or materially contributed to, the infringement.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement . . . and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.").  She must show "indicia beyond the mere legal relationship showing that the parent is actually involved with the decisions, processes, or personnel directly responsible for the infringing activity."  *Banff Ltd. v. Ltd., Inc.*, 869 F. Supp. 1103, 1109 (S.D.N.Y. 1994); *Broadvision Inc. v. Gen. Elec. Co.*, No. 08 Civ. 1478, 2009 WL 1392059, at *4 (S.D.N.Y. May 5, 2009) ("To state a claim for vicarious liability against a parent for the actions of its subsidiary, a plaintiff must show more than just a legal relationship between the parent and the subsidiary or that the parent benefits from its ownership of the subsidiary."); *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 693, 706 (2d Cir. 1998) ("Assuming there is a class of primary infringers, then a party 'who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.'") (internal quotations omitted).  Plaintiff has not set forth any evidence to support such a claim.

First, there is no evidence in the record showing that any of the Uses at Issue in the Foreign Publications were actually infringing. Plaintiff did not subpoena or otherwise produce any evidence showing that all of the alleged Uses at Issue in these Foreign Publications occurred, or that these Uses at Issue were in excess of the licenses that those foreign entities may have obtained (*see, e.g.,* DSUMF ¶ 42, 50, 61, 159, 257, 389). Without establishing infringement, Plaintiff cannot, as a matter of law, prevail on any theory of secondary liability. *See Demetriades v. Kaufmann*, 690 F. Supp. 289, 294 (S.D.N.Y. 1988) (to establish contributory infringement, plaintiff must establish a primary infringement that defendant substantially participated in).

Second, Plaintiff has not put forth any evidence that Wiley was "actually involved with the decisions, processes, or personnel directly responsible for the infringing activity" sufficient to establish vicarious liability. *Banff Ltd.*, 869 F. Supp. at 1109. Nor has she put forth any evidence showing that Wiley "induce[d], cause[d], or materially contribute[d] to" the alleging infringing conduct for purposes of contributory liability. *Matthew Bender & Co.*, 158 F.3d at 706.

The uncontroverted evidence establishes that: (1) the agreements between Wiley and Wiley Canada or Wiley Australia regarding the Foreign Publications specifically required the foreign entity to obtain rights for any images included in the publications (*see, e.g.*, DSUMF ¶¶ 42, 50, 74, 164, 282); (2) Wiley Canada and Wiley Australia dealt directly with Plaintiff's agent ImageWorks to license Plaintiff's Photographs (*id.*); and (3) Plaintiff's royalty statements reflect payments she received on account of licenses obtained by those foreign entities (*id., e.g.*, ¶¶ 43, 51, 57, 66, 185, 285, 391 545). There is no evidence of any secondary liability, and therefore, Wiley cannot be held responsible for unproven allegations of infringement by third parties.

**B. Plaintiff Cannot Show That Wiley Violated Its Licenses for Eighty of the Uses at Issue**

Plaintiff's stock photo agent ImageWorks issued licenses to Wiley for all of the remaining Uses at Issue that are subject of this motion. Some of ImageWorks licenses contained limitations on print run, geographic scope of publications, or other terms (*see, e.g.*, DSUMF ¶¶ 22, 29, 86, 92, 98, 111, 188, 299, 309, 345, 376, 443, 513); others did not, instead permitting Wiley to reproduce a photograph in a publication as many times as it saw fit during the "life of the edition" and restricting only the language of publication (*see, e.g.*, *id.* ¶¶ 87, 99, 123, 153, 201, 222, 300, 404, 474). When the ImageWorks licenses are considered together with Wiley's evidence regarding its actual uses of the Photographs, it cannot be disputed that 80 of the Uses at Issue were fully authorized.

**1. Wiley Has Not Exceeded the Scope of the Initial Licenses for Forty-Six Uses at Issue**

For 46 of the Uses at Issue, Wiley obtained a single license from ImageWorks to use Plaintiff's Photographs. DSUMF ¶¶ 22, 29, 35, 79, 129, 142, 147, 153, 187, 227, 236, 340, 345, 351, 285, 325, 338, 343, 349, 374, 419, 428, 433, 437, 447, 458, 463, 468, 473, 481, 489, 497, 529, 535, 548. In each instance for those 46 Uses at Issue, uncontroverted evidence establishes that Wiley's use was within the scope of its license. *Id.* 24, 31, 37, 81, 131, 144, 149, 155, 189, 229, 287, 327, 340, 345, 351, 376, 421, 430, 435, 449, 460, 465, 470, 476, 483, 491, 499, 531, 537, 550. Accordingly, Wiley is entitled to summary judgment on Plaintiff's claim with respect to these 46 Uses at Issue. *See* Butterfield Decl. Ex. 2.

**2. Wiley Has Not Exceeded the Scope of License Extensions for Thirty-Four Uses at Issue**

For 34 of the Uses at Issue, Wiley paid ImageWorks for an initial license to use the Photograph, then paid for a license extension. DSUMF ¶¶ 87, 93, 99, 105, 112, 118, 124, 194, 200, 205, 210, 217, 222, 292, 298, 300, 303, 308, 315, 320, 395, 402, 409, 414, 443, 453. Here, too,

Plaintiff can point to no evidence that Wiley exceeded the scope of its licenses for these 34 Uses at Issue.  *See* Butterfield Decl. Ex. 2.

In an attempt to generate issues where none exist, Plaintiff suggests that these extensions fail to provide a defense insofar as Wiley exceeded its initial print run limitations prior to obtaining them (*see* TAC ¶¶ 102-104).  In other words, Plaintiff claims that the license extensions are invalid to the extent they are retroactive.  The law is clear, however, that "there is no legal prohibition to obtaining a retroactive license if it is authorized by the rights holder."  *Wu v. Pearson Educ. Inc.*, No. 10 Civ. 6537, 2013 WL 145666, at *4 (S.D.N.Y. Jan. 11, 2013), *appeal dismissed* (Mar. 18, 2013); *see also Silberstein v. Fox Entm't Grp., Inc.*, 424 F. Supp. 2d 616, 629 (S.D.N.Y. 2004) (retroactive license between part owner of copyrighted drawing and licensee "immunize[d] [licensee] against claims of infringement of the [drawing's] copyright"), *aff'd sub nom. Silberstein v. John Does 1-10*, 242 F. App'x 720 (2d Cir. 2007); *Lone Wolf McQuade Associates v. CBS Inc.*, 961 F. Supp. 587, 597 (S.D.N.Y. 1997) (rejecting challenge to validity of retroactive license and concluding that "a retroactive license can cure past infringements").

Just last month, a court in the Southern District reaffirmed that "[a]s a matter of copyright law, copyright owners and exclusive licensees are free to grant such licenses 'after the fact' as they see fit."  *Spinelli v. Nat'l Football League*, No. 13 Civ. 7398 (RWS), 2015 WL 1433370, at *31 (S.D.N.Y. Mar. 27, 2015) (Sweet, J) (citing *Wu*, at *4). [6]  In *Spinelli*, plaintiffs sued multiple parties, including their agent, the Associated Press (the "AP") and the licensor, the National Football League (the "NFL"), for infringement of their stock photography.  Plaintiffs asserted that certain licenses granted by the AP were invalid because they were "retroactive."  *Id.* at *31.  The court disagreed,

---

[6] As described below, the court in *Spinelli* made clear that its analysis applies equally to situations where the applicable license is entered into by a non-exclusive licensee, as is the case here.

holding that such licenses allowable as a matter of law (*id.*), and that they were allowable under plaintiffs' contracts where "each Plaintiff is an experienced sports photographer who individually negotiated his contract with AP and knowingly granted AP broad license and sublicense rights" (*id.* at \*32).

In so holding, the *Spinelli* court distinguished *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007). There, the Second Circuit held that a joint owner of a copyright cannot retroactively transfer his ownership in a way that cuts off the accrued rights of the other owner to sue for infringement. 505 F.3d at 97. In *Spinelli*, the court held that *Davis* was inapplicable because that holding was limited to the unique circumstance of retroactive transfers and licenses by a copyright co-owner. *See Spinelli* at \*31-32 (citing *Davis*, 505 F.3d at 101). Senisi, like the plaintiffs in *Spinelli*, is the sole owner of the Photographs (DSUMF ¶ 571), so no such "co-owner" argument exists here.

The Court in *Spinelli* further held that so-called "retroactive licenses" were valid even if they were granted by a non-exclusive licensee, noting that "even if the rights granted to AP were *non-exclusive* as Plaintiffs allege, *Davis* is still inapplicable." *Id.* at \*32 (emphasis added). The *Spinelli* court analogized the facts of that case to those in *Wu*, where the plaintiff photographer had alleged that defendant textbook publisher had infringed his copyrights in 29 photos. 2013 WL 145666, at \*1. Wu argued that by using the photos prior to the effective dates of the licenses, the publisher had infringed his rights. *See id.* at \*2. The court rejected this argument, beginning with the general principle that "[u]nder ordinary circumstances, copyright licenses may be granted either prospectively or retroactively." *Id.* at \*4.[7] It examined the invoices at issue, noting that they grant "a right to use particular works for particular purposes (*i.e.*, certain publications) in certain manners (*i.e.*,

---

[7] The court's qualifying phrase "ordinary circumstances" refers to *Davis*. *See Wu*, 2013 WL 145666, at \*4 (citing *Davis*).

certain numbers of copies or in certain media, subject to certain terms and conditions)." *Id.* at *5. In light of the invoices' clarity, the court then "decline[d] to read additional, unstated limits into otherwise clear contracts between sophisticated parties," such as limitations on retroactive use. *Id.*

The analysis in *Spinelli* and *Wu* applies in full here. Wiley and ImageWorks entered into a number of license extensions retroactively granting rights to Wiley. DSUMF ¶¶ 87, 93, 99, 105, 112, 118, 124, 194, 200, 205, 210, 217, 222, 292, 298, 300, 303, 308, 315, 320, 395, 402, 409, 414, 443, 453. These extensions give Wiley the broad right to use certain photos in certain publications for "World English language rights for print/e-book/web/all manner of media/custom/derivative works/including international student version" for the "life of the edition." *See id.* As in *Wu* and *Spinelli*, this Court should decline to create such a limitation where none exists.

Furthermore, it is undisputable that ImageWorks, as Plaintiff's agent, had actual authority to enter into the license extensions on Plaintiff's behalf. An agent's actual authority "'is created by direct manifestations from the principal to the agent.'" *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1088 (2d Cir. 1997) (quoting *Demarco v. Edens*, 390 F.2d 836, 844 (2d Cir. 1968)). "'The extent of the agent's actual authority is interpreted in the light of all circumstances attending these manifestations, including the customs of business, the subject matter, any formal agreement between the parties, and the facts of which both parties are aware.'" *Id.* Such authority may be express or implied by the principal's manifestations to the agent. *See Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 69 (2d Cir. 2003).

Here, the evidence makes clear that Plaintiff granted ImageWorks express and implied authority to enter into licenses, including retroactive licenses, with third parties. Plaintiff's agreement with ImageWorks grants the agency wide-ranging authority to enter into licenses with third parties on her behalf. DSUMF ¶¶ 10, 13. She also admitted that no provision of the agreement

limited ImageWorks' ability to grant retroactive licenses.  *Id.* ¶ 18.  Furthermore, Plaintiff accepted

the royalty payments obtained by ImageWorks for the licenses it secured, including the license

extensions at issue here.  *See, e.g.*, *id.* ¶¶ 88, 94, 101, 107, 119, 125, 196, 202, 207, 224, 306, 323,

417, 456.

Again, *Wu* is instructive on this point.  There, the court, citing Wu's deposition testimony,

found that Wu "had granted the [licensing agencies] broad discretion to enter into licenses on his

behalf, including the right to enter into retroactive licenses."  2013 WL 145666, at *2; *see also id.* at

*5.  Given that the retroactive licenses at issue were "authorized by the rights holder" (*id.* at *4), the

court concluded that "[p]laintiff cannot now complain of conduct he authorized" (*id.* at *5).  The

same is true here:  because ImageWorks had actual authority to enter into licenses for the use of

Plaintiff's photographs, including retroactive licenses, Plaintiff's claim must fail to the extent it is

based on any of these 34 licensed Uses at Issue.

## III.

## THE THIRD AMENDED COMPLAINT INCLUDES 2 USES AT ISSUE THAT ARE DUPLICATIVE

This Court granted Wiley's motion to dismiss claims in the SAC arising out of 7 license

invoices that Wiley had obtained directly from Plaintiff because each of those license invoices

contained the same broad arbitration provision.  *See* Dkt No. 126 at p. 13.  Plaintiff has withdrawn

the Alleged Infringing Uses that were dismissed in favor of arbitration that were pled in her TAC.[8]

Butterfield Decl. ¶ 78, Ex. 2.  Plaintiff's TAC also included 63 purportedly "new" Alleged Infringing

Uses that were nothing more than different descriptions of the same uses pled elsewhere in Plaintiff's

---

[8] Plaintiff filed the TAC the day before the Court issued its order dismissing uses in the SAC in favor of arbitration, and the TAC included the same uses that were subject to the then-pending motion.  *See* Dkt Nos. 125, 126.

TAC.  *See id.* ¶ 6, Ex. 2 (collecting all duplicative entries).  Thirty-four of these duplicative "new" Alleged Infringing Uses were the same uses that the Court dismissed in favor of arbitration.  *See id.* Ex. 2.  Twenty-nine of the "new" Alleged Infringing Uses were duplicates of non-arbitrable uses previously pled.  *Id.*  On April 29, 2015 Plaintiff dismissed all but 2 of the 63 Alleged Infringing Uses that are duplicate entries, leaving 2 Uses at Issue.  *Id.*

Even though the image descriptions are not identical, the documents produced by Wiley in this case show that these 2 remaining "new" Uses at Issue match two of the same uses that the Court dismissed in favor of arbitration.  DSUMF ¶¶ 353-372.  For example, one Alleged Infringing Use that was dismissed in favor of arbitration is the Photograph described as "Stdt with CP uses electronic device w. aide," licensed for use in a publication entitled *Educational Psychology*, 1e by Moreno.  Butterfield Decl. Ex. 2, Row 25.  The invoice reflects that the Photograph appeared as Figure No. 1.2 in that publication.  DSUMF ¶ 359.  Plaintiff has withdrawn this Alleged Infringing Use.  Dkt No 167.  However, Plaintiff also alleges that a photograph entitled "MR Center for Disability Services Ungraded private school" was used in the same publication, *Educational Psychology*, 1e by Moreno.  Butterfield Decl. Ex. 2 Row 64; DSUMF ¶ 353.  Wiley's records indicate that a photograph described as "MR Center for Disability Services Ungraded private school" does appear in that publication as Figure No. 1.2—the same figure number of the already dismissed Use at Issue.  DSUMF ¶¶ 353-364.  Although the descriptions are different, there is no evidence in the record to indicate these are different Photographs or different uses.  Similar logic applies to the second "new" but duplicative Use at Issue that Plaintiff has not withdrawn.  Butterfield Decl. Ex. 2

Row 68; DSUMF ¶¶ 363-372.  Accordingly, both these Uses at Issue must be dismissed as

duplicates.  *See* Butterfield Decl. Ex. 2.[9]

## CONCLUSION

For each of the foregoing reasons, the Court should grant Wiley's motion for partial

summary judgment on Plaintiff's copyright infringement claim, and dismiss the 143 Uses at Issue

identified in Exhibit 2 to the Butterfield Declaration.

Dated: New York, New York
      April 30, 2015

                        FRANKFURT KURNIT KLEIN & SELZ, P.C.

                        By:/s/ Toby M.J. Butterfield
                        Edward H. Rosenthal
                        Toby M.J. Butterfield
                        Anna Kadyshevich
                        Nicole Bergstrom
                        488 Madison Avenue, 10th Floor
                        New York, New York 10022
                        Phone:  (212) 980-0120
                        Fax:  (212) 593-9175
                        erosenthal@fkks.com

                        *Attorneys for Defendant*
                        *John Wiley & Sons, Inc.*

---

[9] Plaintiff asserts that these 2 duplicative Uses at Issue were licensed to Wiley by Senisi directly. *See* Butterfield Decl. Ex. 1, Rows 64, 68.  As the Court already determined, all of the licenses for the photographs Plaintiff provided to Wiley directly included a binding arbitration provision. Order, Dkt No. 126 at p. 5, fn. 2.  Accordingly, to the extent that Plaintiff alleges that the 2 duplicative Uses at Issue are not duplicates, they must be dismissed in favor of arbitration for the same reasons set forth in the Court's Order.  *Id.*  Further, Plaintiff has provided no proof of copyright registration concerning these 2 duplicative Uses at Issue if they are not duplicates despite the numerous opportunities to do so.  Therefore, for the reasons set forth in Part I.C., *supra*, Wiley is entitled to summary judgement on these 2 Uses at Issue for that separate reason.