## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ELLEN SENISI, | Case No. 13 Civ. 3314 (LTS) (AJP) |
| *Plaintiff,* | Hon. Laura T. Swain |
| *v.* | |
| JOHN WILEY & SONS, INC., | ECF Case |
| *Defendant.* | Electronically Filed |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Danial A. Nelson
Kevin P. McCulloch
NELSON & McCULLOCH LLP
155 East 56th Street
New York, New York 10022
Tel: (212) 355-6050
Fax: (646) 308-1178
dan@nmiplaw.com
kevin@nmiplaw.com

*Attorneys for Plaintiff*

Dated: May 29, 2015

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

SUMMARY OF ARGUMENT ......................................................................................... 1

APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT ...................................... 2

ARGUMENT .................................................................................................................. 3

I.      PLAINTIFF'S COPYRIGHT REGISTRATIONS ARE VALID. ..................................... 3

      A.  Registration VA 1-429-916 Is Valid. .........................................................3

      B.  Registration VAu 1-065-133 Is Valid. ......................................................4

      C.  Plaintiff's Mistakes, If Any, Were Innocent Errors. .......................................5

      D.  Even If Plaintiff's Registrations Are Found Invalid, It Does Not Entitle Defendant To Summary Judgment On The Related Claims. .......................................................................................................7

II.     PLAINTIFF'S COPYRIGHTS IN THE IMAGES IN TAC ROWS 12-14, 80, 89, 190, 237-239, 251-253, 255-256 ARE ALL REGISTERED WITH THE COPYRIGHT OFFICE. .......................................9

III.    DEFENDANT VIOLATED ITS PRINT-RUN AND LANGUAGE TERMS ...................................................................................................10

IV.    DEFENDAN'T PURPORTED "LICENSE EXTENSIONS" ARE INVALID ...................................................................................................12

      A.  Two Of Wiley's "License Extensions" Are Invalid Due To Fraud. ........................................................................................................12

      B.  Wiley's Reliance On *Spinelli* Is Misplaced....................................14

      C.  The Holding Of *Wu* Is Contrary To Governing Circuit Precedent. ................................15

      D.  Wiley's Effort To Avoid *Davis* Is Unpersuasive And Meritless. ...................................17

      E.  Wiley Estopped From Claiming Its Settlement Licenses Are Valid....................................................................................................18

V.     WILEY IS LIABLE FOR ACTS OF ITS FOREIGN SUBSIDIARIES ...................................................................................................19

CONCLUSION.............................................................................................................. 23

# TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ............................................. 22

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) ...................................................................... 2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 2

*Bean v. John Wiley & Sons, Inc.*, No. 12-cv-8001, 2012 WL
    1078662 (D. Ariz. March 30, 2012) ....................................................................... 11, 21

*Bourne v. Walt Disney Co.*, 68 F.3d 621 (2d Cir. 1995) ............................................................ 12

*Brass v. Am. Film Tech., Inc.*, 987 F.2d 142 (2d Cir. 1993) ..................................................... 13

*Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Intern., Inc.*, 2
    F.3d 24 (2d Cir. 1993) .......................................................................................... 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................................... 2

*Charron v. Meaux*, 60 F.R.D. 619 (S.D.N.Y. 1973) ................................................................. 8

*Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp. 2d 343
    (S.D.N.Y. 2001) ..................................................................................................... 8

*Corbello v. DeVito*, 832 F. Supp. 2d 1231 (D. Nev. 2011) ....................................................... 15

*Costar Grp. Inc. v. Loopnet, Inc.*, 172 F. Supp. 2d 747 (D. Md.
    2001) ............................................................................................................... 22, 23

*Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) ............................................................... 16, 17, 18

*Design Options, Inc. v. BellePointe, Inc.*, 940 F. Supp. 86
    (S.D.N.Y. 1996) ................................................................................................... 14

*Ebewo v. Martinez*, 309 F. Supp. 2d 600 (S.D.N.Y. 2004) ..................................................... 19

*Eckes v. Card Prices Update*, 736 F.2d 859 (2d Cir. 1984) ..................................................... 6

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27
    (2d Cir.1982) ....................................................................................................... 17

*Educ. Testing Servs. v. Katzman*, 793 F.2d 533 (3d Cir.1986) .............................................. 4

*eScholar, LLC v. Otis Educ. Sys., Inc.*, No. 04-cv-4051, 2005 WL
    2977569 (S.D.N.Y. Nov. 3, 2005) ........................................................................... 6

*Foman v. Davis*, 371 U.S. 178 (1962) ....................................................................................... 8

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545
    (9th Cir. 1989) ..................................................................................................... 20

*Frankely v. Stein and Day, Inc.*, 470 F. Supp. 209 (S.D.N.Y. 1979)................................................ 8

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d
1159 (2d Cir. 1971)........................................................................................................ 22

*Gilliam v. American Broadcasting Co. Inc.*, 538 F.2d 14 (2d Cir.
1976) ................................................................................................................... 16, 18

*Harrell v. Van der Plas*, No. 08-cv-8252(GEL), 2009 WL 3756327
(S.D.N.Y. Nov. 9, 2009) ............................................................................................... 20

*J. Racenstein & Co., Inc. v. Wallace*, No. 96-cv-9222, 1997 WL
605107 (S.D.N.Y. Oct. 1, 1997) ..................................................................................... 7

*John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262
(S.D.N.Y. 2014) ........................................................................................................... 18

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and
Trade Servs., Inc.*, 306 F. Supp. 2d 482 (S.D.N.Y. 2004) ...................................... 21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................. 20

*Mathews v. Diaz*, 426 U.S. 67 (1976) ......................................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986)............................. 2

*MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir. 1981) ................................................. 20, 22

*Meiri v. Dacon*, 759 F.2d 989 (2d Cir. 1985) ............................................................. 3

*Minden Pictures v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117
(N.D. Cal. 2014)........................................................................................................... 18

*Morris v. Bus. Concepts, Inc.*, 283 F.3d 502 (2d Cir. 2002)........................................ 4

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g
Co.*, 712 F. Supp. 2d 84 (S.D.N.Y. 2010).............................................................. 4, 6

*N. Jersey Media Grp. Inc. v. Pirro*, No. 13-cv-7153 (ER), 2015 WL
1086566 (S.D.N.Y. Mar. 9, 2015) ............................................................................ 16, 17

*New Hampshire v. Maine*, 532 U.S. 742 (2001)....................................................... 19

*New York Times Co., Inc. v. Tasini*, 533 U.S. 483 (2001) ........................................ 23

*One Treasure Ltd., Inc. v. Richardson*, 202 F. App'x 658 (5th Cir.
2006) ............................................................................................................................. 8

*P.C. Films Corp. v. MGM/UA Home Video Inc.*, 138 F.3d 453 (2d
Cir. 1998) ................................................................................................................... 15

*Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, No. 12-cv-10003, 2014 WL 4344095 (N.D. Ill. Sept. 2, 2014) .................... 20, 22

*Patrick v. LeFevre*, 745 F.2d 153 (2d Cir. 1984) ........................................... 2

*Peter Pan Fabrics, Inc. v. Acadia Co.*, 173 F. Supp. 292 (S.D.N.Y. 1959) ........................................................................................................ 20

*Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing Corp.*, 53 F. Supp. 2d 199 (N.D.N.Y. 1999) ................................................................ 13

*Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357 (5th Cir. 2004)......................................................................................... 9

*Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1146 (JSR), 2011 WL 4916299 (S.D.N.Y. Oct. 14, 2011) ................................................. 10

*Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103 (S.D.N.Y. 2012) ........................................................................................................ 14

*Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302 (S.D.N.Y. 2003) ........................................... 14

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989)......................... 16

*Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552 (2d Cir. 1972)................................................................................ 20

*Shapiro, Bernstein & Co., Inc. v. H. L. Green Co.*, 316 F.2d 304 (2d Cir. 1963)....................................................................................................... 22

*Sony Corp. of America v. Universal City Studios*, 464 U.S. 417 (1984)................................................................................................... 22, 23

*Spinelli v. Nat'l Football League*, No. 13 Civ. 7398 (RWS), 2015 WL 1433370 (S.D.N.Y. Mar. 27, 2015) ......................................... 14, 15

*Szabo v. Errisson*, 68 F.3d 940 (5th Cir. 1995) ........................................... 4

*Tasini v. New York Times Co.*, 206 F.3d 161 (2d Cir. 2000)........................ 12

*Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g, Inc.*, 75 F. Supp. 2d 242 (S.D.N.Y. 1999)........................................................... 5

*TVT Records v. The Island Def Jam Music Group*, No. 02-cv-6644, 2003 WL 1858151 (S.D.N.Y. Apr. 9, 2003)......................................... 13

*United States v. Larracuente*, 952 F.2d 672 (2d Cir.1992).......................... 12

*Viacom Int'l Inc. v. Fanzine Int'l Inc.*, No. 98-cv-7448 (KMW), 2000 WL 1854903 (S.D.N.Y. July 12, 2000) ....................................... 16

*Video Views v. Studio 21*, 925 F.2d 1010 (7th Cir. 1991)........................... 22

*Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452 (2d Cir. 1989) ............................................................................................................. 6

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) ................................................... 3

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131 (2d Cir. 1991)........................................................................ 21

*Woods v. Universal City Studios*, Inc., 920 F. Supp. 62 (S.D.N.Y. 1996) ............................................................................................................ 4

*Wu v. Pearson Education, Inc.*, No. 10-cv-6537(KBF), 2013 WL 145666 (S.D.N.Y. Jan. 11, 2013).......................................................... 15


STATUTES

17 U.S.C. § 101 ........................................................................................................ 3

17 U.S.C. § 102(a) .............................................................................................. 3, 5

17 U.S.C. § 103(a) .................................................................................................. 3

17 U.S.C. § 103(b) .................................................................................................. 4

17 U.S.C. § 408(c)(1) ............................................................................................. 4

17 U.S.C. § 501(b) ................................................................................................ 17

17 U.S.C. § 602(a)(2) ........................................................................................... 20

OTHER AUTHORITIES

2 Melville. B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 7.20 (2010) ................................................................................................ 6

3 M. Nimmer, NIMMER ON COPYRIGHT § 12.04[A][1], at 12-73 ................................. 20

RULES

Fed. R. Civ. P. 37(c)(1) ......................................................................................... 19

Fed. R. Civ. P. 56(a) ............................................................................................... 2

Fed. R. Civ. P. 56(c) ............................................................................................... 2

Fed. R. Civ. P. 56(e) ............................................................................................... 2

REGULATIONS

37 C.F.R. § 202.3(b) ........................................................................................... 4, 5

Plaintiff Ellen Senisi hereby submits this opposition to Defendant John Wiley & Sons, Inc.'s ("Defendant" or "Wiley") Motion for Partial Summary Judgment ("Motion" or "Mtn.").

## SUMMARY OF ARGUMENT

Defendant dedicates a large portion of its Motion to challenging two of Plaintiff's copyright registrations on the grounds that, according to Defendant, Plaintiff mistakenly identified the publication date of certain photos and mistakenly registered other photos as "unpublished" when they were previously published.  Both arguments fail because Defendant mistakenly characterizes the registrations as "group registrations" of separate works when they are in fact registrations of "compilations" of Plaintiff's photos and thus the application requirements on which Defendant's argument hangs do not apply.  Plaintiff also was permitted to register the RAW files of her photos as unpublished even if the photos had been published previously in a different format because RAW digital files are a distinct tangible medium of expression deserving of separate copyright protection.  Even assuming *arguendo* that Defendant's position had merit, these alleged mistakes are merely inadvertent errors that do not warrant invalidating the registrations.  At worst, the Court should permit Plaintiff an opportunity to correct these minor errors rather than granting judgment against her on meritorious claims.

Defendant also argues that Plaintiff allegedly did not identify the applicable registration information for certain photos.  This argument also is unpersuasive.  Plaintiff produced the relevant copyright certificate in discovery and testified that these photos were covered by this registration, and Defendant never raised any issue regarding the adequacy of her copyright declarations as they applied to these photos until this Motion.  Again, Defendant's argument is meritless and does not support judgment against Plaintiff.

The balance of Defendant's Motion is dedicated to arguing that it did not infringe Plaintiff's copyrights.  Many of these arguments are now familiar to the Court, and center on the

1

primary theme that Wiley obtaining prospective licenses after infringing Plaintiff's copyrights somehow extinguished her claims.  These arguments are without merit.

## APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court's role is limited to determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  It is "improper" to "cross[ ] the line between identifying genuinely disputed issues . . . and prematurely resolving those issues." *Patrick v. LeFevre*, 745 F.2d 153, 160 (2d Cir. 1984).

As the moving party, Defendant bears the burden of showing that there is an absence of genuine fact issues.  Fed. R. Civ. P. 56(c); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970), *overrules on other grounds*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If Defendant fails to make this showing, "summary judgment must be denied even if no opposing evidentiary matter is presented."  Adv. Comm. Notes to Fed. R. Civ. P. 56(e) (1963 Amendment).  Even if Defendant meets this threshold, its Motion still fails if Plaintiff "set[s] forth specific facts showing that there is a genuine issue for trial" or shows that "a reasonable jury could return a verdict" in his favor.  *Anderson*, 477 U.S. at 248, 249.  Only if the Court determines that "a rational trier of fact could not find for the non-moving party based on the record as a whole, [then] there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  "All ambiguities must be resolved and all inferences

drawn in favor of the party against whom judgment is sought." *Williams v. Smith*, 781 F.2d 319,

323 (2d Cir. 1986) (citation omitted); *accord Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir. 1985).

## ARGUMENT

## I.    PLAINTIFF'S COPYRIGHT REGISTRATIONS ARE VALID.

Defendant's argument that Plaintiff's copyright registrations VA 1-429-916[1] and

VAu 1-065-133 are defective is misguided and meritless.   Even if it were correct, however,

Plaintiff's alleged mistakes were minor and innocent and thus do not warrant invalidating her

registrations, and certainly not granting judgment in Wiley's favor on these meritorious claims.

### A.    Registration VA 1-429-916 Is Valid.

Defendant argues that Registration VA 1-429-916 is invalid as a "group registration of

published photographs" because not all photos were published the same year.[2]  (Mtn. at 9.)  This

argument fails on numerous grounds, including that Plaintiff registered her Archive as a

compilation of her work, not as a group of individual works.

The Copyright Act does not require that each individual work by an author needs to be

registered separately.  Instead, the Act permits registrations covering both individual "works of

authorship" and various types of "compilations" of "pre-existing" individual works.  *See* 17

U.S.C. §§ 102(a); 103(a).  The Copyright Act defines a compilation as "a work formed by the

collection and assembling of preexisting materials or of data that are selected, coordinated, or

arranged in such a way that the resulting work as a whole constitutes an original work of

authorship."   17 U.S.C. § 101.   The Act also provides that the "Register of Copyrights is

---

[1] Registration VA 1-429-916 covers 49 photographs originally at issue, but claims related to 12 photos were dismissed in favor of arbitration. This registration thus applies to 37 photos that remain in suit, not 27 as Defendant contends. (Mtn. at 9.)

[2] Wiley's entire argument that this is a group registration appears to rest on a letter that Plaintiff's counsel submitted to the Court on September 18, 2014. (MDX-19.)  This is fairly weak evidence.  The letter is clear that counsel was discussing "25 certificates" and merely painting with broad strokes.  (*Id.*)  Moreover, a "compilation" registration also is a "group" registration under 37 C.F.R. § 202.3(b).

authorized to specify by regulation the administrative classes into which works are to be placed for purposes of deposit and registration." 17 U.S.C. § 408(c)(1).  Pursuant to this authority, the Register permits "certain groups of works" to be registered together for purposes of convenience. *See* 37 C.F.R. § 202.3(b)(2).  Among the types of permissible "group" registrations, the Register permits a single registration to cover a compilation of many separate works so long as they are "included in a single unit of publication, and in which the copyright claimant is the same."  37 C.F.R. § 202.3(b)(4)(i)(A).  Unlike the requirements set forth in 37 C.F.R. § 202.3(b)(10), there is no requirement that all of the works in a compilation be created or published in the same year.

Plaintiff fully satisfied all requirements for registration of her Archives as a collection. [3] As the face of the certificate indicates, the registration contains a single title which identifies the collection as a whole. [4] (*See* Butterfield Ex. 72.)  All photos contained in the collection are by the same author and thus the copyright claimant is the same for all works.  (*Id.*)  The registration thus is valid and covers her Archives as a distinct collection. (*See* Senisi Decl. ¶ 2.)

### B.    Registration VAu 1-065-133 Is Valid.

Defendant also challenges Registration VAu 1-065-133 on the grounds that it is a registration of unpublished photos but it "includes at least some published works."  This argument again fails because this registration also is a validly registered collection.  The Register

---

[3] Even though Plaintiff registered her Archives as a compilation, copyright protection fully extends to each of the underlying photos within the collection.  Indeed, the Copyright Act expressly provides that registration of "copyright in a compilation" extends copyright protection "to the material contributed by the author."  17 U.S.C. § 103(b); accord 37 C.F.R. § 202.3(b)(4)(i) (registration of a "collection" extends copyright protection "to each copyrightable element in the collection"); *accord Morris v. Bus. Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir. 2002) ("the constituent work is included in the registration of the collective work."); *Woods v. Universal City Studios*, Inc., 920 F. Supp. 62, 64 (S.D.N.Y. 1996) (same); *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 712 F. Supp. 2d 84 (S.D.N.Y. 2010) (registration of a collective work or other compilation "reaches the individual works only when the author of the collective work authored each of the individual works"); *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 539 (3d Cir.1986) ("[T]he fact that the registration was for compilations does not preclude protection for the material therein contributed by the author."); *Szabo v. Errisson*, 68 F.3d 940 (5th Cir. 1995).

[4] As Plaintiff testified, the "1-154" merely refers to the number of CDs required to hold this portion of her archive for submission of the deposit materials to the Copyright Office, it does not refer to separate images or works. (Senisi Dep. at 56:9-18.)  There is no legal significance to the fact that Plaintiff had to divide her archive collection into separate CDs in order to submit the deposit.

permits registration of any previously published "self-contained works" as a new "unpublished" work if they "are combined in a single unpublished collection."  37 C.F.R. § 202.3(b)(4)(i)(B). There is no prohibition against including previously published elements in the new unpublished "collection" so long as:  "(1) The elements are assembled in an orderly form; (2) The combined elements bear a single title identifying the collection as a whole; (3) The copyright claimant in all of the elements, and in the collection as a whole, is the same; and (4) All of the elements are by the same author[.]"  *Id.*  Again, each element is satisfied here because the files were assembled for filing in an orderly form; the registration on its face "bear[s] a single title"; the copyright claimant is the same; and all elements of the separate works are by the same author.

Even construed as a group registration of separate works, Wiley's argument still fails because Plaintiff intended to separately register her "RAW files" (as distinct from Plaintiff's original slides or the much lower-resolution JPG and TIFF files that were previously published). (Senisi Decl. ¶ 3.)  Because the RAW files are a separate "tangible medium of expression," they are fully deserving of their own distinct copyright protection.  17 U.S.C. § 102(a).  This is a well-settled principle that is primarily an issue in the music industry where artists register their high-data "master recordings" separately from the music that appears on a published record.  *See, e.g.*, *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g, Inc.*, 75 F. Supp. 2d 242, 247 (S.D.N.Y. 1999).  In such cases, this Court has noted that the Copyright Office itself (in Circular 56a) recognizes these as "*separate works*."  *Id.* (emphasis added)

### C.    Plaintiff's Mistakes, If Any, Were Innocent Errors.

Even if Wiley were correct that Plaintiff made errors in registering her copyrights under VA 1-429-916 and VAu 1-065-133, those mistakes were inadvertent and innocent.  Wiley makes no showing of any attempt to willfully defraud the Copyright Office and thus the registrations should not be invalidated.  As Plaintiff explains, she thought she was acting appropriately in

5

registering her Archives as a single collection and seeking a separate registration for her RAW files of certain images. (Senisi Decl. ¶¶ 2-3.) Her approach was not only reasonable, it also is fully compliant with the Copyright Act and the Register's requirements and relevant case law. Even if the Court disagrees, there is no evidence that Plaintiff intended to defraud the Register or that she was so well-versed in copyright nuances that her errors should be deemed intentional.[5]

It is settled that such "innocent errors" are not grounds for invalidating a registration due to some technical defect. *See eScholar, LLC v. Otis Educ. Sys., Inc.*, No. 04-cv-4051, 2005 WL 2977569, at *12 (S.D.N.Y. Nov. 3, 2005). Plaintiff is not an attorney, nor is she an expert in the nuances of copyright law. She did not intend to defraud the Copyright Office, and her mistake was innocent. At worst, Plaintiff mistakenly grouped photos together that should have been filed under separate registrations. This is not the sort of error that warrants invalidating the registration. *See Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989) (citing *Eckes v. Card Prices Update*, 736 F.2d 859, 861-62 (2d Cir. 1984)); *see also* 2 Melville. B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 7.20 (2010); *Thomas Wilson & Co. v. Irving J. Dorfman Co.*, 433 F.2d 409, 412 (2d Cir. 1970); *Advisors, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir. 1956) (*per curiam*). The errors alleged by Wiley here are not on the scale or even of the same nature as other defects that have been held to require invalidating a registration. *See Muench Photography*, 712 F. Supp. 2d at 93-95 (holding registration did not apply to individual works in a database where registration failed to identify individual authors).

---

[5] Defendant mischaracterizes Plaintiff's testimony to argue that she "admitted that she understands the difference between 'published' and 'unpublished' as the terms are used by the Copyright Office." (Def. 56.1 ¶ 568.) In point of fact, she merely acknowledged that she understands the difference between these terms generally, not as they "are used by the Copyright Office." (Senisi Dep. at 59:12-15 ("Q. Do you understand the difference between published and unpublished for -- A. Yes, I do.").) The Copyright Office's definition of the term "published" is very technical and does not correlate with the lay understanding because it applies where a photo is merely held out to the public (*e.g.*, sent to a licensor) and not when the photo actually appears in a publication. Plaintiff is not a copyright attorney and should not be charged with knowing that fine distinction.

**D.    Even If Plaintiff's Registrations Are Found Invalid, It Does Not Entitle Defendant To Summary Judgment On The Related Claims.**

Wiley's reliance on the holding of *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014), is misplaced.  In *Psihoyos*, the Court of Appeals concluded registrations must be completed prior to bringing suit, *id.* at 125, but did not rule that any registration defects revealed during discovery required dismissal of claims, and certainly did not rule that such defects required judgment in favor of the defendant.  On the contrary, the *Psihoyos* Court merely reaffirmed that decisions regarding the amendment of pleadings are left to the "wide discretion" of the lower courts.  *Id.* at 126.  Nor does this Court's summary judgment ruling in *Psihoyos* support Wiley's position.  This Court in *Psihoyos* denied a request for leave to amend because it found permitting such amended pleadings would require additional discovery and would be prejudicial to Wiley.  *Id.*   Here, by contrast, Wiley was aware of these issues since at least October 2014 and yet delayed raising the issue for over six months.  In fact, the Court permitted Plaintiff to amend her pleadings over four months ago to add claims related to additional uses of her photos reveled by discovery and yet Wiley still failed to identify any alleged registration defects in its amended answer and did not move to dismiss on this basis.  Instead, *Wiley waited nearly eight months* to raise this issue on summary judgment hoping to sandbag Plaintiff and achieve a dismissal with prejudice.

Even if the Court finds that there are technical defects in Plaintiff's registrations, equity demands that the Court grant a brief stay to allow Plaintiff to correct any defects found by the Court.  *See J. Racenstein & Co., Inc. v. Wallace*, No. 96-cv-9222, 1997 WL 605107, at *1-2 (S.D.N.Y. Oct. 1, 1997) ("Where an action is commenced without registration being effected, the defect can be cured by subsequent registration, and an appropriate amendment to the complaint may be made to provide the necessary basis for subject matter jurisdiction."); *Chere Amie, Inc. v.*

*Windstar Apparel, Corp.*, 191 F. Supp. 2d 343, 350 (S.D.N.Y. 2001) (same); *Charron v. Meaux*, 60 F.R.D. 619, 624 (S.D.N.Y. 1973) (same); *Frankely v. Stein and Day, Inc.*, 470 F. Supp. 209, 212 n.2 (S.D.N.Y. 1979) (same); *One Treasure Ltd., Inc. v. Richardson*, 202 F. App'x 658, 661 (5th Cir. 2006) (same).  The Court should be particularly reluctant to grant judgment in Wiley's favor on this basis given that Wiley was aware of these issues for over *six months* and yet delayed raising it until this Motion hoping to achieve partial summary judgment.[6]  *See Foman v. Davis*, 371 U.S. 178, 181 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities."); *Mathews v. Diaz*, 426 U.S. 67, 73-76 (1976) (holding defects in meeting pleading requirements may be cured on appeal).  Had Wiley's counsel raised this issue in a timely fashion, any alleged defects would already have been corrected and the issue would be moot.  The Court should not reward Wiley for hiding in bushes for months.  Allowing Plaintiff to correct any errors found by the Court also is required under the liberal application of Rule 15 and comports with the requirement to grant leave to amend whenever "justice" requires.  *E.g.*

---

[6] During the September 22, 2014 discovery conference, the Court ordered Plaintiff to provide a declaration identifying which registrations covered the photos in issue. (NDX-48 at 6-7.)  The Court also noted, however, that if this was not possible then the proper course of action would be to proceed with obtaining copies of deposit materials from the Copyright Office.  (*Id.*)  In compliance with the Court's order, Plaintiff provided a declaration identifying registration information for the photos in suit and an amended declaration on December 2, 2014.  (Butterfield Decl. Ex. 69.)  Plaintiff also produced document discovery regarding her copyright registrations.  (*Id.* Exs. 71 & 72.)  Despite having received all the information necessary to identify any alleged defects in these registrations in October 2014, Defendant failed to raise any issue with either Plaintiff's counsel or the Court during the entire course of discovery.  Defendant did not raise any issue regarding the validity of Plaintiff's registration in any of the numerous discovery conferences or in any of its plethora of letters to the Court.  Defendant also did not move to dismiss on this basis or even include any additional allegations relating to this issue in responding to Plaintiff's Third Amended Complaint ("TAC").  Despite having ample and time and opportunity to raise the issue, Wiley remained silent for the express purpose of preventing Plaintiff an opportunity to either proceed with obtaining additional records from the Copyright Office related to her applications or correcting any alleged defects in the registrations.  If Wiley had raised any issue regarding the adequacy of these registrations, the issue could have been addressed in motions months ago and, if the Court ruled that the registrations included errors, the alleged defects could have been fully resolved by now.  The Court should not reward Wiley for waiting in the bushes for months for this "gotcha" moment.  *See Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 466 (2d Cir. 1985) (noting that "tactics of delay or harassment that operate to prejudice the opposing party . . . justify[] a finding of waiver").  Plaintiff recognizes that, unlike an affirmative defense, registration is an element of Plaintiff's claim and thus Wiley cannot forfeit this argument.  However, Wiley's tactics should make the Court extremely reluctant to dismiss these claims with prejudice in the event the Court determines that there is a defect in the registrations.

*Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 366 (5th Cir. 2004)

("technicalities should not prevent litigants from having their cases heard on the merits").

## II. PLAINTIFF'S COPYRIGHTS IN THE IMAGES IN TAC ROWS 12-14, 80, 89, 190, 237-239, 251-253, 255-256 ARE ALL REGISTERED WITH THE COPYRIGHT OFFICE.

Wiley seeks summary judgment on claims related to 11 photos on the grounds that Plaintiff did not identify the registration information for these specific photos in her prior declarations. This is yet another "gotcha" argument that is unpersuasive and meritless.

During the February 10, 2015 conference, Wiley asked the Court for discovery regarding "four new photographs which were added [to the TAC]," which Wiley's counsel stated were "the last four entries in the chart." (NDX-75 at 3:16—4:23.) The Court ordered Plaintiff to provide an updated declaration for these photos. (*Id.* at 7:7-11.) In a letter the next day, Wiley's counsel specifically identified the four photos for which it was requesting discovery. (MDX[7]-6 at 1-2.)

As instructed, Plaintiff provided a third declaration identifying the registrations covering these four photos. (Butterfield Ex. 70.) Plaintiff thus presumed that the issue was closed and that she had complied with the Court's order by providing registration information regarding the "new photos" identified by Wiley. It appears now that Wiley's counsel simply overlooked that a few additional photos also were included in the TAC related to books already in suit.[8] This was an innocent oversight *by both parties*. It does not justify granting Wiley summary judgment.

Plaintiff's copyrights in all of these photos are registered with the Copyright Office under VA 1-429-926. (Senisi Suppl. Decl. ¶ 3.) Because the photos are covered by a registration that

---

[7] For the sake of convenience, references to the Declaration of Kevin McCulloch are cited as "MD" and exhibits thereto are cited as "MDX." The same shorthand ("ND" or "NDX") is used for the Declaration of Danial Nelson.

[8] At the time the amended complaint in this case was prepared, Plaintiff's counsel also prepared similar amended pleadings in the five other related cases against Wiley. The Court granted plaintiffs leave to amend on January 15, 2015 due to, in the Court's own words, Wiley's "really ridiculous" argument for not providing relevant discovery. (NDX-15 at 25:22-26:4.) Because the discovery deadline was barely two weeks away, counsel prepared the amended pleadings in six separate cases involving hundreds of new uses based on documents produced by Wiley only days before. It thus is entirely reasonable that counsel for both parties overlooked a few lines in this exhibit.

covers other photos in suit, Defendant already has had a full opportunity to conduct discovery and depose Plaintiff regarding this registration.  In fact, as Wiley acknowledges, Senisi testified that Registration VA 1-429-916 covers essentially all of her photos "up until [the] date of this filing, which was 2007."  (Senisi Dep. at 55:6-21.)  Because the latest invoice that Wiley received pertaining to these photos were issued in January 2007 for photos it obtained in 2006, the record already established that Registration VA 1-429-916 likely covered these photos. Because Senisi had already testified to the breadth of this registration and Wiley knew the photos had been created prior to 2007, it would be unreasonable to dismiss her claims related to these photos merely because she did not also provide yet another declaration essentially just to confirm her testimony.

There is no possible prejudice to Wiley by this innocent oversight.  As this Court has ruled in prior suit against Wiley, meritorious claims should not be dismissed on such grounds.[9] *See Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1146 (JSR), 2011 WL 4916299, at *2 n.2 (S.D.N.Y. Oct. 14, 2011) ("*Psihoyos I*") ("The Court has determined, however, that these (and all other) late-produced registration numbers do not prejudice the defendant and accordingly accepts them as evidence for this motion for summary judgment.").

## III.   DEFENDANT VIOLATED ITS PRINT-RUN AND LANGUAGE TERMS

As in many other cases, Wiley has infringed Plaintiff's copyrights in various ways.  The record of Wiley's habit of copyright abuse precludes granting judgment on any claims

On December 6, 2005, The Image Works ("TIW") issued Invoice No. 101517 to Wiley regarding three of Plaintiff's photos for use in *Psychology in Action*, 8e.  (Butterfield Ex. 30.) The license limited Wiley's use to "one time" use for "print rights" for "one English language"

---

[9] In *Psihoyos I*, this Court allowed the claims to proceed even though the certificates of registration had not been produced in discovery. (*Id.*)  Here, Wiley had a full opportunity for discovery related to this copyright registration, thus there is even less support for dismissing these claims.

edition.  (*Id.*)  Wiley disregarded these restrictions and entered into a "Foreign Language License Agreement" authorizing a French language translation this title.  (MDX-10.)  Regardless of whether Wiley actually printed this foreign translation, authorizing it and sending a copy of Plaintiff's photo to a foreign publisher was a direct violation of the language restriction in its license.  *See Bean v. John Wiley & Sons, Inc.*, No. 12-cv-8001, 2012 WL 1078662, at *3 (D. Ariz. March 30, 2012) (holding Wiley liable for infringement where it authorized other entities to publish foreign editions not permitted under its licenses).  Wiley's attempt to disclaim responsibility because it authorized another company to create the infringing work is unpersuasive as the license did not include authority to sublicense its rights to use the photos.

On December 3, 2003, TIW issued Invoice No. 2022335 to Wiley regarding two of Plaintiff's photos for use in *Personality: Theory and Research*, 9e.  (Butterfield Decl. Ex. 54.) Again, the license limited Wiley's use to "one time" use for "print rights" for "one English language" edition.  (*Id.*)  And once again Wiley disregarded these restrictions and entered into a license agreements authorizing multiple foreign translations.  (MDX-11 & 12.)

On January 18, 2007, TIW issued Invoice No. 103607 regarding two of Plaintiff's photos for use in *Personality: Theory and Research*, 10e.  (Butterfield Decl. Ex. 13.)  Again, the license limited Wiley's use to "one time" use for "print rights" for "one English language" edition.  (*Id.*) And once again Wiley disregarded these restrictions and entered into a license agreements authorizing multiple foreign translations.  (MDX-14.)

Apart from its multitude of illegal foreign publication authorizations, there are at least twelve instances in which Wiley exceeded its licensed print-run limit despite claiming "License Not Exceeded" in the chart at Exhibit 2 to the Butterfield Declaration.  (*See* Pl. 56.1 Resp. ¶¶ 599-617.)  Ten of these violations involve *Psychology in Action*, 8e.  (TAC Rows 159-68.) Wiley's license was limited to a print run of only 40,000 but it printed 49,624 copies.

(Butterfield Decl. Ex. 30; MDX-15.)   Two violations occurred in *Personality: Theory and Research*, 9e.   (Rows 132, 133.)   Despite getting a license limited to 20,000 copies, Wiley printed 38,660 copies of this title.   (Butterfield Decl. Ex. 54; MDX-16).

## IV.   DEFENDAN'T PURPORTED "LICENSE EXTENSIONS" ARE INVALID

Wiley admits that for 34 of the claims in suit it violated its initial license from TIW and then subsequently purchased a "license extension."   (Mtn. at 18; Butterfield Decl. Exs. 23, 27, 31, 33, 55.)   Wiley's reliance on these "licenses" to avoid claims for infringement is unavailing.[10]

Wiley has asserted license as an affirmative defense, and thus it bears the burden of coming forward with evidence of a *valid* license.   *See Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995) (citing *United States v. Larracuente*, 952 F.2d 672, 674 (2d Cir.1992)); *Tasini v. New York Times Co.*, 206 F.3d 161, 171 (2d Cir. 2000) ("Where the dispute turns on whether there is a license at all, the burden is on the alleged infringer to prove the existence of the license."); *accord Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). Any ambiguity as to whether Wiley's licenses are valid must be resolved against Wiley.

### A.   Two Of Wiley's "License Extensions" Are Invalid Due To Fraud.

The record is clear that Wiley made uses of Plaintiff's photos that exceeded the terms of its original license.   In a deceptive effort to address these violations, Wiley subsequently purchased "license extensions" from TIW.   Wiley purchased these purported "license extensions" after determining that it was not in compliance with its original licenses during an internal "investigation" it began in 2011 after it already had been sued in this District in March

---

[10] Wiley also cannot rely on these licenses because it refused to provide discovery regarding its internal investigation, including when it first discovered the violations of its original licenses from TIW.   Such information is directly relevant to determining whether Wiley concealed information during the licensing process, which is a crucial issue in assessing the validity of these alleged licenses.   Wiley's reliance on these "license extensions" as a defense to infringement thus puts its knowledge of the violations and other facets of its internal investigation in issue.   Because Wiley failed to provide discovery on these issues, Wiley has forfeited these defenses.

2011 for infringements involving these same books in *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416, Dkt. No. 1 (S.D.N.Y. filed March 1, 2011).  (Pl. 56.1 Resp. ¶¶ 623-624.)  Although Wiley did so in an attempt to try to cover-up its violations or extinguish accrued copyright claims related to these violations, Wiley initially did not inform TIW that it was seeking an "extension" because it already had violated its original license.  (Butterfield Ex. 23 & 33.)  Instead, Wiley issued a typical request, which sought only prospective rights.  (*Id.*)  Unlike Wiley's licenses from TIW after October 2011, these licenses thus do not include any retroactive rights or state that they apply to prior uses or violations.  (*Compare id.* Exs. 27, 31, 55.)

Although Wiley has refused to provide discovery regarding its internal investigation that uncovered the violations of its original licenses, there can be no serious doubt that Wiley was aware of these violations prior to contacting TIW.  Indeed, Wiley's legal counsel went to great lengths throughout 2011 to conceal information from copyright owners specifically so that it could engage in a massive clean-up effort that involved purchasing such "license extensions" from unsuspecting stock photo licensors like TIW.  (Pl. 56.1 Resp. ¶¶ 614-617.)

Because Wiley had superior information regarding its use of Plaintiff's photos, it was required to disclose such information to TIW.  *See, e.g., Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (duty to speak arises where party has superior knowledge).  Because Wiley failed to disclose this crucial information, its licenses are invalid.  *See TVT Records v. The Island Def Jam Music Group*, No. 02-cv-6644, 2003 WL 1858151, at *5 (S.D.N.Y. Apr. 9, 2003) ("evidence of fraud nullifies the putative licenses"); *Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing Corp.*, 53 F. Supp. 2d 199, 211 (N.D.N.Y. 1999) (contracts invalid where "a party has been induced to enter a contract by fraudulent misrepresentations").  The fact that Wiley subsequently began disclosing that it was seeking extensions due to past violations and that the license "reflects fee for violation" only further proves that Wiley knew that it should disclose this

information and that TIW would have charged different fees had the information been disclosed.

Even if the licenses were not invalid due to fraud, they the evidence presented by Wiley does not show that it requested "retroactive" rights in these two instances and neither "license" issued by TIW states that it is intended to apply retroactively.   (Butterfield Exs. 23 & 33.) Because the "licenses" do not indicate that TIW intended to grant Wiley retroactive usage rights, let alone to grant such rights in order to extinguish accrued infringement claims, Wiley cannot show that there was a "meeting of the minds" between the parties as required to establish a valid license.[11]   *See Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 124 (S.D.N.Y. 2012) (citations omitted); *Design Options, Inc. v. BellePointe, Inc.*, 940 F. Supp. 86, 92 (S.D.N.Y. 1996) (holding there must be evidence "demonstrating that *both parties* to the transaction, not just the defendant, intended that the defendant could use or copy the plaintiff's work [in such a manner] without liability for copyright infringement") (emphasis in original); *Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302, 309 (S.D.N.Y. 2003) ("a court may not draw any inference or give any construction to the terms of a written contract that conflicts with the clearly expressed language of the written agreement").   This is fatal to Wiley's alleged license defenses.

**B.   Wiley's Reliance On *Spinelli* Is Misplaced.**

Wiley relies heavily on this Court's recent (unpublished) decision in *Spinelli v. Nat'l Football League*, No. 13 Civ. 7398 (RWS), 2015 WL 1433370 (S.D.N.Y. Mar. 27, 2015), to argue its "license extensions" from TIW are valid.   In particular, Wiley focuses on the holding in

---

[11] The Court should be particularly wary of reading retroactive rights that have the effect of settling accrued claims for infringement into these license "extensions" because, as the director of Wiley's photo permissioning department testifying as Wiley's Rule 30(b)(6) corporate representative in a series of similar lawsuits against Wiley in this District, explained, Wiley understood and intended such "license extensions" to apply prospectively only. (NDX-55 (Patelli Dep.) at 117:20—118:12; 119:2-24 ("Q. It's prospective? A. It's proactive [sic - prospective], yeah, before, prior to."). Patelli further testified that this understanding of the distinction between "extending" licenses and obtaining remediation or settlement has always been understood by Wiley's permissioning staff. (*See id.* at 124:8-14 ("Q. Has that [distinction] always been the understanding of the permissioning staff at Wiley? . . . A. To my knowledge, yes.").)

*Spinelli* that "[a]s a matter of copyright law, copyright owners and exclusive licensees are free to grant such licenses 'after the fact' as they see fit." *Id.* at *31. In addition to being wrong as a matter of law, *see infa*, the holding of *Spinelli* is inapposite because TIW did not acquire any copyrights in and is not an "exclusive licensee" of Plaintiff's photos. (Butterfield Ex. 73.)

Not only does Plaintiff's agreement with TIW not grant any exclusive licensing authority, it also does not prohibit Plaintiff from licensing these works directly – which she did to Wiley on numerous occasions. As such, TIW cannot be an exclusive licensee. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117, 1126 (N.D. Cal. 2014); *Corbello v. DeVito*, 832 F. Supp. 2d 1231, 1244 (D. Nev. 2011). The facts in *Spinelli* are again at odds with those here. Unlike Plaintiff's photos, all of the photos in suit in *Spinelli* involved NFL-related events or featured NFL players, and thus the Court determined that the NFL Defendants owned the intellectual property featured in the photos and thus the plaintiffs could not license the works on their own without approval of the NFL. *See Spinelli*, 2015 WL 1433370, at *18.

### C. The Holding Of *Wu* Is Contrary To Governing Circuit Precedent.

Defendant also relies heavily on this Court's conclusion in *Wu v. Pearson Education, Inc.*, No. 10-cv-6537(KBF), 2013 WL 145666 (S.D.N.Y. Jan. 11, 2013), that "copyright licenses may be granted either prospectively or retroactively." *Id.* at *4. . The Court should decline to follow *Wu* because the holding rests on a critical mistake of law. The Court in Wu acknowledged that the licenses in question did not state that the licensor was permitted to grant retroactive rights so the Court "declined to read additional, unstated limits" into the contracts. *Id.* at *4. This approach turns the law of copyright licenses on its head. Although the meaning of contract language generally is a question of construction that must be resolved according to state law, where a contract provision relates to "a license of federal copyright rights," it is "subject to the provisions, principles and policies of federal copyright law." *P.C. Films Corp. v.*

15

*MGM/UA Home Video Inc.*, 138 F.3d 453, 456 (2d Cir. 1998); *accord S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989) (holding courts may "rely on state law to provide the canons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy."). Therefore, the scope of any license "must be construed in accordance with the purposes underlying federal copyright law. Chief among these purposes is the protection of the author's rights." *S.O.S.*, 886 F.2d at 1088. Under this governing principle, all "licenses are assumed to prohibit any use not authorized." *Id.* (emphasis added). Thus, the logic of *Wu* is contrary to this governing principle and has been rejected precisely because "this approach would place the burden on the wrong party." *Viacom Int'l Inc. v. Fanzine Int'l Inc.*, No. 98-cv-7448 (KMW), 2000 WL 1854903, at *5 (S.D.N.Y. July 12, 2000) (citing *S.O.S.*, 886 F.2d at 1088). As the Second Circuit has noted, "the ability of the copyright holder to control his work remains paramount in our copyright law" and thus the standard rule is that a license must be read to exclude any uses "not *specifically* empowered" by the license terms. *Gilliam v. American Broadcasting Co. Inc.*, 538 F.2d 14, 21 (2d Cir. 1976) (emphasis added). For this reason, the Court already has noted that *Wu* was wrongly decided. *See  N. Jersey Media Grp. Inc. v. Pirro*, No. 13-cv-7153(ER), 2015 WL 1086566, at *4 n.6 (S.D.N.Y. Mar. 9, 2015).

The *Wu* decision also makes clear that such "retroactive" licenses may be granted *only* "under ordinary circumstances." *Id.* (citing to *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007).) In doing so, the *Wu* court recognized—as it must—that the Court of Appeals already had identified circumstances in which retroactive licensing was invalid, namely cases in which the retroactive license purported to vitiate or extinguish the statutory rights of the copyright owner to sue for an accrued claim of copyright infringement. This Court must defer to *Davis* and not *Wu*.

**D.      Wiley's Effort To Avoid *Davis* Is Unpersuasive And Meritless.**

Following *Spinelli*, Wiley attempts to avoid *Davis* by arguing that it is limited to "copyright co-owners." Wiley's position—like the ruling in *Davis*—is wrong as a matter of law.

The Copyright Act explicitly provides that only the "legal or beneficial owners of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Therefore, as the Second Circuit repeatedly has held, Section 501(b) "authorizes only two types of claimants to sue for copyright infringement: [i] owners of copyrights, and [ii] persons who have been granted exclusive licenses by owners of copyrights." *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982). Because TIW is *neither* the owner of any copyrights in Plaintiff's photos *nor* has it been granted an exclusive license, it is statutorily prohibited from pursuing claims for copyright infringement. If anything, then, the holding of *Davis* applies with even greater force to a mere licensing agent because, unlike a copyright co-owner, the licensing agent has *no authority* to sue for infringement. *See Pirro*, 2015 WL 1086566, at *4 n.6 ("the Second Circuit's opinion in *Davis* admits of no such limitation" and noting that "the policy reasons underpinning the court's holding in *Davis* are similarly present in this context" involving a license granted not by a "co-owner").

This conclusion is supported by—indeed, *required* by—the fact that the Court of Appeals went to such great lengths in *Davis* to support its holding with numerous policy reasons "disfavoring" these types of retroactive licenses, including that "such retroactive activity lowers the cost of infringement to infringers, thus making infringement more attractive." 505 F.3d at 106. Thus, the Court reasoned, if such licenses were sanctioned, "[t]he result is that infringement is encouraged and rewarded." *Id.* As explained above, in rejecting the retroactive licensing at issue in *Davis*, the Court of Appeals noted that "the right to sue for infringement" is

"one of the most valuable 'sticks' of the 'bundle of rights' of copyright" and thus it cannot be stripped by operation of a license unless the right was first transferred by express written agreement.  505 F.3d at 104.  The Court also noted that a rule permitting "retroactive licenses" by anyone other than the copyright owner would inject uncertainty and unpredictability into copyright ownership, contrary to the intent of Congress in enacting the Copyright Act.  *Id.*  The logic of *Davis* thus requires that allowing any party other than the copyright owner to extinguish accrued infringement claims would undermine the goals and provisions of the Copyright Act.

Even if the holding of *Davis* were limited to "copyright co-owners"—which it is not—the Second Circuit also has reached the same conclusion based on the same reasoning where a mere copyright licensee subsequently grants a license to a third party, just like TIW did here.  *See, e.g.*, *Gilliam*, 538 F.2d 14.  In such circumstances, the Court of Appeals held that "a grantor may not convey greater rights than it owns," and thus if the grant of rights exceeds the original scope of the license terms, the subsequent grant is "a nullity."  *Id.* at  21.  Because Plaintiff's contract with TIW did not grant TIW the right to issue retroactive licenses, any licenses granted by TIW that purport to do these things are a nullity.

### E.    Wiley Estopped From Claiming Its Settlement Licenses Are Valid.

Wiley is well aware that licensing agents are not permitted to pursue or release accrued claims for copyright infringement because it has prevailed on that exact issue in at least two separate federal copyright actions brought against it by licensing agents on behalf of their contributing photographers.  *See Minden Pictures*, 10 F. Supp. 3d at 1125; *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262 (S.D.N.Y. 2014).  Despite successfully arguing in both *Minden Pictures* and *DRK Photo* that licensing agents lack standing to pursue copyright claims for their contributing photographers (*even where there is an express written assignment of copyright*), Wiley contends here that its supposed "license extensions" (*i.e.*, settlement

18

agreements) with TIW.   Wiley is now estopped from claiming that any retroactive licenses constitute a valid release because that position is irreconcilable with its prior litigation position on which it succeeded.  *See New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001).

## V.   WILEY IS LIABLE FOR ACTS OF ITS FOREIGN SUBSIDIARIES

Defendant argues that it is entitled to summary judgment because certain publications were published by its Canadian and Australian subsidiaries.  According to Wiley, it is not liable for any misconduct related to these books because they were published instead by "distinct corporate entities."[12]  (Def. 56.1 ¶¶ 41, 44, 49, 52, 54, 58, 60, 62, 64, 69, 73, 163, 168, 173.)

Wiley's position fails on numerous grounds.

First, Wiley's contention that it cannot be liable for any conduct related to these titles merely because it did not actually print the books is incorrect as a matter of law.  Regardless of whether Defendant actually *printed* these foreign editions, merely *distributing* Plaintiff's photos to foreign publishers would violate any license that did not expressly permit Wiley to create foreign translations, adaptations, or editions, such as where its licenses are limited to English language printings or sales in North America or the United States only.[13]  Moreover, if Wiley is correct that these are "distinct corporate entities," then merely sending copies of Plaintiff's photos to these companies infringed Plaintiff's copyrights because *none* of Wiley's licenses

---

[12] To support this argument, Wiley relies on the declaration and documents provided by Wiley's in-house counsel, Ashima Aggarwal.  (See Aggarwal Decl. Exs. A & B.)  Significantly, however, Wiley failed to produce either of these documents in discovery, or any other documents related to its relationship with these companies and it successfully opposed Plaintiff's notice of deposition of Ms. Aggarwal.  Wiley's entire position with respect to this issue thus hinges on documents it failed to produce in discovery and a witness who claims to have personal knowledge of this defense but that Wiley vehemently opposed producing for a deposition.  Accordingly, Wiley's motion must be denied out of hand.  See Fed. R. Civ. P. 37(c)(1) (party that fails to provide discovery "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial") (emphasis added); *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) ("The purpose of [Rule 37(c)(1)] is to prevent the practice of 'sandbagging' an opposing party with new evidence.").

[13] For instance, Plaintiff licensed her photo "mother & baby eye contact" to Wiley for use in the First Edition of *Child Psychology*.  (Curley Decl. Ex. BB.)  The license was limited to use of the photo in books distributed in the United States and the license did not include permission to sublicense Plaintiff's photos to foreign publishers or to publish a separate "Canadian Edition."  (*Id.*)  Wiley thus violated its license by distributing Plaintiff's photo to its Canadian subsidiary and by authorizing it to create a Canadian Edition of this title.  (Curley Decl. Row 73.)

authorized sublicensing *under any circumstances*. *See Harrell v. Van der Plas*, No. 08-cv-8252(GEL), 2009 WL 3756327, at *2 (S.D.N.Y. Nov. 9, 2009).

Second, Wiley also can be held liable for the misconduct of other companies where their misconduct is "fairly traceable to the challenged action of the defendant," as it is here. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Despite actual knowledge that its licenses did not allow sublicensing and did not permit foreign editions, Wiley granted these companies access to Plaintiff's photos to create these foreign editions and thus violated its licenses. *See Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, No. 12-cv-10003, 2014 WL 4344095, at *4 (N.D. Ill. Sept. 2, 2014) (holding Wiley liable for infringement where "Wiley's foreign subsidiaries distributed and sold Wiley textbooks . . . outside of the permitted geographic areas").

Wiley also is incorrect that it is automatically immune from suit for illegal conduct by its subsidiaries. Instead, parent corporations may be liable for the acts of subsidiaries with regard to copyright infringement if there is "a substantial and continuing connection between the two [entities] with respect to the infringing acts." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1553 (9th Cir. 1989); *accord* 3 M. Nimmer, NIMMER ON COPYRIGHT § 12.04[A][1], at 12-73; *Peter Pan Fabrics, Inc. v. Acadia Co.*, 173 F. Supp. 292, 298-99 (S.D.N.Y. 1959) (holding parent liable for infringement by subsidiary where "there was a substantial and continuing connection"). In such instances, joint and several liability may be imposed by the court. *See MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2d Cir. 1981); *see also Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972).

There unquestionably is a substantial and ongoing relationship between Wiley and its subsidiaries. Wiley granted access to Plaintiff's photos under what Wiley itself calls "*intercompany* adaptation" agreements. (Butterfield Ex. 17.) The agreements also required Wiley's subsidiaries to pay Wiley ongoing royalties for sales of these books. (*Id.*; NDX-58 at

121:4—123:11.)  Wiley's databases track the production of these foreign editions and they are identified as "WIE" or "Wiley International Editions."  (*Id.* at 46:20—47:16.)  Wiley also concedes that these are merely "agreement[s] between two Wiley business units." (NDX-58 at 32:22—33:7.)  Wiley also tracks the publication status and ongoing sales of these foreign adaptations in its internal systems, and even uses its foreign subsidiaries as "distribution centers" for "outsourcing" the distribution of books it sells in those markets. (MDX-23.)  Together, these facts demonstrate a close, ongoing relationship that undercuts the corporate distinction that Wiley claims.  Indeed, these facts show that Wiley's subsidiaries are effectively part of its distribution chain for whose conduct it is liable.  *See Bean v*, 2012 WL 1078662, at *3 (holding Wiley liable for infringement where it authorized other entities to publish unlicensed foreign editions). These facts reflect that the foreign subsidiaries are considered part of the business of Wiley US.  On this record, there is at least a triable issue of fact regarding the requisite control over and connection with its foreign subsidiaries.

Third, Wiley's intentional and knowing illegal conduct requires piercing that veil.  Courts will pierce the corporate veil with regard to parent-subsidiary relationships "to prevent fraud or other wrong, or where a parent dominates and controls a subsidiary." *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Intern., Inc.*, 2 F.3d 24, 26 (2d Cir. 1993).  Wiley committed a "wrong" by having foreign subsidiaries publish books Wiley knew it was not permitted to do itself under its licenses.  *See, e.g.*, *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004).

Fourth, Wiley can (and must) be held liable for the subsequent publishing of Plaintiff's photos by these foreign entities because Wiley provided them access to Plaintiff's photos and financially benefitted from the publications, including through direct royalties.  Wiley thus is a joint tortfeasor and is liable for the infringements carried out by its foreign subsidiaries under the

theory of contributory and vicarious liability.  *See MCA*, 677 F.2d at 186; *see also Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).  Wiley could have (but failed) to advise these entities which photos required additional rights, could have (but failed) to provide contact information to these entities, and subsequently benefitted from the publications produced by these entities.  Wiley thus had the "right and ability" to supervise the conduct of these foreign entities, but failed to take adequate steps to do so.  *Gershwin*, 443 F.2d at 1162 (citing *Shapiro, Bernstein & Co., Inc. v. H. L. Green Co.*, 316 F.2d 304 (2d Cir. 1963); *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001).  As the original licensor of Plaintiff's works, Wiley cannot hide its head in the sand and let other companies do its dirty work for it.  *See Video Views v. Studio 21*, 925 F.2d 1010, 1021 (7th Cir. 1991).  The question of whether Defendant has the right and ability to supervise the actions of its foreign subsidiaries precludes summary judgment.  *See Panoramic Stock*, 2014 WL 4344095, at *7 (permitting infringement claim to proceed for books published by Wiley's subsidiaries).

Defendant also is incorrect that it cannot be held liable on theories of contributory or vicarious liability because those claims were not pleaded separately.   Vicarious and contributory copyright infringement are not separate "claims" but rather "merely separate theories of copyright liability" and thus need not be pleaded separately.  *Costar Grp. Inc. v. Loopnet, Inc.*, 172 F. Supp. 2d 747, 750 (D. Md. 2001).  In *Sony Corp. of America v. Universal City Studios*, 464 U.S. 417 (1984), the Supreme Court stated, "The absence of such express language [regarding secondary liability] in the copyright statute does not preclude the imposition of liability for copyright infringements on certain parties who have not themselves engaged in the infringing activity."  *Id.* at 435 (emphasis added).  Even though separate claims for contributory or vicarious infringement were not pleaded, the Sony Court found liability could be imposed and "addressed all as separate ways by which to find a party liable for the single tort of copyright

infringement." *Costar*, 172 F. Supp. 2d at 749; see also Sony, 464 U.S. at n.17 ("the lines between direct infringement, contributory infringement, and vicarious liability are not clearly drawn"); *accord New York Times Co., Inc. v. Tasini*, 533 U.S. 483 (2001) (holding that the publishers "infringed" copyrights by "authorizing" the downstream infringing acts even though secondary "theories" were not pleaded as separate claims). Thus, pleading a separate "claim" for secondary theory of liability was unnecessary.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Court should DENY Defendant's motion for partial summary judgment.

Dated: May 29, 2015

NELSON & MCCULLOCH LLP

By: _____
Danial A. Nelson
Kevin P. McCulloch
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178
kevin@nmiplaw.com

*Attorneys for Plaintiff*

23